IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

CORY CALDWELL,

                              Plaintiff,

                                                    Civ. Action No.
            v.                                      9:09-CV-580 (DNH/DEP)


WINSTON, Correctional Officer, GETTMANN,
Correctional Officer, and J. STOUT, Medical
Nurse,

                              Defendants.

_____

APPEARANCES:                                OF COUNSEL:

FOR PLAINTIFF:

CORY CALDWELL, *Pro Se*
07-A-6900
Upstate Correctional Facility
P.O. Box 2001
Malone, NY  12953

FOR DEFENDANTS:

HON. ANDREW M. CUOMO                    ADRIENNE J. KERWIN, ESQ.
Office of the Attorney General         Assistant Attorney General
State of New York
Department of Law
The Capitol
Albany, New York 12224


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff Cory Caldwell, a New York State prison inmate who is proceeding *pro se* and *in forma pauperis*, has commenced this action pursuant to 42 U.S.C. §§ 1983 and 1985, claiming deprivation of his civil rights.  In his complaint plaintiff asserts that he was assaulted by the two corrections officer defendants, and that following the assault he was denied medical treatment for his resulting injuries.  In his complaint plaintiff seeks compensatory and punitive damages in the amounts of $30 million and $10 million, respectively.

Currently pending before the court is defendants' motion to dismiss the complaint.  In support of their motion, defendants assert that plaintiff has failed to state a plausible Eighth Amendment violation.  Having carefully reviewed the record, considered in light of the  arguments of the parties, for the reasons that follow I recommend that defendants' motion be granted in part, but otherwise denied.

I.     <u>BACKGROUND</u>[1]

_____

[1]     In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's amended complaint, the contents of which have been accepted as true for purposes of the pending motion.  *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 2200 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S.Ct. 1955, 1965 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546, 84 S.Ct. 1733, 1734 (1964).

The facts forming the basis for plaintiff's claims are not particularly complex.  Plaintiff is a prison inmate entrusted to the care and custody of the New York State Department of Correctional Services ("DOCS"); at the times relevant to his complaint, Caldwell was housed at the Upstate Correctional Facility ("Upstate"), located in Malone, New York.[2]  Amended Complaint (Dkt. No. 9) ¶ 10.  On December 18, 2009, while being escorted back from a disciplinary hearing to his cell, which was located in A Block of Building Nine, plaintiff was taunted by defendants Winston and Gettmann regarding the time in SHU to which he had just been sentenced.  *Id.* at ¶ 10.  When plaintiff responded, defendant Winston instructed him to face forward and, when Caldwell did not comply quickly enough, Winston grabbed him by the neck and slammed the front of his body and his face into the wall.  *Id.* at ¶¶ 2, 17.  Gettmann then moved in closer and, putting his left hand on plaintiff's waist, gave Caldwell a short jab in the ribs with his right hand, stating in a low voice, "You're not as tough as you are

_____

[2]    Upstate is a maximum security prison comprised exclusively of special housing unit ("SHU") cells in which inmates are confined, generally though not always for disciplinary reasons, for twenty-three hours each day.  *See Samuels v. Selsky*, No. 01 CIV. 8235, 2002 WL 31040370, at *4 n.11 (S.D.N.Y. Sept. 12, 2002).

behind that door; then again, you young punks never are." *Id.*  After

making that remark, Gettmann pulled Caldwell off of the wall, and they

continued toward plaintiff's cell.  *Id.*

Upon arriving at his cell, plaintiff followed Gettmann's instructions to

place his hands through the feed up slot for removal of his handcuffs.

Amended Complaint (Dkt. No. 9) ¶¶ 3, 18.  Gettmann proceeded to roughly

remove plaintiff's handcuffs.  *Id*. at ¶ 3.  After removing the restraints,

Gettmann did not instruct plaintiff to remove his hands from the feed up

slot, as is customary; instead, before plaintiff had time to withdraw his

hands, Gettmann intentionally slammed Caldwell's hands and wrist in the

feed up slot door, causing injury for which plaintiff sought emergency

medical attention.  *Id.* at ¶¶ 3-4, 19.

Approximately twenty minutes later defendant J. Stout, a medical

nurse, arrived and made a routine visual inspection of plaintiff's injuries

through the glass on plaintiff's cell and advised plaintiff that there was

nothing wrong with him and that his injuries did not warrant emergency

medical attention.   Amended Complaint (Dkt. No. 9) ¶¶ 5, 19.  When

plaintiff protested and showed Stout the blood on his hands, Stout taunted

plaintiff, stating in a low voice, "Oh, he's got a little boo-boo," and then

proceeded to walk away.  *Id.* at ¶ 5.

Speaking loudly enough for a nearby audio microphone to record his

complaint, plaintiff voiced his dismay, apparently accusing Stout of

unethical and unprofessional conduct and stating that he was bleeding and

that his medical needs were being disregarded.[3]  *Id*. at ¶¶ 5, 20.  Within

minutes, a sergeant appeared at Caldwell's cell and escorted him to a

holding pen, where photographs of plaintiff's injuries were taken.  *Id.* at ¶¶

5-6.

Plaintiff claims to have written several grievances complaining of the

incident, as well as letters to the facility superintendent, the commissioner

of the DOCS, counsel for the DOCS, the DOCS inspector general, and the

New York State Police, but has received a response only from

Commissioner Brian Fischer stating that the inspector general was

investigating the incident.  Amended Complaint (Dkt. No. 9) ¶¶  6, 22-23.

According to plaintiff, as a result of the assault and the unspecified injuries

that he sustained, he has and continues to suffer periods of substantial

pain in his neck and sharp pain in his hands.  *Id*. at ¶ 7.

---

[3]    In addition to the audio recording and photographs, plaintiff states that a
video recording of the incident exists.

II.    PROCEDURAL HISTORY

Plaintiff commenced this action on May 18, 2009.   Dkt. No. 1.  As

defendants, plaintiff's original complaint named John Doe, an unknown

corrections officer; Gettmann, corrections officer; Stout, J., a medical

nurse; and the DOCS.  *Id.*  After an initial review of the complaint, the court

*sua sponte* dismissed plaintiff's claims against the DOCS and directed

plaintiff to take reasonable steps to ascertain the identity of the John Doe

defendant named in the complaint.  *See* Decision and Order dated June

10, 2009 (Dkt. No. 7).  In accordance with that directive, plaintiff

subsequently filed an amended complaint, Dkt. No. 9, which is now the

operative pleading in this action, identifying "correctional officer" Winston

as a defendant in place of John Doe.[4]  The complaint, which is brought

under 42 U.S.C. §§ 1983 and 1985,[5] alleges negligence, the use of

_____

[4]    By order dated July 29, 2009, the clerk was directed to replace "John Doe,
Corrections Officer" with "Winston, Correctional Officer."  Additionally, because the
amended complaint again named the DOCS as a defendant, despite the fact that
plaintiff was previously advised by the court that state agencies such as the DOCS
are entitled to immunity from suit under the Eleventh Amendment, the court once
again dismissed the DOCS from the lawsuit and directed that the clerk issue
summonses for service only upon the individual named defendants.  *See* Dkt. No.
10.

[5]    Defendants have not addressed plaintiff's section 1985 claim in their motion.
To sustain a cause of action for conspiracy to violate civil rights under section
1985(3), a plaintiff must allege and demonstrate that defendants acted with racial or
other class-based animus in conspiring to deprive the plaintiff of his or her equal
protection of the laws, or of equal privileges and immunity secured by law.  *United*

excessive force, and deliberate indifference to plaintiff's medical needs arising out of the incident, all in violation of the Eighth Amendment.  *See generally* Amended Complaint (Dkt. No. 9).

Following service of plaintiff's amended complaint, defendants moved on October 13, 2009 seeking its dismissal.  Dkt. No. 17.  In their motion, defendants argue that plaintiff's complaint fails to set forth facts demonstrating the existence of plausible claims of unlawful use of excessive force and deliberate medical indifference.  *Id.*  Defendants' motion, which plaintiff has opposed, is now fully briefed and ripe for determination and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.  DISCUSSION

A.  Dismissal Motion Standard

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading, utilizing as a backdrop a pleading standard

_____

*Brotherhood of Carpenters & Joiners, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 834-39, 103 S.Ct. 3352, 3359-61 (1983).  There is only a single reference to section 1985 in plaintiff's complaint, and no facts are alleged to support that claim.

which, though unexacting in its requirements, "demands more than an

unadorned, the-defendant-unlawfully-harmed me accusation" in order to

withstand scrutiny.  *Ashcroft v. Iqbal*, ___ U.S. ___, ___, 129 S.Ct. 1937,

1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555, 127

S.Ct. 1955, (2007)).  Rule 8(a)(2) of the Federal Rules of Civil Procedure

requires that a complaint contain "a short and plain statement of the claim

showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  *Id.*

While modest in its requirement, that rule commands that a complaint

contain more than mere legal conclusions; "[w]hile legal conclusions can

provide the framework of a complaint, they must be supported by factual

allegations."  *Ashcroft,* 129 S.Ct. at 1950.

To withstand a motion to dismiss, a complaint must plead sufficient

facts which, when accepted as true, state a claim which is plausible on its

face.  *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (citing

*Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974).  As the Second Circuit has

observed, "[w]hile *Twombly* does not require heightened fact pleading of

specifics, it does require enough facts to 'nudge [plaintiffs'] claims across

the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502

F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. at

8

1974).

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Cooper v. Pate*, 378 U.S. 546, 546, 84 S.Ct. 1723, 1734 (1964); *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 300 (2d Cir. 2003), *cert. denied*, 540 U.S. 823, 124 S.Ct. 153 (2003); *Burke v. Gregory*, 356 F. Supp.2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.).  The burden undertaken by a party requesting dismissal of a complaint under Rule 12(b)(6) is substantial; the question presented by such a motion is not whether the plaintiff is likely ultimately to prevail, "'but whether the claimant is entitled to offer evidence to support the claims.'" *Log On America, Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp.2d 435, 441 (S.D.N.Y. 2001) (quoting *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995)) (citations and quotations omitted).

B.    Excessive Force

One of the two principal claims contained within plaintiff's complaint stems from his assertion that on December 18, 2009, he was subjected to an unprovoked attack by defendants Winston and Gettmann and that, as a result, he suffered physical injuries.  In their motion, defendants contend

9

that plaintiff has failed to allege facts sufficient to state a claim for excessive use of force.

Plaintiff's excessive force claim must be analyzed under the Eighth Amendment, which proscribes punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble,* 429 U.S. 97, 102, 104, 97 S.Ct. 285, 290, 291 (1976); *see also Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1076, 1084 (1986) (citing, *inter alia, Estelle*).  While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement; thus, the conditions of an inmate's confinement are subject to Eighth Amendment scrutiny.  *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 1976 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 2400 (1981)).

A plaintiff's constitutional right against cruel and unusual punishment is violated by an "unnecessary and wanton infliction of pain."  *Whitley,* 475 U.S. at 319, 106 S.Ct. at 1084 (citations and quotations omitted); *Griffen v. Crippen,* 193 F.3d 89, 91 (2d Cir. 1999)  The lynchpin inquiry in deciding claims of excessive force against prison officials is "whether force was

10

applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian,* 503 U.S. 1, 6-7, 112 S.Ct. 995, 998-999 (1992) (applying *Whitley* to all excessive force claims); *Whitley*, 475 U.S. at 320-21, 106 S.Ct. at 1085 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.) (Friendly, J.), *cert. denied sub nom.*, *John v. Johnson*, 414 U.S. 1033, 94 S.Ct. 462 (1973)).

Analysis of claims of cruel and unusual punishment requires both objective examination of the conduct's effect and a subjective inquiry into the defendant's motive for his or her conduct. *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (citing *Hudson,* 503 U.S. at 7-8, 112 S.Ct. at 999 and *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999)). As was recently emphasized by the United States Supreme Court in *Wilkins v. Gaddy*, however, after *Hudson* the "core judicial inquiry" is focused not upon the extent of the injury sustained, but instead whether the nature of the force applied was nontrivial. __ U.S. __, 130 S.Ct. 1175, 1179 (2010) (per curiam). Accordingly, when considering the subjective element of the governing Eighth Amendment test a court must be mindful that the absence of serious injury, though relevant, does not necessarily negate a

finding of wantonness since, as the Supreme Court has noted,

> [w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . . This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.

*Hudson*, 503 U.S. at 9, 112 S.Ct. at 1000 (citations omitted); *Velasquez v. O'Keefe*, 899 F. Supp. 972, 973 (N.D.N.Y. 1995) (McAvoy, C.J.) (quoting *Hudson*, 503 U.S. at 9, 112 S.Ct. at 1000); *see Romaine v. Rewson,* 140 F. Supp.2d 204, 211 (N.D.N.Y. 2001) (Kahn, J.).  Even a *de minimis* use of physical force can constitute cruel and unusual punishment if it is "repugnant to the conscience of mankind."  *Hudson*, 503 U.S. at 9-10, 112 S.Ct. 1000 (citations omitted).

With its focus on the harm done, the objective prong of the inquiry is contextual and relies upon "contemporary standards of decency."  *Wright*, 554 F.3d at 268 (quoting  *Hudson*, 503 U.S. at 8, 112 S.Ct. at 1000) (internal quotations omitted)).  When addressing this component of an excessive force claim under the Eighth Amendment calculus, the court can consider the extent of the injury suffered by the inmate plaintiff.  While the absence of significant injury is certainly relevant, it is not dispositive.

*Hudson*, 503 U.S. at 7, 112 S.Ct. at 999.  The extent of an inmate's injury is but one of the factors to be considered in determining a prison official's use of force was "unnecessary and wanton"; courts should also consider the need for force, whether the force was proportionate to the need, the threat reasonably perceived by the officials, and what, if anything, the officials did to limit their use of force.  *Whitley*, 475 U.S. at 321, 106 S.Ct. at 1085 (citing *Johnson*, 481 F.2d at 1033).  "But when prison officials use force to cause harm maliciously and sadistically, 'contemporary standards of decency are always violated . . . .  This is true whether or not significant injury is evident.'"[6]  *Wright*, 554 F.3d at 268-69 (quoting *Hudson*, 503 U.S. at 9, 112 S.Ct. at 1000).

Addressing the objective prong of the Eighth Amendment analysis, liberally construing the complaint, the fact that it appears that Caldwell suffered at least minor injuries from the use of force distinguishes this case from others in which the lack of injury has justified summary dismissal of excessive force claims alleged under the Eighth Amendment.  *See, e.g.,*

---

[6]    That is not to say, however, that "every malevolent touch by a prison guard gives rise to a federal cause of action."  *Griffen*, 193 F.3d at 91 (citing *Romano v. Howarth,* 998 F.2d 101, 105 (2d Cir. 1993)); *see also Johnson*, 481 F.2d at 1033 ("Not every push or shove, even if it later may seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights").

*Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir. 1997) (the fact that the plaintiff, who claims he was "bumped, grabbed, elbowed, and pushed" by the defendants did not rise to a level of constitutional significance since plaintiff did "not maintain that he experienced any pain or injury as a result of the physical contact"); *Cunningham v. Rodriguez*, No. 01 Civ. 1123, 2002 WL 31654960, at *5 (S.D.N.Y. Nov. 22, 2002).[7]  Although the precise nature of the injuries that plaintiff sustained is not disclosed in the complaint, plaintiff does allege that he was bleeding as a result of the assault and also that he has suffered substantial periods of pain in his neck and sharp pain in his hands.  Under the circumstances now presented it would be inappropriate to find, objectively, that plaintiff has failed to alleges injuries sufficiently serious to rise to a constitutionally cognizable level.

Turning to the subjective element, again broadly construed, plaintiff's complaint has alleged sufficient facts to suggest that the attack was unprovoked.  In this regard, plaintiff alleges that he was being escorted to a cell and taunted by defendants Winston and Gettmann.  While the complaint also suggests that Caldwell verbally responded to their teasing

---

[7]    Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

and apparently did not immediately turn around when directed to do so, when read liberally the facts alleged also support an inference that no use of force was necessary to ensure plaintiff's compliance, but that defendants nonetheless hurled him against the wall as a result of his verbal response.

In view of the facts alleged and the deference owed to him as a *pro se* litigant, I find plaintiff's complaint facially sufficient insofar as his excessive force claim is concerned, and that at this early juncture it would premature to dismiss that claim as not stating a plausible cause of action. Accordingly, I recommend that defendants' motion to dismiss plaintiff's excessive use of force claim be denied.[8]

## B.   Medical Indifference

The second component of plaintiff's complaint alleges that defendant

---

[8]   Embedded within plaintiff's complaint are potential claims against the corrections officer defendants for failure to protect the plaintiff from the actions of fellow officers. A corrections worker who, while not participating in an assault upon an inmate, is present while it occurs may nonetheless bear responsibility for any resulting constitutional deprivation. *See Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). It is well-established that a law enforcement official has an affirmative duty to intervene on behalf of an individual whose constitutional rights are being violated in his presence by other officers. *See Mowry v. Noone,* No. 02-CV-6257 Fe, 2004 WL 2202645, at *4 (W.D.N.Y. Sept. 30, 2004); *see also Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001) ("Failure to intercede results in [section 1983] liability where an officer observes excessive force being used or has reason to know that it will be.") (citations omitted).

Stout, a prison nurse, failed to provide him with needed medical treatment.

Plaintiff's claim against Nurse Stout apparently stems from her failure,

upon examining Caldwell immediately following the December 18, 2009

incident, to provide him with any medical attention.  Though plaintiff admits

in his complaint that defendant Stout responded to his calls for emergency

medical attention, he apparently maintains that after arriving at his cell she

refused to render medical treatment.  In support of dismissal of this claim,

defendants argue that plaintiff's allegations of negligence are insufficient

as a matter of law, and he has failed to allege sufficient facts to

demonstrate that he was denied the medical care mandated under the

Eighth Amendment.[9]

Claims that prison officials have intentionally disregarded an inmate's

medical needs fall under the umbrella of protection from the imposition of

cruel and unusual punishment afforded by the Eighth Amendment.  *Estelle*,

429 U.S. at 102, 104, 97 S.Ct. at 290, 291.  To satisfy their obligations

under that Constitutional provision, prison officials must "ensure that

---

[9]    Defendants are correct in the assertion that allegations of negligence cannot support a claim under section 1983.  *Salim v. Proulx*, 93 F.3d 86, 92 (2d Cir. 1996). Thus, to the extent that plaintiff's complaint include claims of negligence, I will recommend dismissal of such claims.

inmates receive adequate food, shelter, and medical care, and must take reasonable measures to guarantee the safety of inmates." *Farmer*, 511 U.S. at 832, 114 S.Ct. at 1976 (quoting *Hudson*, 468 U.S. at 526-27, 104 S.Ct. at 3200) (internal quotations omitted).  As was previously discussed, a claim alleging that prison officials have violated the Eighth Amendment by inflicting cruel and unusual punishment must satisfy both objective and subjective requirements.   *Wright*, 554 F.3d at 268; *Price v. Reilly*, No. 07-CV-2634 (JFB/ARL), 2010 WL 889787, at *7-8 (E.D.N.Y. Mar. 8, 2010). Addressing the objective element, to prevail a plaintiff must demonstrate a violation sufficiently serious by objective terms, "in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).  With respect to the subjective element, a plaintiff must also demonstrate that the defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.'" *Blyden*, 186 F.3d at 262.  Claims of medical indifference are thus subject to analysis utilizing this Eighth Amendment paradigm.  *See Salahuddin v. Goord,* 467 F.3d 263, 279-81 (2d Cir. 2006).

        1.   <u>Objective Requirement</u>

Analysis of the objective, "sufficiently serious" requirement of an Eighth Amendment medical indifference claim begins with an inquiry into "whether the prisoner was actually deprived of adequate medical care . . .", and centers upon whether prison officials acted reasonably in treating the plaintiff. *Salahuddin*, 467 F.3d at 279. A second prong of the objective test addresses whether the inadequacy in medical treatment was sufficiently serious. *Id*. at 280. If there is a complete failure to provide treatment, the court must look to the seriousness of the inmate's medical condition. *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003). If, on the other hand, the complaint alleges that treatment was provided but was inadequate, the seriousness inquiry is more narrowly confined to that alleged inadequacy, rather than focusing upon the seriousness of the prisoner's medical condition. *Salahuddin*, 467 F.3d at 280. "For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in treatment. . . [the focus of] the inquiry is on the challenged delay or interruption, rather that the prisoner's underlying medical condition alone." *Id.* (quoting *Smith*, 316 F.3d at 185) (internal quotations omitted). In other words, at the heart of the relevant inquiry is the seriousness of the medical need, and whether from an

18

objective viewpoint the temporary deprivation was sufficiently harmful to establish a constitutional violation.  *Smith*, 316 F.3d at 186.  Of course, "when medical treatment is denied for a prolonged period of time, or when a degenerative medical condition is neglected over sufficient time, the alleged deprivation of care can no longer be characterized as 'delayed treatment, but may properly be viewed as a 'refusal' to provide medical treatment."  *Id.* at 186, n.10 (quoting *Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000)).

Since medical conditions vary in severity, a decision to leave a condition untreated may or may not raise constitutional concerns, depending on the circumstances.  *Harrison,* 219 F.3d at 136-37 (quoting, *inter alia, Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir. 1998)). Relevant factors informing this determination include whether the plaintiff suffers from an injury or condition that a "'reasonable doctor or patient would find important and worthy of comment or treatment'", a condition that " 'significantly affects'" a prisoner's daily activities, or "'the existence of chronic and substantial pain.'" *Chance,* 143 F.3d at 702 (citation omitted); *Lafave v. Clinton County,* No. CIV. 9:00CV774, 2002 WL 31309244, at *3 (N.D.N.Y. Apr. 3, 2002) (Sharpe, M.J.) (citation omitted).

In the first instance, it is unclear whether plaintiff is alleging that he was completely denied medical treatment.  Although it appears to be plaintiff's claim that Nurse Stout denied him medical treatment, he also alleges that "within minutes" after Nurse Stout left his cell, a sergeant appeared and took him to a holding cell where his injuries were photographed.  It may well be that Caldwell's injuries were treated at that time and that treatment of his injuries, by plaintiff's own account, was delayed only by a few minutes.  Additionally, as was noted above, plaintiff's complaint fails to reveal the nature and extent of his injuries.  Instead, plaintiff merely alleges that he has periodically suffered substantial pain in his hands and in his neck; there are no allegations of fact in the complaint that suggest that plaintiff's condition was one of urgency or that the apparently delayed medical treatment exposed plaintiff to death, degeneration, or extreme pain.

For these reasons, I have concluded that plaintiff's complaint fails to allege sufficient facts to satisfy the objective prong of the medical indifference inquiry.

### 2.    Subjective Element

The second, subjective, requirement for establishing an Eighth

Amendment medical indifference claim mandates a showing of a

sufficiently culpable state of mind, or deliberate indifference, on the part of

one or more of the defendants.  *Salahuddin*, 467 F.3d at 280 (citing

*Wilson*, 501 U.S. at 300, 111 S.Ct. 2321).  Deliberate indifference, in a

constitutional sense, exists if an official "knows of and disregards an

excessive risk to inmate health or safety; the official must both be aware of

facts from which the inference could be drawn that a substantial risk of

serious harm exists, and he [or she] must also draw the inference."

*Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979; *Leach v. Dufrain,* 103 F.

Supp.2d 542, 546 (N.D.N.Y. 2000) (Kahn, J.) (citing *Farmer,* 511 U.S. at

837, 114 S.Ct. at 1979); *Waldo v. Goord,* No. 97-CV-1385, 1998 WL

713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.) (same).

Deliberate indifference is a mental state equivalent to subjective

recklessness as the term is used in criminal law.  *Salahuddin*, 467 F.3d at

280 (citing *Farmer,* 511 U.S. at 839-40, 114 S.Ct. 1970).

   As defendants correctly point out, mere negligence on the part of a

physician or other prison medical official in treating or failing to treat a

prisoner's medical condition, on the other hand, does not implicate the

Eighth Amendment and is not properly the subject of a § 1983 action.

*Estelle,* 429 U.S. at 105-06, 97 S.Ct. at 292; *Chance,* 143 F.3d at 703.

"Medical malpractice does not become a constitutional violation merely

because the victim is a prisoner."  *Estelle,* 429 U.S. at 106, 97 S.Ct. at 292.

Thus, for example, a physician who "delay[s] ... treatment based on a bad

diagnosis or erroneous calculus of risks and costs" does not exhibit the

mental state necessary for deliberate indifference.  *Harrison,* 219 F.3d at

139.   If prison officials consciously delay or otherwise fail to treat an

inmate's serious medical condition "as punishment or for other invalid

reasons," however, such conduct is actionable as deliberate indifference.

*Harrison,* 219 F.3d at 138;  *Kearsey v. Williams,* 2005 WL 2125874, at *5

(S.D.N.Y. Sep. 1, 2005).

The allegations in plaintiff's complaint fail to suggest that Nurse Stout

acted with the requisite subjective intent.  Once again, there is nothing in

the complaint to suggest that plaintiff's condition was dire and presented a

substantial risk of harm to his well-being if not immediately treated.

Accordingly, the complaint is devoid of any factual allegations that would

suggest that Nurse Stout was aware of facts from which it could be inferred

that plaintiff's health was at serious risk, that she drew that inference, and

consciously disregarded it.

Because plaintiff's complaint fails to allege facts to establish satisfy either the objective or subjective prongs of the Eighth Amendment deliberate indifference standard, it fails to establish a plausible Eighth Amendment violation based upon the alleged lack of medical treatment for plaintiff's injuries.  Accordingly, I recommend dismissal of plaintiff's medical indifference claims and dismissal of all claims as against defendant J. Stout.

C.    Leave to Amend

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once if there is any indication that a valid claim might be stated.  *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991) (emphasis added); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires"); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F.Supp. 986, 1003 (E.D.N.Y.1995) (leave to replead granted where court could not say that under no circumstances would proposed claims provide a basis for relief).

Based upon what little is now known regarding the relevant occurrences, it seems doubtful that plaintiff will be able to state a viable

Eighth Amendment claim for medical indifference.[10]  At this stage of the proceeding, however, the court cannot conclude as a matter of law that no valid claim can be stated.  Thus, in light of plaintiff's *pro se* status and the deference to which he is entitled, I find that plaintiff should be afforded an opportunity to amend his complaint in an attempt to cure the deficiencies associated with his medical indifference cause of action.

IV.    SUMMARY AND RECOMMENDATION

Having carefully considered defendants' motion along with plaintiff's opposition, I find that plaintiff has sufficiently stated a plausible claim for use of excessive force, but that his pleading is fatally insufficient with regard to his claim for medical indifference and that it seems unlikely that

---

[10]    It is well established that minor injuries do not normally rise to the level of seriousness required to make a viable claim medical indifference under the Eighth Amendment.  *See, e.g., Harris v. Morton*, No. 9:05-CV-1049, 2008 WL 596891, at *3 n.2 (N.D.N.Y. Feb. 29, 2008) (Kahn, J. and Treece, M.J.) ("We note that although Plaintiff states he suffered from a 'snapped' neck, he does not indicate he suffered from anything other than a generic neck injury.") (citing *Bennett v. Hunter*, No. 9:02-CV-1365, 2006 WL 1174309) (Scullin, S.J. and Lowe, M.J.) (pinched nerve not a serious medical need)); *Ford v. Phillips*, No. 05 Civ. 6646, 2007 WL 946703, at * 12 (S.D.N.Y. Mar. 27, 2007) (abrasions, minor bruise, slight bleeding and scratches are not sufficiently serious); *Dzwonczyk v. Syracuse Police Dep't*, No. 5:08-CV-00557, 2008 WL 5459147, at * 13 (N.D.N.Y. Dec. 22, 2008) (McCurn, S.J.) (allegation of a bruised rib does not satisfy the requirement of a sufficiently serious deprivation); and, *Jones v. Furman*, No. 02-CV-939F, 2007 WL 894218, at *10 (W.D.N.Y. Mar. 21, 2007) (soreness, pain in and a lump behind his right ear, lump on the back of his head, small abrasions on his nose and knuckle, and bruising to his back, ribs do not constitute the requisite serious medical need) (citing *Hemmings v. Gorczyk*, 134 F.3d 104, 109 (2d Cir.1998)).

24

plaintiff ultimately will be able to allege a constitutional claim.  Nonetheless,

in view of the formative stage of the proceedings and the deference that

must be afforded plaintiff as a *pro se* litigant, I recommend that plaintiff's

medical indifference claim be dismissed, with leave to replead.  As to

plaintiff's claims of negligence, which are not cognizable under section

1983, those claims should be finally dismissed from this lawsuit.

Accordingly, it is hereby respectfully

RECOMMENDED that defendants' motion to dismiss (Dkt. No. 17)

be GRANTED, in part, and that plaintiff's claims for negligence be

DISMISSED with prejudice, and that plaintiff's claims for medical

indifference, including all claims against defendant J. Stout, be

DISMISSED with leave to replead; and it is further

RECOMMENDED that defendants' motion to dismiss otherwise be

DENIED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge

written objections to the foregoing report.  Such objections must be filed

with the clerk of the court within FOURTEEN days of service of this report.

FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d),

72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:    July 23, 2010
           Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

26

Not Reported in F.Supp.2d, 2002 WL 31654960 (S.D.N.Y.)
**(Cite as: 2002 WL 31654960 (S.D.N.Y.))**

**H**Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
Joseph CUNNINGHAM, Jr., Plaintiff,
v.
Sgt. RODRIGUEZ, Defendant.
**No. 01 Civ. 1123(DC).**

Nov. 22, 2002.

Pretrial detainee sued court official, alleging use of excessive force in subduing him after he began yelling obscenities at judge, Official moved for summary judgment. The District Court, Chin, J., held that excessive force was not used.

Judgment for official.

See, also, 2001 WL 1313518.

West Headnotes

**Constitutional Law 92 ☞4545(3)**

92 Constitutional Law
    92XXVII Due Process
        92XXVII(H) Criminal Law
            92XXVII(H)3 Law Enforcement
                92k4543 Custody and Confinement of Suspects; Pretrial Detention
                    92k4545 Conditions
                        92k4545(3) k. Safety and Security. Most Cited Cases
        (Formerly 92k262)

**Courts 106 ☞55**

106 Courts
    106II Establishment, Organization, and Procedure
        106II(B) Court Officers
            106k55 k. Ministerial Officers in General.
Most Cited Cases
Court official did not use excessive force in subduing pretrial detainee, in violation of his due process rights, when he followed standard procedure in wrestling detainee to ground and handcuffing him, after detainee began yelling obscenities at judge and refused to quiet down, and post-incident examination by medic re-

vealed no injuries beyond sore muscles. U.S.C.A. Const.Amend. 14.

Joseph Cunningham, Jr., Bronx, New York, Plaintiff, pro se.

Eliot Spitzer, Attorney General of the State of New York, By: Charles F. Sanders, Assistant Attorney General, New York, New York, for Defendant.

*MEMORANDUM DECISION*

CHIN, J.

**\*1** Pro se plaintiff Joseph Cunningham, Jr. brings this action pursuant to 42 U.S.C. § 1983 against Sgt. Joseph Rodriguez, a New York State court officer. Plaintiff alleges that, on December 23, 1998, defendant deprived him of his constitutional rights by subjecting him to excessive force in a courtroom in the Supreme Court of the State of New York, Bronx County.

Rodriguez moves for summary judgment under Fed.R.Civ.P. 56 on the grounds that (1) plaintiff has failed to establish a constitutional violation as a matter of law, and (2) Rodriguez is entitled to the defense of qualified immunity. For the reasons set forth below, the motion is granted.

*BACKGROUND*

A. *Facts*

Construed in the light most favorable to the plaintiff, the facts are as follows:

On December 23, 1998, plaintiff appeared as a pretrial detainee in criminal proceedings in Bronx County. Plaintiff rejected a plea offer and wanted to proceed to trial. He accused Judge Fisch, who was presiding over the matter, of being biased and alleged that Judge Fisch and the Assistant District Attorney (the "ADA") "manufactured ... a bogus case" against him. (Compl. at 7-8). Plaintiff wanted to make a motion for Judge Fisch to recuse himself. Plaintiff's defense attorney informed him that he could not join in the motion because he knew of no basis for recusal. (Hardy Aff. ¶ 6; Dec. 23, 1998 Tr. at 3-4). Plaintiff then moved *pro se* for Judge Fisch to recuse himself, and the motion was denied. The following colloquy ensued:

Not Reported in F.Supp.2d, 2002 WL 31654960 (S.D.N.Y.)
**(Cite as: 2002 WL 31654960 (S.D.N.Y.))**

THE COURT: No. I will not entertain any other motions that are-.

MR. CUNNINGHAM: No, sir. Sir, listen. Sir-.

THE COURT: Excuse me. I'm talking.

MR. CUNNINGHAM: Sir-.

THE COURT: Don't interrupt me.

MR. CUNNINGHAM: Sir-.

THE COURT: Don't interrupt me.

MR. CUNNINGHAM: This is ridiculous. This is a railroad. This is a railroad. This is a railroad. Get off of me. Get off of me. Get the fuck off of me, man. What are you shaking your head at? This is incredible what you're doing. This is my life and family. You know nothing about the case. Nothing about it. You accuse me of something in this case, sir. You think this thing is a joke, D.A.? You think something is a joke? It's not a joke, man. This woman appears before you and says this. You don't even know the facts. This is what you want. This is justice. You don't know a fucking thing. Get off of me you mother fucker.

(Dec. 23, 1998 Tr. at 5-6). As plaintiff explained at his deposition, he believed that he had "every right under the First Amendment to say what [he] needed to say and [Judge Fisch] needed to listen." (Cunningham Dep. at 62). According to plaintiff, Judge Fisch "gave the court officers a Masonic signal to attack." (Compl. at 10; Cunningham Dep. at 57-58).

A court officer placed his hand on plaintiff to request that he step away from counsel's table and place his hands behind his back to be escorted from the courtroom. (Hardy Aff. ¶ 16). Plaintiff refused to cooperate and resisted the court officers. (Hardy Aff. ¶ 17). According to plaintiff, when he was speaking to Judge Fisch, seven court officers, including Rodriguez, "attacked" him, "[p]ushed [him] to the ground and ... bruised [him] up pretty bad ." (Compl. at 10-11; Cunningham Dep. at 64-65). Rodriguez "was hitting [him] in the back and face." (Compl. at 10).

**\*2** Plaintiff was handcuffed and escorted to the hold-

ing area, where New York City Fire Department Emergency Medical Technicians arrived and examined him. (Lopez Aff. ¶ 23; Rodriguez Aff. ¶¶ 33, 39). Plaintiff told the EMT, "I'm okay," and denied having any pain. (Rivera Aff. ¶¶ 17-18; Def. Ex. G, Ambulance Call Report, Dec. 23, 1998 ("ACR")). Later in the examination, plaintiff complained of minor pain to his wrist, lower lip, and general abdomen area. (Rivera Aff. ¶ 20; ACR at Comments). The EMT found no signs of any trauma, respiratory distress, or bleeding. (Rivera Aff. ¶ 22; ACR at Presenting Problems, 10, 21). The EMT asked plaintiff if he wanted to seek medical attention at an outside facility. Plaintiff refused any further medical attention purportedly because he was "too scared" and he "elected to take [his] chances [when he] got to Rikers Island clinic." (Compl. at 11-12).

On December 30, 1998, plaintiff was seen by medical staff at Rikers Island Correctional Facility ("Rikers Island"), and complained of neck, shoulder, lower back, and hip pain. The medical report stated "no significant finding at this time" other than "muscle pain." (Def. Ex. H, Rikers Island Health Record, Dec. 30, 1998 ("RIHR")). Plaintiff was further advised "to return to clinic if symptoms worsen or continue." (RIHR; Cunningham Dep. at 42-43). Plaintiff has not sought further medical treatment for any injuries or pain resulting from the December 23, 1998 incident. (Cunningham Dep. at 46-49).

B. *Procedural History*

Plaintiff filed his *pro se* complaint on February 14, 2001, alleging that he was deprived of his constitutional rights under the Eighth and Fourteenth Amendments. Plaintiff seeks $5,000,000 in damages pursuant to 42 U.S.C. § 1983.

In his complaint, plaintiff asserted claims against Judge Fisch, the ADA, his former criminal defense attorney (Michael Hardy), and one named and six unidentified court officers, alleging that defendants deprived him of his constitutional rights during proceedings in open court and in the judge's chambers.

The judge, the ADA, and the defense attorney moved pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the complaint for failure to state a claim. I dismissed all claims except those asserted against Rodriguez, the named court officer, and the six unidentified officers.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31654960 (S.D.N.Y.)
**(Cite as: 2002 WL 31654960 (S.D.N.Y.))**

*Cunningham v. Fisch,* No. 01 Civ. 1123(DC), 2001 U.S. Dist. LEXIS 17483 (S.D.N.Y. Oct. 26, 2001). By order dated March 11, 2002, I denied plaintiff's motion for leave to substitute the named court officers for the John Doe defendants because the proposed amendment was barred by the applicable statute of limitations and did not satisfy the requirements of Fed.R.Civ.P. 15(c). *Cunningham v. Fisch,* No. 01 Civ. 1123(DC), 2002 U.S. Dist. LEXIS 4005 (S.D.N.Y. Mar. 11, 2002). Thus, the only remaining claims are against Rodriguez. The parties thereafter completed discovery.

This motion followed.

*DISCUSSION*

I. *Applicable Law*

A. *Summary Judgment Standard*

**\*3** Summary judgment will be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Accordingly, the Court's task is not to "weigh the evidence and determine the truth of the matter but [to] determine whether there is a genuine issue for trial." *Anderson v.. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is inappropriate if, resolving all ambiguities and drawing all inferences against the moving party, there exists a dispute about a material fact "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *see Bay v. Times Mirror Magazines, Inc.,* 936 F.2d 112, 116 (2d Cir.1991). A factual issue is genuine if it can reasonably be resolved in favor of either party. *Anderson,* 477 U.S. at 250. A fact is material if it can affect the outcome of the action based on the governing law. *Id.* at 248.

The party seeking summary judgment must demonstrate the absence of genuine issues of material fact, and then the nonmoving party must set forth facts proving that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 321-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To defeat a motion for summary judgment, the nonmoving party must do more than raise "some metaphysical doubt as to the

material facts." *Matsushita,* 475 U.S. at 586; *Gonzalez v. Rite Aid of N.Y., Inc.,* 199 F.Supp.2d 122, 129 (S.D.N.Y.2002). Rather, the nonmoving party must present significant probative evidence tending to support the complaint. *First Nat'l Bank of Ariz. v. Cities Servs. Co.,* 391 U.S. 253, 289-290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). There is no issue for trial unless there exists sufficient evidence favoring the nonmoving party to support a jury verdict for that party. *Anderson,* 477 U.S. at 249-50. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* (citations omitted).

Where a pro se litigant is involved, "the court has an obligation to read [the pro se party's] supporting papers liberally, and ... interpret them to raise the strongest arguments they suggest." *Thomas v. Keane,* No. 99 Civ. 4302(DC), 2001 U.S. Dist. LEXIS 4873, at *8 (S.D.N.Y. Apr. 18, 2001) (citation omitted); *see Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995) (citing *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). "[B]ald assertions," however, cannot overcome a motion for summary judgment, even if the opposing party is pro se. *Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1995); *Vondette v. McDonald,* No. 00 Civ. 6874(DC), 2001 U.S. Dist. LEXIS 19953, at *8 (S.D.N.Y. Dec. 5, 2001). The plaintiff must provide the Court with "some basis to believe that his version of relevant events is not fanciful." *Yearwood v. Lo-Piccolo,* No. 95 Civ. 2544(DC), 1998 U.S. Dist. LEXIS 12302, at *7 (S.D.N.Y. Aug. 10, 1998) (quoting *Christian Dior-New York, Inc. v. Koret, Inc.,* 792 F.2d 34, 38 (2d Cir.1986)).

B. *Section 1983*

**\*4** To state a § 1983 claim, a plaintiff must allege that defendant, while acting "under color of state law," deprived plaintiff of his constitutional or statutory rights. *Am. Mfrs. Ins. Co. v. Sullivan,* 526 U.S. 40, 49-50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999); *see* 42 U.S.C. § 1983. To be liable under § 1983, the defendant must have been personally involved in the alleged violation. *See Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994); *Morris v. Eversley,* 205 F.Supp.2d 234, 241 (S.D.N.Y.2002).

A pretrial detainee who is subjected to excessive force may bring a claim under § 1983. While the Eighth Amendment's protection from cruel and unusual pu-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31654960 (S.D.N.Y.)
**(Cite as: 2002 WL 31654960 (S.D.N.Y.))**

nishment does not apply "until after conviction and sentence," *Graham v. Connor,* 490 U.S. 386, 392 n. 6, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the right of a pretrial detainee to be free from excessive force amounting to punishment is protected by the Due Process Clause. *United States v. Walsh,* 194 F.3d 37, 47 (2d Cir.1999) (citing *Bell v. Wolfish,* 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). Accordingly, the *Hudson* analysis that requires an inmate to satisfy both an objective and a subjective prong to establish an Eighth Amendment violation also applies to excessive force claims brought by a pretrial detainee. *Walsh,* 194 F.3d at 48 (citing *Hudson v. McMillian,* 503 U.S. 1, 7-8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)).

First, the plaintiff must show that the alleged use of force is "objectively sufficiently serious or harmful enough" to be actionable. *Walsh,* 194 F.3d at 50 (citing *Hudson,* 503 U.S. at 8). A claim of excessive force may be established even if the victim does not suffer serious or significant injury, if plaintiff can demonstrate that the amount of force used is more than *de minimis,* or, otherwise involves force "repugnant to the conscience of mankind." *Walsh,* 194 F.3d at 47 (citing *Hudson,* 503 U.S. at 9-10). The Second Circuit has held that not "every push or shove, even if it may later seem unnecessary in the peace of the judge's chambers, violates a prisoner's constitutional rights." *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied sub nom. John v. Johnson,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973).

Second, the subjective requirement is satisfied if the defendant acted wantonly with a "sufficiently culpable state of mind." *Walsh,* 194 F.3d at 49-50 (citing *Hudson,* 503 U.S. at 8); *see also Sims v. Artuz,* 230 F.3d 14 (2d Cir.2000). Where a state official is accused of using excessive physical force against a pretrial detainee, the inquiry turns on "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Walsh,* 194 F.3d at 48-49.

## II. *Application*

At the time of the incident, Rodriguez was a court officer at the Bronx County Courthouse. As a peace officer, Rodriguez was authorized to use physical force to prevent disruption in the courtroom. N.Y.Crim. Proc. Law §§ 1.20(33), 2.10(21)(a)

(McKinney 2002); N.Y. Penal Law § 35.30 (McKinney 1999). Thus, there is no dispute that Rodriguez acted under color of state law.

**\*5** Even construing the facts in the light most favorable to the plaintiff, however, I conclude that plaintiff cannot establish that Rodriguez violated his constitutional rights. As a matter of law, plaintiff is unable to satisfy either the objective or subjective prong of the *Hudson* excessive force test.

A. *Objective Element of the Hudson Test*

1. *The Force Applied Was De Minimis*

Plaintiff alleges that Rodriguez hit him in the back and face. The medical records of examinations performed on plaintiff in the aftermath of the incident show that any force used by Rodriguez was *de minimis.* The EMT who examined plaintiff in the courthouse after the incident found that plaintiff had "no injuries or complaints." Moreover, plaintiff refused any further medical assistance and chose not to go to an outside hospital, claiming he was "too scared." On December 30, 1998, a week after the incident, plaintiff was examined by medical personnel at Rikers Island. The medical record indicates that plaintiff complained of neck, shoulder, lower back, and hip pain, but the doctor found nothing significant aside from muscle pain. Although plaintiff was advised to return to the clinic if his symptoms were to worsen or continue, he sought no further medical treatment. Thus, I conclude that the record indicates, as a matter of law, that the force used was *de minimis.*[FN1] Plaintiff has pointed to no evidence that shows otherwise.

> FN1. *Compare Hudson v. McMillian,* 503 U.S. at 10 ("bruises, swelling, loosened teeth, and a cracked dental plate are not *de minimis*" ), *with Boddie v. Schnieder,* 105 F.3d 857, 861 (2d Cir.1997) (bumping, grabbing, elbowing, and pushing plaintiff was *de minimis* ); *Espinal v. Goord,* No. 00 Civ. 2242(AJP), 2001 U.S. Dist. LEXIS 5688 at \*53 n. 46 (S.D.N.Y. May 7, 2001) (injuries held to be *de minimis* where plaintiff was hit in the face two or three times, requiring summary judgment); *Bove v. New York City,* No. 98 Civ. 8800, 1999 U.S. Dist. LEXIS 12112, at \*6 (S.D.N.Y. Aug. 6, 1999) (summary judgment where only injury sup-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31654960 (S.D.N.Y.)
**(Cite as: 2002 WL 31654960 (S.D.N.Y.))**

ported by evidence was single bruise to head); *Taylor v. McDuffie,* 155 F.3d 479, 483 (4th Cir.1998) (pretrial detainee's injuries held *de minimis* where medical records do not support plaintiff's purported injuries), *cert. denied,* 525 U.S. 1181, 119 S.Ct. 1121, 143 L.Ed.2d 115 (1999).

2. *The Force Applied Was Not Repugnant to the Conscience of Mankind*

In addition, the force was clearly not "repugnant to the conscience of mankind." Rodriguez and other court officers wrestled plaintiff to the ground and handcuffed him only after plaintiff directed profanity at the court and resisted the officers' request to leave the courtroom. This authorized use of force to restore order in the courtroom is not what courts have deemed to be "repugnant to the conscience of mankind."[FN2]

> FN2. *Compare* Walsh, 194 F.3d at 50 (a 300 to 400 pound prison guard stepping on inmate's penis was unequivocally contrary to "contemporary standards of decency" and "repugnant to the conscience of mankind"), *with Barratt v. Joie,* No. 96 Civ. 0324(LTS)(THK), 2002 U.S. Dist. LEXIS 3452, at *34-35 (S.D.N.Y. Mar. 4, 2002) (a single kick, unaccompanied by any competent evidence of significant injury, is not repugnant); *Santiago v. C.O. Campisi Shield # 4592,* 91 F.Supp.2d 665, 674 (S.D.N.Y.2000) (an open-handed slap in the face not repugnant); *Yearwood v. LoPiccolo,* 1998 U.S. Dist. LEXIS 12302, at *7 (allegations that plaintiff was choked, hit in the head with a pair of keys, and punched him in the lip were not substantiated by medical records, and not repugnant, requiring summary judgment).

As indicated by the medical records, plaintiff suffered no serious or significant injuries. Moreover, Rodriguez used *de minimis* force not "repugnant to the conscience of mankind" to restore order following plaintiff's disruption. Thus, plaintiff has failed to meet the objective prong of the *Hudson* test.

B. *Subjective Element of the Hudson Test*

Even if plaintiff could satisfy the objective prong of

the *Hudson* test, no reasonable jury could find on this record that Rodriguez acted wantonly with a sufficiently culpable state of mind.

On December 23, 1998, plaintiff appeared as a defendant in a criminal proceeding. Plaintiff asserted that Judge Fisch was biased against him. The court allowed plaintiff an opportunity to state his oral application for its recusal, and then denied the application. Plaintiff failed to adhere to the court's direction to be quiet. Plaintiff refused to follow a judicial order because of his assertion that he had a constitutional right to speak, and used profanity directed at the court. Moreover, he refused to comply with a court officer's order to step back and place his hands behind his back. He resisted the officers. Hence, they were required to subdue him and to escort him out of the courtroom.

**\*6** In these circumstances, it is evident that the use of force was not wanton or malicious, but an authorized and good faith effort to restore discipline and to gain control of a criminal defendant disrupting courtroom proceedings. Thus, Rodriguez lacked the requisite culpability under the subjective prong of the *Hudson* excessive force test to subject him to constitutional liability. Again, plaintiff has failed to present evidence from which a reasonable jury could find otherwise.

*CONCLUSION*

Plaintiff is unable, as a matter of law, to meet the objective and subjective prongs of the *Hudson* excessive force test.[FN3] Therefore, the complaint must be dismissed. For the reasons set forth above, defendant's motion for summary judgment is granted. The claims against defendant Rodriguez are dismissed with prejudice. The Clerk of the Court shall enter judgment accordingly. This case shall be closed.

> FN3. As I conclude that plaintiff's excessive force claims must be dismissed for failure to meet the elements of the *Hudson* test, I will not address the issue of defendant's qualified immunity defense.

SO ORDERED.

S.D.N.Y.,2002.
Cunningham v. Rodriguez
Not Reported in F.Supp.2d, 2002 WL 31654960

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31654960 (S.D.N.Y.)
**(Cite as: 2002 WL 31654960 (S.D.N.Y.))**


(S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



--- F.Supp.2d ----, 2008 WL 5459147 (N.D.N.Y.)
(Cite as: 2008 WL 5459147 (N.D.N.Y.))

**H**
Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Wlodzimierz J. **DZWONCZYK**, Plaintiff,
v.
SYRACUSE CITY POLICE DEPARTMENT; Syracuse
Housing Authority Security; John Doe, Syracuse
Housing Authority Detective; Gary Miguel, Chief of
Police, Syracuse City Police Department; Onondaga
County Sheriff's Office; Onondaga County Justice
Center; John Does, in Their Official and Individual
Capacities, Defendants.
**No. 5:08-CV-00557 (NPM/DEP).**

Dec. 22, 2008.

**Background:** Arrestee brought action alleging § 1983
claims against, inter alia, county sheriff's office, county
correctional facility, and city police department and chief
of police, asserting violation of Fourth, Fifth, and
Fourteenth Amendments, as well as state common-law tort
claims. County defendants move to dismiss and city
defendants moved for judgment on the pleadings.

**Holdings:** The District Court, Neal P. McCurn, Senior
District Judge, held that:
(1) city and county law enforcement officers' failure to
read arrestee his *Miranda* rights did not violate arrestee's
right against self-incrimination;
(2) use of force by city officers in course of arrest was not
excessive;
(3) no exigent circumstances existed as would permit
warrantless in-home arrest;
(4) arrestee's consent to arresting officer's entry into home
was valid;
(5) city officers had probable cause to make arrest for
second degree aggravated harassment;
(6) alleged strip search of arrestee after admission to
correctional facility was unreasonable;
(7) correctional facility officers did not violate arrestee's

Fourteenth Amendment Due Process rights;
(8) correctional facility officers did not unreasonably
endanger detainee's physical safety; and
(9) unlawful strip search, without more, could be
considered extreme and outrageous conduct giving rise to
liability on claim for intentional infliction of emotional
distress (IIED).

Ordered accordingly.

West Headnotes

**[1] Federal Civil Procedure 170A ☞ 1832**

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)5 Proceedings
                170Ak1827 Determination
                    170Ak1832 k. Matters Considered in
General. Most Cited Cases
An arrest report is a matter of public record that may be
considered on motion to dismiss for failure to state a claim
upon which relief can be granted. Fed.Rules Civ.Proc.Rule
12(b)(6), 28 U.S.C.A.

**[2] Civil Rights 78 ☞ 1394**

78 Civil Rights
    78III Federal Remedies in General
        78k1392 Pleading
            78k1394 k. Complaint in General. Most Cited
Cases

**Federal Civil Procedure 170A ☞ 1772**

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)3 Pleading, Defects In, in General
                170Ak1772 k. Insufficiency in General.

--- F.Supp.2d ----, 2008 WL 5459147 (N.D.N.Y.)
(Cite as: 2008 WL 5459147 (N.D.N.Y.))

Most Cited Cases

A motion to dismiss for failure to state a claim upon which relief can be granted may not be granted so long as the complaint includes enough facts to state a claim to relief that is plausible on its face; this requires the court to apply a flexible "plausibility standard" which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible, but does not require a heightened pleading standard for civil rights claims. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[3]** Federal Civil Procedure 170A 🗝 657.5(2)

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(A) Pleadings in General
            170Ak654 Construction
                170Ak657.5 Pro Se or Lay Pleadings
                    170Ak657.5(2) k. Civil Rights Proceedings in General. Most Cited Cases

A pro se litigant's papers are to be construed liberally when determining a motion to dismiss for failure to state a claim upon which relief can be granted, especially when civil rights violations are alleged. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[4]** Federal Civil Procedure 170A 🗝 657.5(1)

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(A) Pleadings in General
            170Ak654 Construction
                170Ak657.5 Pro Se or Lay Pleadings
                    170Ak657.5(1) k. In General. Most Cited Cases

A pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers when determining a motion to dismiss for failure to state a claim upon which relief can be granted. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[5]** Federal Civil Procedure 170A 🗝 657.5(1)

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(A) Pleadings in General
            170Ak654 Construction
                170Ak657.5 Pro Se or Lay Pleadings
                    170Ak657.5(1) k. In General. Most Cited Cases

When determining a motion to dismiss for failure to state a claim upon which relief can be granted, the court must interpret a pro se plaintiff's submissions to raise the strongest arguments that they suggest. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[6]** Federal Civil Procedure 170A 🗝 657.5(1)

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(A) Pleadings in General
            170Ak654 Construction
                170Ak657.5 Pro Se or Lay Pleadings
                    170Ak657.5(1) k. In General. Most Cited Cases

When reviewing pro se submissions on a motion to dismiss for failure to state a claim upon which relief can be granted, a district court should look at them with a lenient eye, allowing borderline cases to proceed. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[7]** Attorney and Client 45 🗝 62

45 Attorney and Client
    45II Retainer and Authority
        45k62 k. Rights of Litigants to Act in Person or by Attorney. Most Cited Cases

Federal Civil Procedure 170A 🗝 657.5(1)

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(A) Pleadings in General
            170Ak654 Construction
                170Ak657.5 Pro Se or Lay Pleadings
                    170Ak657.5(1) k. In General. Most Cited Cases

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2008 WL 5459147 (N.D.N.Y.)
(Cite as: 2008 WL 5459147 (N.D.N.Y.))

A court cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations, or arguments that the submissions themselves do not suggest, and should not excuse frivolous or vexatious filings by pro se litigants; pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law.

**[8] Federal Civil Procedure 170A** 🔑 **657.5(1)**

170A Federal Civil Procedure
 170AVII Pleadings and Motions
  170AVII(A) Pleadings in General
   170Ak654 Construction
    170Ak657.5 Pro Se or Lay Pleadings
     170Ak657.5(1) k. In General. Most Cited Cases

A court is not obliged to reconcile a pro se plaintiff's own pleadings that are contradicted by other matter asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint; where such contradiction exists, the pro se plaintiff's allegations are insufficient to defeat a motion to dismiss for failure to state a claim upon which relief can be granted. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[9] Civil Rights 78** 🔑 **1031**

78 Civil Rights
 78I Rights Protected and Discrimination Prohibited in General
  78k1030 Acts or Conduct Causing Deprivation
  78k1031 k. In General. Most Cited Cases

A claim for negligence is not cognizable under § 1983. 42 U.S.C.A. § 1983.

**[10] Criminal Law 110** 🔑 **412.2(3)**

110 Criminal Law
 110XVII Evidence
  110XVII(M) Declarations
   110k411 Declarations by Accused
    110k412.2 Right to Counsel; Caution
     110k412.2(3) k. Informing Accused as to

His Rights. Most Cited Cases

City and county law enforcement officers' failure to read arrestee his *Miranda* rights did not violate arrestee's Fifth Amendment right against self-incrimination as required for § 1983 claim against city and county; Fifth Amendment, like all the other guaranties in the first eight amendments, applies only to proceedings by the Federal Government. U.S.C.A. Const.Amend. 5; 42 U.S.C.A. § 1983.

**[11] Criminal Law 110** 🔑 **412.1(4)**

110 Criminal Law
 110XVII Evidence
  110XVII(M) Declarations
   110k411 Declarations by Accused
    110k412.1 Voluntary Character of Statement
     110k412.1(4) k. Interrogation and Investigatory Questioning. Most Cited Cases

City and county law enforcement officers' failure to read arrestee his *Miranda* rights did not violate arrestee's right against self-incrimination as required for § 1983 claim against city and county, where officers did not initiate any questioning of arrestee after he was taken into custody. U.S.C.A. Const.Amends. 5, 14.

**[12] Constitutional Law 92** 🔑 **3855**

92 Constitutional Law
 92XXVII Due Process
  92XXVII(A) In General
   92k3848 Relationship to Other Constitutional Provisions; Incorporation
    92k3855 k. Fifth Amendment. Most Cited Cases

The Fifth Amendment's guaranty of the right against self incrimination applies to the states through the Due Process Clause of the Fourteenth Amendment. U.S.C.A. Const.Amends. 5, 14.

**[13] Criminal Law 110** 🔑 **412.1(4)**

110 Criminal Law
 110XVII Evidence
  110XVII(M) Declarations

--- F.Supp.2d ----, 2008 WL 5459147 (N.D.N.Y.)
(Cite as: 2008 WL 5459147 (N.D.N.Y.))

110k411 Declarations by Accused
110k412.1 Voluntary Character of Statement
110k412.1(4) k. Interrogation and
Investigatory Questioning. Most Cited Cases

**Criminal Law 110**  🔑   **412.2(2)**

110 Criminal Law
110XVII Evidence
110XVII(M) Declarations
110k411 Declarations by Accused
110k412.2 Right to Counsel; Caution
110k412.2(2) k. Accusatory Stage of
Proceedings; Custody. Most Cited Cases
*Miranda's* warning and waiver requirements apply only in
the context of custodial interrogation; a person must have
been both in custody and subjected to interrogation for
statements made without warnings or waiver to be
inadmissible. U.S.C.A. Const.Amend. 5.

**[14] Arrest 35**  🔑   **68(2)**

35 Arrest
35II On Criminal Charges
35k68 Mode of Making Arrest
35k68(2) k. Use of Force. Most Cited Cases
When evaluating a claim of excessive force during the
course of arrest under the Fourth Amendment, courts must
examine whether the use of force is objectively
unreasonable in light of the facts and circumstances
confronting them, without regard to the police officers'
underlying intent or motivation. U.S.C.A. Const.Amend.
4.

**[15] Arrest 35**  🔑   **68(2)**

35 Arrest
35II On Criminal Charges
35k68 Mode of Making Arrest
35k68(2) k. Use of Force. Most Cited Cases
When evaluating a claim of excessive force during the
course of arrest under the Fourth Amendment, courts must
measure the reasonableness of the use of force by
considering the facts and circumstances of each particular

case, including the crime committed, its severity, the threat
of danger to the officer and society, and whether the
suspect is resisting or attempting to evade arrest. U.S.C.A.
Const.Amend. 4.

**[16] Arrest 35**  🔑   **68(2)**

35 Arrest
35II On Criminal Charges
35k68 Mode of Making Arrest
35k68(2) k. Use of Force. Most Cited Cases
Use of force by city police officers in the course of arrest
was not excessive as would constitute Fourth Amendment
violation, despite arrestee's allegation that he received
wrist injury that took five months to heal when officers
handcuffed and "literally dragged" him from his apartment
to elevator; arrestee clearly stated that he did not suffer
serious injuries as a result of arrest, and arrestee made no
allegations regarding the tightness of the handcuffs,
whether he was in pain during arrest, and if so, whether he
communicated his pain to the officers. U.S.C.A.
Const.Amend. 4; 42 U.S.C.A. § 1983.

**[17] Arrest 35**  🔑   **68(2)**

35 Arrest
35II On Criminal Charges
35k68 Mode of Making Arrest
35k68(2) k. Use of Force. Most Cited Cases
A reasonable arrest involves handcuffing the suspect, and
to be effective handcuffs must be tight enough to prevent
the arrestee's hands from slipping out. U.S.C.A.
Const.Amend. 4.

**[18] False Imprisonment 168**  🔑   **2**

168 False Imprisonment
168I Civil Liability
168I(A) Acts Constituting False Imprisonment and
Liability Therefor
168k1 Nature and Elements of False
Imprisonment
168k2 k. In General. Most Cited Cases
A claim for false arrest or false imprisonment, which terms

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2008 WL 5459147 (N.D.N.Y.)
(Cite as: 2008 WL 5459147 (N.D.N.Y.))

are synonymous under New York law, is evaluated pursuant to the Fourth Amendment right to be free from unreasonable searches and seizures. U.S.C.A. Const.Amend. 4.

**[19] Civil Rights 78 ☞ 1037**

78 Civil Rights
    78I Rights Protected and Discrimination Prohibited in General
        78k1030 Acts or Conduct Causing Deprivation
            78k1037 k. Malicious Prosecution and False Imprisonment; Mental Health Commitments. Most Cited Cases

**Civil Rights 78 ☞ 1088(4)**

78 Civil Rights
    78I Rights Protected and Discrimination Prohibited in General
            78k1088 Police, Investigative, or Law Enforcement Activities
                78k1088(4) k. Arrest and Detention. Most Cited Cases

**False Imprisonment 168 ☞ 2**

168 False Imprisonment
    168I Civil Liability
        168I(A) Acts Constituting False Imprisonment and Liability Therefor
            168k1 Nature and Elements of False Imprisonment
                168k2 k. In General. Most Cited Cases
The elements of a claim for false arrest or false imprisonment in violation of Fourth Amendment right to be free of unreasonable searches and seizures, whether brought under § 1983 or New York common law, are as follows: (1) the defendant intentionally confined the plaintiff; (2) the plaintiff was aware of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. U.S.C.A. Const.Amend. 4; 42 U.S.C.A. § 1983.

**[20] False Imprisonment 168 ☞ 13**

168 False Imprisonment
    168I Civil Liability
        168I(A) Acts Constituting False Imprisonment and Liability Therefor
                168k9 Defenses
                    168k13 k. Probable Cause. Most Cited Cases

**False Imprisonment 168 ☞ 22**

168 False Imprisonment
    168I Civil Liability
        168I(B) Actions
            168k21 Evidence
                168k22 k. Presumptions and Burden of Proof. Most Cited Cases
The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest; however, under New York law, a warrantless arrest raises a rebuttable presumption that the arrest is unlawful. U.S.C.A. Const.Amend. 4.

**[21] Arrest 35 ☞ 68(9)**

35 Arrest
    35II On Criminal Charges
        35k68 Mode of Making Arrest
            35k68(6) Intrusion or Entry
                35k68(9) k. Entry Without Warrant Permissible. Most Cited Cases
A warrantless arrest in the home is permitted under Fourth Amendment where there is probable cause plus exigent circumstances, or where the entry is consensual. U.S.C.A. Const.Amend. 4.

**[22] Arrest 35 ☞ 68(10)**

35 Arrest
    35II On Criminal Charges
        35k68 Mode of Making Arrest
            35k68(6) Intrusion or Entry

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2008 WL 5459147 (N.D.N.Y.)
(Cite as: 2008 WL 5459147 (N.D.N.Y.))

35k68(10) k. Entry Without Warrant Impermissible. Most Cited Cases

No exigent circumstances existed as would permit warrantless in-home arrest by city police officers, where officers arrested suspect on misdemeanor aggravated harassment charge based on statement by alleged victim four days prior. U.S.C.A. Const.Amend. 4; N.Y.McKinney's Penal Law § 240.30.

**[23] Arrest 35 ⟩ 68(13)**

35 Arrest
  35II On Criminal Charges
    35k68 Mode of Making Arrest
      35k68(6) Intrusion or Entry
        35k68(13) k. Consent. Most Cited Cases

Regardless whether arrestee was under a false impression regarding the purpose of city police officers' visit to arrestee's home due to misleading statements by the officers, or a simple misunderstanding on arrestee's part, arrestee's consent to officer's entry was nonetheless valid, eliminating the requirement for a warrant for in-home arrest on aggravated harassment charge; consent under false pretenses, absent outright fraud, such as where a police officer falsely claims to have a warrant in order to gain entry to a suspect's home, was still valid. U.S.C.A. Const.Amend. 4; N.Y.McKinney's Penal Law § 240.30.

**[24] Arrest 35 ⟩ 63.4(2)**

35 Arrest
  35II On Criminal Charges
    35k63 Officers and Assistants, Arrest Without Warrant
      35k63.4 Probable or Reasonable Cause
        35k63.4(2) k. What Constitutes Such Cause in General. Most Cited Cases

Probable cause to arrest a person exists if the law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested. U.S.C.A. Const.Amend. 4.

**[25] Arrest 35 ⟩ 63.4(7.1)**

35 Arrest
  35II On Criminal Charges
    35k63 Officers and Assistants, Arrest Without Warrant
      35k63.4 Probable or Reasonable Cause
        35k63.4(7) Information from Others
          35k63.4(7.1) k. In General. Most Cited Cases

City police officers had probable cause to make arrest for second degree aggravated harassment; alleged victim reported receiving repeated unwanted written and verbal communications from arrestee, wherein arrestee told victim that victim "needed to find God" and that victim was a Devil worshiper, victim claimed that communications persisted despite arrestee having been twice contacted by police regarding the matter, and communications caused victim and his wife to be annoyed and alarmed. U.S.C.A. Const.Amend. 4; N.Y.McKinney's Penal Law § 240.30(1).

**[26] Federal Civil Procedure 170A ⟩ 1824**

170A Federal Civil Procedure
  170AXI Dismissal
    170AXI(B) Involuntary Dismissal
    170AXI(B)5 Proceedings
      170Ak1824 k. Dismissal on Court's Own Motion. Most Cited Cases

Court may sua sponte dismiss claims against a non-moving defendant in the interest of judicial economy for failure to state a claim.

**[27] Civil Rights 78 ⟩ 1088(4)**

78 Civil Rights
  78I Rights Protected and Discrimination Prohibited in General
    78k1088 Police, Investigative, or Law Enforcement Activities
      78k1088(4) k. Arrest and Detention. Most Cited Cases

Failure of county sheriff's office to intervene to prevent allegedly false arrest or imprisonment did not violate

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2008 WL 5459147 (N.D.N.Y.)
(Cite as: 2008 WL 5459147 (N.D.N.Y.))

arrestee's constitutional rights, where arrest by city police officers for second degree aggravated harassment was lawful under the Fourth Amendment. U.S.C.A. Const.Amend. 4.

**[28] Prisons 310 ☞    359**

310 Prisons
    310III Pretrial Detention
        310k351 Care, Custody, Confinement, and Control
            310k359 k. Search, Seizure, and Confiscation. Most Cited Cases
Persons charged with a misdemeanor and remanded to a local correctional facility have a right to be free of a strip search absent reasonable suspicion that they are carrying contraband or weapons. U.S.C.A. Const.Amend. 4.

**[29] Prisons 310 ☞    359**

310 Prisons
    310III Pretrial Detention
        310k351 Care, Custody, Confinement, and Control
            310k359 k. Search, Seizure, and Confiscation. Most Cited Cases
Alleged strip search of arrestee after his admission to county correctional facility was unreasonable, where none of the circumstances surrounding arrest or underlying charge of second degree aggravated harassment warranted reasonable suspicion that arrestee was carrying contraband or weapons at the time of search. U.S.C.A. Const.Amend. 4; N.Y.McKinney's Penal Law § 240.30(1).

**[30] Constitutional Law 92 ☞    4545(3)**

92 Constitutional Law
    92XXVII Due Process
        92XXVII(H) Criminal Law
            92XXVII(H)3 Law Enforcement
                92k4543 Custody and Confinement of Suspects; Pretrial Detention
                    92k4545 Conditions
                        92k4545(3) k. Safety and Security. Most Cited Cases

**Prisons 310 ☞    356**

310 Prisons
    310III Pretrial Detention
        310k351 Care, Custody, Confinement, and Control
            310k356 k. Protection from Violence, Assault, or Abuse. Most Cited Cases
County correctional facility officers did not fail to protect pre-trial detainee in violation of his due process rights, although officers allegedly watched while assault took place in detainee's presence and assailant allegedly asked detainee "if he had panties" which caused detainee to fear for his safety, where detainee was not assaulted himself and assailant was removed from group cell after assault, thus eliminating whatever risk of harm existed. U.S.C.A. Const.Amend. 14.

**[31] Constitutional Law 92 ☞    4545(1)**

92 Constitutional Law
    92XXVII Due Process
        92XXVII(H) Criminal Law
            92XXVII(H)3 Law Enforcement
                92k4543 Custody and Confinement of Suspects; Pretrial Detention
                    92k4545 Conditions
                        92k4545(1) k. In General. Most Cited Cases
The Due Process Clause of the Fourteenth Amendment protects pre-trial detainees against intolerable prison conditions. U.S.C.A. Const.Amend. 14.

**[32] Constitutional Law 92 ☞    4545(1)**

92 Constitutional Law
    92XXVII Due Process
        92XXVII(H) Criminal Law
            92XXVII(H)3 Law Enforcement
                92k4543 Custody and Confinement of Suspects; Pretrial Detention
                    92k4545 Conditions
                        92k4545(1) k. In General. Most Cited Cases
The failure to protect a pre-trial detainee from harm is one type of intolerable prison condition prohibited by Due

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2008 WL 5459147 (N.D.N.Y.)
(Cite as: 2008 WL 5459147 (N.D.N.Y.))

Process Clause of the Fourteenth Amendment. U.S.C.A. Const.Amend. 14.

**[33] Constitutional Law 92 🔑   4545(3)**

92 Constitutional Law
   92XXVII Due Process
     92XXVII(H) Criminal Law
      92XXVII(H)3 Law Enforcement
       92k4543 Custody and Confinement of Suspects; Pretrial Detention
        92k4545 Conditions
         92k4545(3) k. Safety and Security.
Most Cited Cases
Where pre-trial detainee does not allege that he was assaulted or threatened by other prison inmates, or where detainee only alleges that he was in fear of an assault, a claim for failure to protect in violation of Due Process Clause of Fourteenth Amendment must be dismissed. U.S.C.A. Const.Amend. 14.

**[34] Constitutional Law 92 🔑   4545(2)**

92 Constitutional Law
   92XXVII Due Process
     92XXVII(H) Criminal Law
      92XXVII(H)3 Law Enforcement
       92k4543 Custody and Confinement of Suspects; Pretrial Detention
        92k4545 Conditions
         92k4545(2) k. Medical Treatment.
Most Cited Cases
Where a pre-trial detainee alleges deliberate indifference to a medical need while incarcerated in a local correctional facility, such a claim is evaluated under the Due Process Clause of the Fourteenth Amendment; the pre-trial detainee's rights are at least as great as those provided to a convicted prisoner under the Eighth Amendment, and something more than negligence on the part of the defendant is required. U.S.C.A. Const.Amends. 8, 14.

**[35] Constitutional Law 92 🔑   4545(2)**

92 Constitutional Law
   92XXVII Due Process
     92XXVII(H) Criminal Law
      92XXVII(H)3 Law Enforcement
       92k4543 Custody and Confinement of Suspects; Pretrial Detention
        92k4545 Conditions
         92k4545(2) k. Medical Treatment.
Most Cited Cases
In order for a pre-trial detainee incarcerated in a local correctional facility to establish a claim for deliberate indifference to a medical need in violation of Due Process Clause, detainee must allege: (1) a deprivation that is "sufficiently serious," i.e., a deprivation that presents a condition of urgency, one that may produce death, degeneration, or extreme pain, and (2) "reckless indifference," that is, that defendants were aware of detainee's serious medical needs and consciously disregarded a substantial risk of serious harm. U.S.C.A. Const.Amend. 14.

**[36] Constitutional Law 92 🔑   4545(2)**

92 Constitutional Law
   92XXVII Due Process
     92XXVII(H) Criminal Law
      92XXVII(H)3 Law Enforcement
       92k4543 Custody and Confinement of Suspects; Pretrial Detention
        92k4545 Conditions
         92k4545(2) k. Medical Treatment.
Most Cited Cases

**Prisons 310 🔑   362**

310 Prisons
   310III Pretrial Detention
     310k361 Health and Medical Care
      310k362 k. In General. Most Cited Cases
Pre-trial detainee's allegedly bruised rib was not serious medical need and thus any failure to address injury by county correctional facility officers was not deliberate indifference to medical need in violation of detainee's due process rights. U.S.C.A. Const.Amend. 14.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2008 WL 5459147 (N.D.N.Y.)
(Cite as: 2008 WL 5459147 (N.D.N.Y.))

**[37] Constitutional Law 92 ☞ 4545(2)**

92 Constitutional Law
    92XXVII Due Process
        92XXVII(H) Criminal Law
            92XXVII(H)3 Law Enforcement
                92k4543 Custody and Confinement of
Suspects; Pretrial Detention
                92k4545 Conditions
                    92k4545(2) k. Medical Treatment.
Most Cited Cases

**Prisons 310 ☞ 362**

310 Prisons
    310III Pretrial Detention
        310k361 Health and Medical Care
            310k362 k. In General. Most Cited Cases
Even if pre-trial detainee's allegedly bruised rib was serious medical need, county correctional facility and officers were not deliberately indifferent to that need in violation of detainee's due process rights, where detainee admitted that his medical concerns were in fact addressed by someone at facility. U.S.C.A. Const.Amend. 14.

**[38] Constitutional Law 92 ☞ 4545(4)**

92 Constitutional Law
    92XXVII Due Process
        92XXVII(H) Criminal Law
            92XXVII(H)3 Law Enforcement
                92k4543 Custody and Confinement of
Suspects; Pretrial Detention
                92k4545 Conditions
                    92k4545(4) k. Other Particular
Conditions. Most Cited Cases

**Prisons 310 ☞ 353**

310 Prisons
    310III Pretrial Detention
        310k351 Care, Custody, Confinement, and Control
            310k353 k. Particular Violations, Punishments,

Deprivations, and Conditions. Most Cited Cases
Pre-trial detainee at county correctional facility was not deprived of food and water in violation of his rights under Due Process Clause of Fourteenth Amendment; detainee was incarcerated after his arrest at 5:35 p.m. and received food and drink the following morning. U.S.C.A. Const.Amend. 14.

**[39] Prisons 310 ☞ 157**

310 Prisons
    310II Prisoners and Inmates
        310II(B) Care, Custody, Confinement, and Control
            310k157 k. Food and Drink. Most Cited Cases
Where a prisoner is deprived of two of three meals served regularly each day, a constitutional violation may exist if that one meal is nutritionally inadequate.

**[40] Municipal Corporations 268 ☞ 1016**

268 Municipal Corporations
    268XVI Actions
        268k1016 k. Capacity to Sue or Be Sued in
General. Most Cited Cases
An administrative arm of a municipality cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity.

**[41] Civil Rights 78 ☞ 1389**

78 Civil Rights
    78III Federal Remedies in General
        78k1385 Parties
            78k1389 k. Criminal Law Enforcement; Prisons.
Most Cited Cases

**Civil Rights 78 ☞ 1395(6)**

78 Civil Rights
    78III Federal Remedies in General
        78k1392 Pleading
            78k1395 Particular Causes of Action

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2008 WL 5459147 (N.D.N.Y.)
(Cite as: 2008 WL 5459147 (N.D.N.Y.))

78k1395(4) Criminal Law Enforcement; Police and Prosecutors
78k1395(6) k. Arrest, Search, and Detention. Most Cited Cases
Court would construe arrestee's pro se complaint alleging claims under § 1983 against city and county administrative arms as including claims against city and county; although administrative arms were not proper parties because they did not have separate identities apart from municipalities, city and county asserted that city and county were proper parties and court had duty to liberally construe complaint due to arrestee's pro se status. 42 U.S.C.A. § 1983.

[42] Civil Rights 78 ☞ 1345

78 Civil Rights
    78III Federal Remedies in General
        78k1342 Liability of Municipalities and Other Governmental Bodies
            78k1345 k. Acts of Officers and Employees in General; Vicarious Liability and Respondeat Superior in General. Most Cited Cases

Civil Rights 78 ☞ 1351(1)

78 Civil Rights
    78III Federal Remedies in General
        78k1342 Liability of Municipalities and Other Governmental Bodies
            78k1351 Governmental Ordinance, Policy, Practice, or Custom
                78k1351(1) k. In General. Most Cited Cases
A municipal entity is not liable pursuant to § 1983 under the theory of respondeat superior, but may be liable where its employee acted pursuant to an official policy, custom, or practice of said entity. 42 U.S.C.A. § 1983.

[43] Civil Rights 78 ☞ 1401

78 Civil Rights
    78III Federal Remedies in General
        78k1400 Presumptions, Inferences, and Burdens of Proof
            78k1401 k. In General. Most Cited Cases

A policy, custom, or practice giving rise to a municipal entity's liability on a § 1983 claim may be inferred where the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction. 42 U.S.C.A. § 1983.

[44] Civil Rights 78 ☞ 1345

78 Civil Rights
    78III Federal Remedies in General
        78k1342 Liability of Municipalities and Other Governmental Bodies
            78k1345 k. Acts of Officers and Employees in General; Vicarious Liability and Respondeat Superior in General. Most Cited Cases
Where a § 1983 claim against a municipal entity is based solely on the actions of municipality's officers, municipal liability cannot exist if the individual defendants have not violated the plaintiff's constitutional rights. 42 U.S.C.A. § 1983.

[45] Civil Rights 78 ☞ 1394

78 Civil Rights
    78III Federal Remedies in General
        78k1392 Pleading
            78k1394 k. Complaint in General. Most Cited Cases
The notice pleading requirement for a § 1983 claim against a municipality based on constitutional violations by its officers will be met if a plaintiff alleges that a formal policy which is officially endorsed by the municipality caused the plaintiff's injuries; even where allegations in the complaint of the existence of an official policy are not buttressed by supporting facts, dismissal is not warranted as long as the municipality has fair notice of what the plaintiff's claim is and the grounds upon which it rests. 42 U.S.C.A. § 1983; Fed.Rules Civ.Proc.Rule 8(a)(2), 28 U.S.C.A.

[46] Civil Rights 78 ☞ 1395(6)

78 Civil Rights
    78III Federal Remedies in General

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2008 WL 5459147 (N.D.N.Y.)
(Cite as: 2008 WL 5459147 (N.D.N.Y.))

78k1392 Pleading
78k1395 Particular Causes of Action
78k1395(4) Criminal Law Enforcement;
Police and Prosecutors
78k1395(6) k. Arrest, Search, and
Detention. Most Cited Cases
Arrestee's allegation that county had policies or
procedures pursuant to which its employees carried out
their duties put county on notice of § 1983 claim asserting
county's liability for alleged unlawful strip search by
county correctional officers after arrestee was admitted to
county correctional facility. U.S.C.A. Const.Amend. 4; 42
U.S.C.A. § 1983; Fed.Rules Civ.Proc.Rule 8(a)(2), 28
U.S.C.A.

[47] Municipal Corporations 268 ☞ 741.20

268 Municipal Corporations
268XII Torts
268XII(A) Exercise of Governmental and
Corporate Powers in General
268k741 Notice or Presentation of Claims for
Injury
268k741.20 k. Requirement as Mandatory
or Condition Precedent. Most Cited Cases
As a condition precedent to commencing a tort action
against New York municipalities, or any of their officers,
agents, or employees, a plaintiff must file a notice of claim
within ninety days after the claim arises. N.Y.McKinney's
General Municipal Law § 50-e.

[48] Negligence 272 ☞ 202

272 Negligence
272I In General
272k202 k. Elements in General. Most Cited Cases

In New York, in order to establish a claim of negligence,
plaintiff must prove (1) the existence of a duty on
defendant's part as to plaintiff; (2) a breach of this duty;
and (3) injury to the plaintiff as a result thereof.

[49] Counties 104 ☞ 146

104 Counties
104VII Torts
104k146 k. Acts of Officers or Agents. Most Cited
Cases
Under New York law, county was not liable in negligence
to pretrial detainee for the alleged actions of county
correctional facility officers, where detainee alleged only
emotional, not physical, damage.

[50] Damages 115 ☞ 57.14

115 Damages
115III Grounds and Subjects of Compensatory
Damages
115III(A) Direct or Remote, Contingent, or
Prospective Consequences or Losses
115III(A)2 Mental Suffering and Emotional
Distress
115k57.13 Negligent Infliction of Emotional
Distress
115k57.14 k. In General. Most Cited
Cases

Damages 115 ☞ 57.27

115 Damages
115III Grounds and Subjects of Compensatory
Damages
115III(A) Direct or Remote, Contingent, or
Prospective Consequences or Losses
115III(A)2 Mental Suffering and Emotional
Distress
115k57.26 Injury or Threat to Another;
Bystanders
115k57.27 k. In General. Most Cited
Cases
A plaintiff who alleges that he suffered emotional harm
due to a defendant's negligence may recover on a claim for
negligent infliction of emotional distress (NIED) in New
York under either a "bystander theory," meaning the
plaintiff was a bystander who was in the zone of danger
and suffers emotional trauma as a result of his
observations, or a "direct duty theory," meaning the
defendant breached a direct duty to the plaintiff which
results in emotional injury to the plaintiff.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2008 WL 5459147 (N.D.N.Y.)
(Cite as: 2008 WL 5459147 (N.D.N.Y.))

**[51] Damages 115** 🗝    **57.27**

115 Damages
    115III Grounds and Subjects of Compensatory Damages
    115III(A) Direct or Remote, Contingent, or Prospective Consequences or Losses
    115III(A)2 Mental Suffering and Emotional Distress
    115k57.26 Injury or Threat to Another; Bystanders
    115k57.27 k. In General. Most Cited Cases
In order to recover under the bystander theory of negligent infliction of emotional distress (NIED) in New York, a plaintiff must prove that he witnessed the death or serious bodily injury of a member of his immediate family.

**[52] Damages 115** 🗝    **57.14**

115 Damages
    115III Grounds and Subjects of Compensatory Damages
    115III(A) Direct or Remote, Contingent, or Prospective Consequences or Losses
    115III(A)2 Mental Suffering and Emotional Distress
    115k57.13 Negligent Infliction of Emotional Distress
    115k57.14 k. In General. Most Cited Cases
Under New York law, the duty allegedly breached on a claim under the direct duty theory of negligent infliction of emotional distress (NIED) must be specific to the plaintiff and not some amorphous, free-floating duty to society.

**[53] Damages 115** 🗝    **57.16(1)**

115 Damages
    115III Grounds and Subjects of Compensatory Damages
    115III(A) Direct or Remote, Contingent, or Prospective Consequences or Losses
    115III(A)2 Mental Suffering and Emotional

Distress
    115k57.13 Negligent Infliction of Emotional Distress
    115k57.16 Nature of Injury or Threat
    115k57.16(1) k. In General. Most Cited Cases

**Damages 115** 🗝    **57.27**

115 Damages
    115III Grounds and Subjects of Compensatory Damages
    115III(A) Direct or Remote, Contingent, or Prospective Consequences or Losses
    115III(A)2 Mental Suffering and Emotional Distress
    115k57.26 Injury or Threat to Another; Bystanders
    115k57.27 k. In General. Most Cited Cases
Under New York law, where a plaintiff has not established that his physical safety was ever threatened or endangered by defendants, he cannot recover under either the direct duty theory or bystander theory of negligent infliction of emotional distress (NIED).

**[54] Damages 115** 🗝    **57.29**

115 Damages
    115III Grounds and Subjects of Compensatory Damages
    115III(A) Direct or Remote, Contingent, or Prospective Consequences or Losses
    115III(A)2 Mental Suffering and Emotional Distress
    115k57.26 Injury or Threat to Another; Bystanders
    115k57.29 k. Other Particular Cases. Most Cited Cases
Under New York law, county correctional facility officers who allegedly stood by and watched while two inmates who occupied same cell as pre-trial detainee engaged in physical altercation did not unreasonably endanger detainee's physical safety as would support claim for negligent infliction of emotional distress (NIED), where officers removed assailant from cell following altercation,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2008 WL 5459147 (N.D.N.Y.)
(Cite as: 2008 WL 5459147 (N.D.N.Y.))

even if assailant was not removed before asking detainee if detainee was wearing panties.

**[55] Damages 115** 🗝️   **57.21**

115 Damages
   115III Grounds and Subjects of Compensatory Damages
      115III(A) Direct or Remote, Contingent, or Prospective Consequences or Losses
         115III(A)2 Mental Suffering and Emotional Distress
            115k57.19 Intentional or Reckless Infliction of Emotional Distress; Outrage
               115k57.21 k. Elements in General. Most Cited Cases
To state a claim for intentional infliction of emotional distress (IIED) under New York law, a plaintiff must plead the following four elements: (1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal relationship between the conduct and the resulting injury; and (4) severe emotional distress.

**[56] Damages 115** 🗝️   **57.22**

115 Damages
   115III Grounds and Subjects of Compensatory Damages
      115III(A) Direct or Remote, Contingent, or Prospective Consequences or Losses
         115III(A)2 Mental Suffering and Emotional Distress
            115k57.19 Intentional or Reckless Infliction of Emotional Distress; Outrage
               115k57.22 k. Nature of Conduct. Most Cited Cases
Under New York law, the alleged conduct underlying claim for intentional infliction of emotional distress (IIED) must be so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.

**[57] Damages 115** 🗝️   **57.22**

115 Damages
   115III Grounds and Subjects of Compensatory Damages
      115III(A) Direct or Remote, Contingent, or Prospective Consequences or Losses
         115III(A)2 Mental Suffering and Emotional Distress
            115k57.19 Intentional or Reckless Infliction of Emotional Distress; Outrage
               115k57.22 k. Nature of Conduct. Most Cited Cases
Under New York law as predicted by district court, an unlawful strip search, without more, may be considered extreme and outrageous conduct giving rise to liability on claim for intentional infliction of emotional distress (IIED).

Wlodzimierz J. Dzwonczyk, pro se.

Rory A. McMahon, City of Syracuse Corporation Counsel, Syracuse, NY, for the Defendants, Syracuse City Police Department; Gary Miguel, Chief of Police, Syracuse City Police Department; and John Does, in their official and individual capacities.

Paul F. Murak, Sliwa & Lane, Buffalo, NY, for the Defendants, Syracuse Housing Authority Security; and John Doe, Syracuse Housing Authority Detective.

Karen A. Bleskoski, Gordon J. Cuffy, Onondaga County Attorney, Syracuse, NY, for the Defendants, Onondaga County Sheriff's Office; Onondaga County Justice Center; and John Does.

*Amended Memorandum, Decision and Order*

NEAL P. McCURN, Senior District Judge.

*I. Introduction*

**\*1** Presently before the court in this civil rights action are two dispositive motions. Defendants Onondaga County Sheriff's Office, Onondaga County Justice Center and John Does (collectively, "the County Defendants") move

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2008 WL 5459147 (N.D.N.Y.)
(Cite as: 2008 WL 5459147 (N.D.N.Y.))

to dismiss the complaint filed by plaintiff, Wlodzimierz J. Dzwonczyk ("Plaintiff") for failure to state claims against them upon which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6). *See* Dkt. No. 16. Defendants Syracuse City Police Department ("SPD"); Gary Miguel, Chief of Police, Syracuse City Police Department ("Miguel"); and John Does (collectively, "the City Defendants") move for judgment on the pleadings in their favor pursuant to Fed.R.Civ.P. 12(c). *See* Dkt. No. 37. Plaintiff opposes both motions. No reply having been filed by the County Defendants, and the City Defendants having informed the court of their intent not to reply, both motions are fully briefed. Decision regarding the motions is on the papers submitted, without oral argument.

### II. Procedural Background

Plaintiff, appearing pro se, filed a complaint against the County Defendants and City Defendants as well as defendants, Syracuse Housing Authority Security and John Doe, Syracuse Housing Authority Detective (collectively, "SHA Defendants"), alleging the violation of his rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution as predicates for civil rights claims pursuant to 42 U.S.C. § 1983, as well as several New York common law tort claims, stemming from events surrounding Plaintiff's arrest and detention for aggravated harassment on or about May 23, 2008. The City Defendants and SHA Defendants thereafter answered the complaint, while the County Defendants filed a pre-answer motion to dismiss. The City Defendants' motion for judgment on the pleadings followed.

### III. Legal Standard

[1] The standard to be applied when deciding a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) is identical to that of a motion to dismiss for failure to state claims upon which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6). *See Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994). When deciding a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the court must accept the allegations of fact in the complaint as true, drawing all reasonable inferences in the plaintiff's favor. *See World Religious Relief, Inc. v. Sirius Satellite Radio, Inc.,* No. 05-CV-8257, 2007 WL 2261549, at *1

(S.D.N.Y. Aug. 7, 2007) (*quoting Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994)). Additionally, when deciding such a motion, the court may only consider "the factual allegations in the complaint, [...] documents attached to the complaint as exhibits or incorporated by reference, [... matters of which judicial notice might be taken, and [...] documents either in plaintiff's] possession or of which [the] plaintiff [ ] had knowledge and relied on in bringing suit." *Muller-Paisner v. TIAA,* 446 F.Supp.2d 221, 226-227 (S.D.N.Y.2006) (*citing Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993) (internal citations omitted)) (*rev'd in part on other grounds,* 289 Fed.Appx. 461 (2d Cir.2008)). Particularly relevant here, an arrest report is a matter of public record that may be considered on a Rule 12(b)(6) motion to dismiss. *See McCloud v. Cutler,* No. 06-CV-5443, 2008 WL 906701, at *1 n. 2 (E.D.N.Y. Apr. 3, 2008) (*citing Vasquez v. City of New York,* No. 99 Civ. 4606(DC), 2000 WL 869492, at *1 n. 3 (S.D.N.Y. June 29, 2000)).

**\*2** [2] A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).<sup>FNI</sup> The Court of Appeals for the Second Circuit has interpreted the foregoing language to require that lower courts apply "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible [,]" but does not require a heightened pleading standard for civil rights claims. *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) (emphasis in original).

[3][4][5][6] Finally, the court is mindful of the well-established principle that a pro se litigant's papers are to be construed liberally, especially when civil rights violations are alleged. *See Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir.2008) (internal citations omitted). Thus, "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp,* 521 F.3d 202, 214 (2d Cir.2008) (*quoting Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (*per curiam* )). Accordingly, the court must interpret Plaintiff's "submissions to raise the strongest arguments that they suggest." *Diaz v. United*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2008 WL 5459147 (N.D.N.Y.)
(Cite as: 2008 WL 5459147 (N.D.N.Y.))

*States,* 517 F.3d 608, 613 (2d Cir.2008) (internal quotation and citation omitted). Further, "when reviewing pro se submissions, a district court should look at them 'with a lenient eye, allowing borderline cases to proceed.' " *Phillips v. Girdich,* 408 F.3d 124, 127-128 (2d Cir.2005) (quoting *Fleming v. United States,* 146 F.3d 88, 90 (2d Cir.1998)) (*per curiam* ). Thus, courts have held it appropriate to consider assertions in a pro se plaintiff's papers in opposition to a motion to dismiss to effectively amend the allegations of the complaint, to the extent such assertions are consistent with the allegations of the complaint. *See Robles v. Bleau,* No 9:07-CV-0464, 2008 WL 4693153, at *6 (N.D.N.Y. Oct. 22, 2008) (citations omitted).

[7][8] At the same time, the court is mindful that, according to Second Circuit precedent, it

> cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations, or arguments that the submissions themselves do not suggest, ... [and it] should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law[.]

*Triestman v. Federal Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) (internal citations and quotations omitted). Accordingly, the court notes that it "is not obliged to reconcile [a pro se] plaintiff's own pleadings that are contradicted by other matter asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint." *Koulkina v. City of New York,* 559 F.Supp.2d 300, 314 (S.D.N.Y.2008) (internal citation omitted). Thus, where such contradiction exists, the pro se plaintiff's allegations "are insufficient to defeat a motion to dismiss." *Id.*

## IV. Factual Background

*3 The court will, as it must, accept the following allegations of fact in the Plaintiff's complaint ("the Complaint") as true, drawing all reasonable inferences in Plaintiff's favor. *See supra,* at ----.

On or about May 18, 2008, Plaintiff sent a "Letter of Trespass Notice" to one Daniel Bebber.[FN2] Mr. Bebber is apparently employed as a delivery person at a local pharmacy. At one time Mr. Bebber delivered medications to Plaintiff as well as to Plaintiff's parents, through which association Plaintiff and Mr. Bebber became acquainted.

On May 23, 2008, Plaintiff was arrested at his residence for aggravated harassment. It is unclear from the complaint the exact number of arresting officers, but Plaintiff alleges that an officer or officers from both SPD and Syracuse Housing Authority Security were involved. Specifically, Plaintiff alleges that the "Syracuse Police Department and Syracuse Housing Authority Security came to [his] residence ... with two police officers[;] ... [o]ne was a detective working for the Syracuse Police Department and Syracuse Housing Authority Security, ... [and] the other was in the police uniform ...." Compl. ¶ 13. Plaintiff alleges a "Detective" entered his residence, showed him "the Letter of Trespass Notice" and accused him of aggravated harassment, then arrested Plaintiff by putting handcuffs on his wrists. *See id.* ¶¶ 15, 16. It should also be noted that Plaintiff contends the Syracuse Housing Authority Security arrested him in retaliation for litigation he filed in this court, alleging violations of his rights under the Fair Housing Act. *See* Compl. ¶ 50.[FN3]

Plaintiff alleges he was not read his "*Miranda* rights," and that the Detective would not let Plaintiff put on his socks or notify his mother that he was leaving prior to defendants removing him from his residence. *See id.* ¶ 16. Plaintiff further contends the "Detective grabbed [him] and literally dragged him to the elevator" and gave him "little pushes ... here and there" while defendants transported Plaintiff to the police car. *See id.* Finally, Plaintiff claims that at some point he was "thoroughly searched still without *Miranda* rights read." *Id.*

In his papers in opposition to the City Defendants' motion for judgment on the pleadings, Plaintiff expands upon the allegations in the Complaint regarding his arrest. Plaintiff contends that he was arrested without a warrant, and that he "did not really give the consent to enter because [he] was under the impression that the [C]ity [D]efendants ... were coming to update [him on another matter]." Pl.'s Mem. of Law in Opp'n to City Defs.' Mot. for J. on the Pleadings, at 12, Dkt. No. 64. Also in his opposition

--- F.Supp.2d ----, 2008 WL 5459147 (N.D.N.Y.)
(Cite as: 2008 WL 5459147 (N.D.N.Y.))

papers, regarding his allegation that the Detective "literally dragged him to the elevator," Compl. ¶ 16, Plaintiff contends that he "did not sustain any serious injuries as it is about 7 feet ... from [his] apartment to the elevator[ ] except wrists, but it has been 5 months so they healed," Pl.'s Mem. of Law in Opp'n to City Defs.' Mot. for J. on the Pleadings, at 12.

**\*4** According to the arrest report, Plaintiff was arrested at his residence and was charged with second degree aggravated harassment pursuant to N.Y. Penal Law § 240.30. *See* Ex. A to Mem. of Law in Supp. of Mot. for J. on the Pleadings, Dkt. No. 39. The Syracuse Housing Authority is identified on the arrest report as the victim. *See id.* The arresting officer, who is identified as "Kiefer," noted on the arrest report that Plaintiff was "transported to justice center without incident." *Id.*

Attached to the arrest report is an incident report, signed by "Theodore Kiefer", naming "Daniel Bebber" as the victim, and Plaintiff as the suspect. *Id.* Also attached to the arrest report is a statement by Mr. Bebber, wherein he alleges receiving several telephone calls and mailings from Plaintiff over the previous two months, which continued despite Mr. Bebber's repeated requests, via the Syracuse Police Department, that Plaintiff cease contact with Mr. Bebber, and which caused Mr. Bebber and his wife to be annoyed and alarmed. *See id.* According to Mr. Bebber, on one occasion, about one week after Plaintiff was first asked to stop contacting Mr. Bebber, Plaintiff came to his house uninvited. Finally, Mr. Bebber states that he received a letter from Plaintiff informing him that he "was no longer allowed on Syracuse Housing property, specifically [Plaintiff's] building." *Id.* In light of the fact that a similar letter was sent to Mr. Bebber's employer, coupled with Plaintiff's repeated telephone calls and mailings despite having been asked to stop, Mr. Bebber asked that Plaintiff be prosecuted "to the fullest extent of the law." *Id.*

Kiefer's narrative attached to the arrest report indicates that he received Bebber's complaint of harassment against Plaintiff on May 19, 2008. *See id.* Kiefer notes that prior to that date, Mr. Bebber twice asked him to speak with Plaintiff on Bebber's behalf, which Kiefer did and twice received Plaintiff's assurances that the unwanted communications would stop. *See id.* Thereafter, Plaintiff

sent the notice of trespass letter to Mr. Bebber, regarding which Kiefer states that Plaintiff "claim[ed to have] the Syracuse Housing Authority's permission to issue such a letter ...." *Id.* Kiefer states that on May 23, 2008, he, "while working in a part time capacity as an investigator within the [Syracuse] Housing Authority, responded to [Plaintiff's apartment] to locate [Plaintiff]." *Id.* According to Kiefer, he was accompanied by "Officer Chimileski and Det. Rood." *Id.* Kiefer concluded his narrative report as follows:

> [Plaintiff] was in fact located at his residence and arrested for Aggravated Harassment in the 2nd degree. Due to the strong likelihood of reoccurrence, [Plaintiff] was lodged at the Justice Center. IT SHOULD BE NOTED THAT THE LETTER OF TRESPASS generated by [Plaintiff] has/holds NO merit and should be considered a fraud as he invoked the authority, without permission, of the Syracuse Housing Authority's security division.

**\*5** *Id.*

Kiefer then drafted a misdemeanor information, which he provided to the City of Syracuse Criminal Court, complaining that [Plaintiff], from March 2008 through May 19, 2008, "with intent to harass, annoy[,] threaten or alarm another did communicate with the victim, by mail in a manner likely to cause annoyance or alarm." *Id.* Among other things, the information also alleges that Plaintiff "did purport to be a representative of Syracuse Housing Authority when in fact he is not." *Id.* The letter of trespass notice, which is identical to that attached to the Complaint, also accompanies the arrest report. *See id.*; Ex. A to Compl.

The letter, which is titled, "LETTER OF TRESPASS NOTICE," indicates that Mr. Bebber is "no longer allowed in or around the premises of [Plaintiff's home] for any reason whatsoever." Ex. A to Compl. The letter further indicates that should Mr. Bebber be "seen in or around the premises" he "will hereafter be considered as a 'TRESPASSER' and the Syracuse Police will be called to ARREST [him]." *Id.* Through said letter, Plaintiff also informs Mr. Bebber that a copy of same "is being sent to the Syracuse Police Department, the Security of Syracuse

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2008 WL 5459147 (N.D.N.Y.)
(Cite as: 2008 WL 5459147 (N.D.N.Y.))

Housing Authority, and to [Mr. Bebber's] employer, for their information." *Id.* The letter is signed by Plaintiff, under which signature appears that the Syracuse Police Department and Security of Syracuse Housing Authority have been copied. Beneath same appears the following language: "Provided Courtesy of Syracuse Police Department Updated on 04/16/2006". *Id.* The letter also appears to be notarized, and is dated May 19, 2008.

Returning to the allegations in the Complaint, it is clear that at some point after his arrest, Plaintiff arrived at the "Onondaga County Jail" where he was booked, searched and "placed in a group cell." Compl. ¶ 17. While in the group cell, Plaintiff witnessed one prisoner assault another, while the "County Jail officers ... watch[ed] without any reaction." *Id.* ¶ 18. Before the assailant was removed from the cell, he "asked Plaintiff if he had panties", which caused Plaintiff to "fear[ ] very much for his safety." *Id.*

Plaintiff also describes being strip-searched prior to receiving "prisoner's clothing". ¶ 20. According to Plaintiff, he was told to "get completely undressed, including his underwear." *Id.* Plaintiff agreed to undress, but requested the presence of two male officers. When the second officer arrived, the first officer explained that "Plaintiff did not want to fulfill his request to undress, and was uncooperative." *Id.* After Plaintiff undressed, one of the officers used vulgar language, instructing Plaintiff to " 'bring up his balls', and 'spread up his ass' ", which caused Plaintiff to feel "humiliated, hurt, [and] deprived of his dignity as a human being." *Id.* In his papers in opposition to the County Defendants' motion to dismiss, Plaintiff alleges that "defendants searched [him] thoroughly twice without probable cause, and ... subjected [him] to [an] absolutely unwarranted alcohol level check." Pl.'s Mem. of Law in Opp'n to Mot. to Dismiss, at 14, Dkt. No. 20.

**\*6** Finally, in the Complaint, Plaintiff describes his lack of access to food, drink and medicine while he was incarcerated. Plaintiff alleges that "he had a bruised rib, and was in pain." Compl. ¶ 17. *See also* ¶¶ 19, 21. Plaintiff also alleges he "was supposed to take Tylenol with Codeine, which he was never given[ ]" and that "[h]e was not given his other medication." *Id.* To be sure, Plaintiff does not specify the cause of the bruised rib, nor

does he allege that he informed anyone of his injury, or that he asked anyone for any medication. However, later in the Complaint, Plaintiff contends that "his medical concerns were not addressed at all" and that "[e]xcept one person, nobody addressed Plaintiff's medical concerns." ¶ 21. Plaintiff also alleges that "[h]e was held without drink and food[,]" ¶ 19, but later in the Complaint claims that he was given breakfast, *see* ¶ 22.

Finally, it appears from the allegations in the Complaint that Plaintiff was held overnight at the Justice Center, and was released without bail the following day. *See* ¶¶ 21, 24.

### *V. Discussion*

A fair reading of the Complaint reflects that Plaintiff purports to allege a number of constitutional violations as predicates for civil rights claims pursuant to 42 U.S.C. § 1983, as well as several tort claims under New York common law. Specifically, under Count I of the Complaint, Plaintiff contends that all defendants (hereinafter "Defendants") violated the following of his rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution: (1) right to be free from unreasonable searches and seizures; (2) right not to be deprived of due process; (3) right to be free from excessive force; (4) right to be free from false arrest, and (5) "negligence." *See* Compl. ¶ 28. Plaintiff further claims that he is due punitive damages regarding the aforementioned violations. *See id.* ¶ 31. Through Count II of the Complaint, Plaintiff contends that the defendant, Detective "John Doe" was deliberately indifferent to Plaintiff's right to be free from excessive force and unreasonable searches and seizures in violation of the Fourth and Fourteenth Amendments. *See id.* ¶ 33. Under Count III, Plaintiff alleges that Defendants violated his rights under the Fourth, Fifth and Fourteenth Amendments by falsely arresting him without a "basis in fact to do so" and "without reading to Plaintiff [his] *Miranda* rights." Compl. ¶ 36. Count IV, labeled False Imprisonment, includes the allegations that Defendants "breached a duty of care owed to Plaintiff" to not deprive him of his personal liberty by restraining or detaining him without just cause, through use of force, and without reading Plaintiff his *Miranda* rights. *See id.* ¶¶ 39-41. Counts V, VI and VII allege claims for negligence, intentional infliction of emotional distress ("IIED"), and negligent

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2008 WL 5459147 (N.D.N.Y.)
(Cite as: 2008 WL 5459147 (N.D.N.Y.))

infliction of emotional distress ("NIED"), respectively, against all defendants. *See id.* ¶¶ 44-48. Finally, it should be noted that Plaintiff alleges that Chief Miguel "is responsible for the promulgation, and implementation of police procedures and practices among police officers of Syracuse City Police Department, sued herein as John Does, which officers include members of the Onondaga County Sheriff's Office ...." Compl. ¶ 51.

### A. Claims Pursuant to 42 U.S.C § 1983

**\*7** It is well settled that in order to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege "(1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color of state ... law." *Velez v. Levy,* 401 F.3d 75, 84 (2d Cir.2005) (*quoting Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980) (internal quotations omitted)). "Section 1983 is not itself a source of substantive rights[,] but merely provides a method for vindicating federal rights elsewhere conferred[.]" *Patterson v. County of Oneida,* 375 F.3d 206, 225 (2d Cir.2004) (*quoting Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)).

### 1. Negligence Under 42 U.S.C. § 1983

[9] As an initial matter, the court notes that to the extent Plaintiff purports to allege a negligence claim against the Defendants under 42 U.S.C. § 1983, such a claim is dismissed as negligence is not cognizable under § 1983. *See Resto v. Weissmane,* No. 9:08-CV-340, 2008 WL 5191733, at *4, n. 3 (N.D.N.Y. Dec. 10, 2008); *Perez v. Crook,* No. 9:08-CV-1153, 2008 WL 4891167, at *3 (N.D.N.Y. Nov. 10, 2008).

### 2. Miranda

[10][11][12] It is clear Plaintiff intends to allege a claim for the violation of his right against self-incrimination due to Defendants' failure to read Plaintiff his " *Miranda* rights." Compl. ¶¶ 16, 28, 36. In support of same, Plaintiff invokes both the Fifth and Fourteenth Amendments. *See id.* ¶¶ 28, 36. As County Defendants correctly point out,

Plaintiff's claims, insofar as he seeks redress under the Fifth Amendment, must be dismissed because Plaintiff has not named as a defendant any agency or employee of the United States. It is true that "[t]he Fifth Amendment, like all the other guaranties in the first eight amendments, applies only to proceedings by the Federal Government[.]" *United States v. Ng,* 699 F.2d 63, 69 (2d Cir.1983). However, the Fifth Amendment's guaranty of the right against self incrimination applies to the states through the Due Process Clause of the Fourteenth Amendment, *see Floyd v. Meachum,* 907 F.2d 347, 354 (2d Cir.1990) (*citing Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964)). Regardless, Plaintiff's claim under *Miranda* is unfounded and must be dismissed.

[13] In *Miranda v. Arizona,* the Supreme Court held

that the police may not interrogate a suspect in custody unless that person is 'warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.'

*Anderson v. Corcoran,* No. 05-Civ.-436, 2007 WL 1288539, at *4 (S.D.N.Y. May 2, 2007) (*quoting Miranda v. Arizona,* 384 U.S. 436, 478-79, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966); *accord Dickerson v. United States,* 530 U.S. 428, 443-44, 120 S.Ct. 2326, 2336, 147 L.Ed.2d 405 (2000) (reaffirming *Miranda* )). Accordingly, it is clear that " *Miranda* 's warning and waiver requirements apply *only* in the context of 'custodial interrogation,' i.e., a person must have been both in custody and subjected to interrogation for statements made without warnings or waiver to be inadmissible ...." *United States v. Rommy,* 506 F.3d 108, 131-132 (2d Cir.2007) (*citing Miranda,* 384 U.S. at 444, 86 S.Ct. 1602; *accord United States v. Newton,* 369 F.3d 659, 669 (2d Cir.2004)) (emphasis added). Plaintiff's complaint is devoid of any allegation that Defendants initiated any questioning of Plaintiff after he was taken into custody. Accordingly, any such cause of action for a violation of Plaintiff's right against self incrimination is dismissed for failure to state a claim upon which relief may be granted.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2008 WL 5459147 (N.D.N.Y.)
(Cite as: 2008 WL 5459147 (N.D.N.Y.))

### 3. Fourth Amendment

**\*8** The City and County Defendants argue that Plaintiff's claims under the Fourth Amendment must be dismissed. The County Defendants argue that because the Complaint reflects that no member of the Onondaga County Sheriff's Office (1) was present at Plaintiff's arrest, (2) engaged in any act of force against Plaintiff, or (3) detained Plaintiff with any knowledge that such detention was improper, Plaintiff cannot state a Fourth Amendment claim against them. The City Defendants argue that because the officers had probable cause to arrest Plaintiff, the Fourth Amendment claims against them must be dismissed.

Plaintiff complains of a myriad of acts or omissions by Defendants, which the court interprets as claims that Plaintiff's rights were violated under the Fourth Amendment in the following ways: excessive force, false arrest and false imprisonment, failure to intervene, and unreasonable search. Each claim will be addressed in turn.

#### a. Excessive Force

[14][15] According to Plaintiff, in the course of his arrest, he was handcuffed and "literally dragged" to the elevator by "the Detective," and "Defendants" escorted Plaintiff through the hallway of his apartment building, giving him "little pushes" ... "here and there." Compl. ¶ 16. When evaluating an excessive force claim under the Fourth Amendment, "courts should examine whether the use of force is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to [the officers'] underlying intent or motivation.' " *Jones v. Parmley,* 465 F.3d 46, 61 (2d Cir.2006) (*quoting Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). Courts are to measure the reasonableness of the use of force by considering "the facts and circumstances of each particular case, including the crime committed, its severity, the threat of danger to the officer and society, and whether the suspect is resisting or attempting to evade arrest." *Id.* (*quoting Thomas v. Roach,* 165 F.3d 137, 143 (2d Cir.1999)).

[16][17] Here, considering all of the circumstances as alleged by Plaintiff, the use of force by the officers in the course of Plaintiff's arrest does not rise to the level of a Fourth Amendment violation. To begin with, "[r]outine handcuffing at the time of an arrest, absent something more, cannot constitute a cognizable excessive force claim. Frequently, a reasonable arrest involves handcuffing the suspect, and to be effective handcuffs must be tight enough to prevent the arrestee's hands from slipping out." *Gil v. County of Suffolk,* 590 F.Supp.2d 360, 371 (E.D.N.Y.2008) (internal citations an quotations omitted). In deciding whether something beyond a routine handcuffing is at issue in this case, the court finds it instructive that "the reasonableness of a handcuffing is dependent on whether the handcuffs were unreasonably tight, whether the arrestee's pleas to that effect were ignored, and the degree of injury to the arrestee's wrists." *Fifield v. Barrancotta,* 545 F.Supp.2d 307, 311 (W.D.N.Y.2008) (*citing Esmont v. City of New York,* 371 F.Supp.2d 202, 214 (E.D.N.Y.2005)). Here, Plaintiff implies that he received some type of injury to his wrists, noting that "it has been 5 months so they healed." Pl.'s Mem. of Law in Opp'n to City Defs.' Mot. for J. on the Pleadings, at 120. However, Plaintiff very clearly states, regarding his allegation that he was "literally dragged" from his apartment to the elevator, that "he did not sustain any serious injuries ...." This, coupled with the absence of any allegations regarding the tightness of the handcuffs, whether Plaintiff was in pain, and if so, whether he communicated his pain to the officers, leads to the conclusion that Plaintiff fails to state a claim against the City Defendants for excessive force. Accordingly, said claim is dismissed.

**\*9** Moreover, it is clear from a reading of the Complaint that no County employee or official was involved in Plaintiff's arrest, and that no one used force against Plaintiff after the arrest. Therefore, to the extent Plaintiff alleges an excessive force claim against the County Defendants, said claim is also dismissed.

#### b. False Arrest and Imprisonment

[18][19][20] A claim for false arrest or false imprisonment, which terms are synonymous under New York law, is evaluated pursuant to the Fourth Amendment right to be free from unreasonable searches and seizures. *See Smith v. City of New York,* 388 F.Supp.2d 179, 184 (S.D.N.Y.2005) (*citing Hygh v. Jacobs,* 961 F.2d 359,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2008 WL 5459147 (N.D.N.Y.)
(Cite as: 2008 WL 5459147 (N.D.N.Y.))

366 (2d Cir.1992)). The elements of such a claim, whether brought under § 1983 or New York common law, are as follows: "(1) the defendant intentionally confined the plaintiff; (2) the plaintiff was aware of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged." *Id.* (citing *Bernard v. United States,* 25 F.3d 98, 102 (2d Cir.1994)). "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest[.]" *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996) (internal citation and quotation omitted). However, under New York law, a warrantless arrest raises a rebuttable presumption that the arrest is unlawful. *See Curry v. City of Syracuse,* 316 F.3d 324, 335 (2d Cir.2003).

[21] According to the City Defendants, they can rebut such a presumption by proving that Plaintiff's arrest was authorized by section 140.10 of the New York Criminal Procedure Law, "which lays out the requirement of reasonable cause for warrantless arrests." Mem. of Law in Supp. of Mot. for J. on the Pleadings, at 10, Dkt. No. 37, citing *Raysor v. Port Authority of New York and New Jersey,* 768 F.2d 34, 40 (2d Cir.1985). *Raysor,* however, is clearly distinguishable as the plaintiff in that case was arrested at a Port Authority police station in the World Trade Center, while Plaintiff here was arrested in his home. *See Raysor,* 768 F.2d at 36-37. The Supreme Court has held that "warrantless arrests when the arrestee is in the sanctity of his home" violate the Fourth Amendment. *United States v. Spencer,* 684 F.2d 220, 222-223 (2d Cir.1982) (citing *Payton v. New York,* 445 U.S. 573, 602-03, 100 S.Ct. 1371, 1388, 63 L.Ed.2d 639 (1980)). Exceptions to the *Payton* rule allow a warrantless arrest in the home where there is probable cause plus exigent circumstances, *see Kirk v. Louisiana,* 536 U.S. 635, 638, 122 S.Ct. 2458, 2459, 153 L.Ed.2d 599 (2002), or where the entry is consensual, *see Illinois v. Rodriguez,* 497 U.S. 177, 181, 110 S.Ct. 2793, 2797, 111 L.Ed.2d 148 (1990).

[22] To be sure, the factors surrounding Plaintiff's arrest hardly support a finding of exigent circumstances. The Supreme Court has stated that

the police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests. Indeed, the Court has

recognized only a few such emergency conditions, *see, e.g., United States v. Santana,* 427 U.S. 38, 42-43, 96 S.Ct. 2406, 2409-2410, 49 L.Ed.2d 300 (1976) (hot pursuit of a fleeing felon); *Warden v. Hayden,* 387 U.S. 294, 298-299, 87 S.Ct. 1642, 1645-1646, 18 L.Ed.2d 782 (1967) (same); *Schmerber v. California,* 384 U.S. 757, 770-771, 86 S.Ct. 1826, 1835-1836, 16 L.Ed.2d 908 (1966) (destruction of evidence); *Michigan v. Tyler,* 436 U.S. 499, 509, 98 S.Ct. 1942, 1949, 56 L.Ed.2d 486 (1978) (ongoing fire), and has actually applied only the "hot pursuit" doctrine to arrests in the home, *see Santana, supra.*

*10 *Welsh v. Wisconsin,* 466 U.S. 740, 749-750, 104 S.Ct. 2091, 2097-2098, 80 L.Ed.2d 732 (1984). The Court went on to explain their "hesitation in finding exigent circumstances, especially when warrantless arrests in the home are at issue, is particularly appropriate when the underlying offense for which there is probable cause to arrest is relatively minor." *Id., at 750, 104 S.Ct. at 2098.* Here, defendant officers arrested Plaintiff on a misdemeanor aggravated harassment charge, based upon a statement provided by the alleged victim four days prior. Accordingly, because the requisite exigent circumstances are lacking, the City Defendants cannot establish a legal arrest under that exception to the *Payton* Rule.

[23] Nonetheless, it appears from Plaintiff's allegations that he did consent to the officers' entry. Plaintiff claims that he "did not really give the consent to enter because [he] was under the impression that the [C]ity [D]efendants ... were coming to update [him on another matter]." Pl.'s Mem. of Law in Opp'n to City Defs.' Mot. for J. on the Pleadings, at 12, Dkt. No. 64. Consent under false pretenses, absent outright fraud, such as where a police officer falsely claims to have a warrant in order to gain entry, is still consent. *Cf. Breitbard v. Mitchell,* 390 F.Supp.2d 237, 248 (E.D.N.Y.2005) (quoting *Hadley v. Williams,* 368 F.3d 747, 749 (7th Cir.2004)) ("Though 'the law permits police to pressure and cajole, conceal material facts, and actively mislead, it draws the line at outright fraud.' "). Accordingly, regardless whether Plaintiff was under a false impression regarding the purpose of the officers' visit due to misleading statements by the officers, or a simple misunderstanding on Plaintiff's part, he nonetheless consented to their entry, eliminating the requirement for a warrant.

--- F.Supp.2d ----, 2008 WL 5459147 (N.D.N.Y.)
(Cite as: 2008 WL 5459147 (N.D.N.Y.))

[24][25] Having overcome the presumption that Plaintiff's warrantless arrest was unlawful, the City Defendants must still establish that probable cause existed for the arrest. "Probable cause to arrest a person exists if the law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested." *United States v. Valentine*, 539 F.3d 88, 93 (2d Cir.2008). Pursuant to section 240.30 of the New York Penal Law, in relevant part,

> [a] person is guilty of aggravated harassment in the second degree when, with intent to harass, annoy, threaten or alarm another person, he or she:

> [ ]Either (a) communicates with a person, anonymously or otherwise, by telephone, by telegraph, or by mail, or by transmitting or delivering any other form of written communication, in a manner likely to cause annoyance or alarm[.]

N.Y. PENAL LAW § 240.30(1) (McKinney 2008). Less severe circumstances than those present in this case have led to a finding of probable cause to arrest on such a charge. The Second Circuit affirmed a lower court dismissal of a false arrest claim, finding probable cause to arrest for second degree aggravated harassment where, according to admissions in the complaint, plaintiff's "agitation had grown to anger" he attempted to contact defendant by leaving messages for her "about her evident lack of consideration and disrespect." *Silver v. Kuehbeck*, 217 Fed.Appx. 18, 22 (2d Cir.2007). A district court found probable cause to exist on a claim for second degree aggravated harassment where in an isolated incident, plaintiff sent audio tapes of conversations between his son and a woman with whom his son had a romantic relationship to the woman's subsequent fiancé as well as a member of her family. See *Quinn v. City of New York*, No. 99-CV-7068, 2003 WL 1090205, at *1 (E.D.N.Y. Mar. 12, 2003). The court in *Quinn* determined that it was reasonable for the arresting officer to conclude that the tapes were sent to embarrass and harass plaintiff's son's former girlfriend, and to annoy and alarm the former girlfriend's fiancé and family. See *id.*, at *4. The court further noted that the requisite communication under §

240.30 does not have to include repetitive or continuous behavior. See *id.*

**\*11** Here, Mr. Bebber reports receiving repeated unwanted written and verbal communications from Plaintiff, wherein Plaintiff told Bebber that he "needed to find God and that [he] was a Devil worship[ ]er." Ex. A to Mem. of Law in Supp. of Mot. for J. on the Pleadings, Dkt. No. 39. Bebber also claims that these communications persisted, despite Plaintiff having been twice contacted by police regarding the matter, and that the communications caused Bebber and his wife to be "annoyed and alarmed." *Id.* Under these set of facts, it is clear the officers had probable cause to arrest Plaintiff for second degree aggravated harassment.[FN4] Accordingly, Plaintiff's claim for false arrest against Defendants is dismissed.

[26] Further, the only allegations in the Complaint which implicate the City Defendants and the SHA Defendants are those allegations regarding Plaintiff's claims of excessive force and false arrest. Accordingly, those defendants are dismissed from this action. It should be noted that although the SHA Defendants have not made a motion to dismiss this action as against them, the court may sua sponte dismiss claims against a non-moving defendant in the interest of judicial economy. See *Hollander v. Copacabana Nightclub*, 580 F.Supp.2d 335, 342-43 (S.D.N.Y.2008) (*citing Perez v. Ortiz*, 849 F.2d 793, 797 (2d Cir.1988); *Leonhard v. United States*, 633 F.2d 599, 609 n. 11 (2d Cir.1980) ("The district court has the power to dismiss a complaint sua sponte for failure to state a claim.")).

### c. Failure to Intervene

[27] County Defendants address a claim by Plaintiff for failure to intervene to protect against the infringement of Plaintiff's constitutional rights under the Fourth Amendment in the context of his claim for false arrest and imprisonment. However, because the court has deemed the arrest lawful under the Fourth Amendment, and consequently dismissed the false arrest claim, to the extent Plaintiff claims a failure to intervene to prevent his false arrest or imprisonment, such a claim is likewise dismissed.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2008 WL 5459147 (N.D.N.Y.)
(Cite as: 2008 WL 5459147 (N.D.N.Y.))

#### d. Unreasonable Search

[28][29] The court interprets the Complaint to allege a claim against the County Defendants for an unreasonable search under the Fourth Amendment. Plaintiff alleges that he was subjected to a strip search after his admission to the Justice Center. According to the law in this circuit, "persons charged with a misdemeanor and remanded to a local correctional facility ... have a right to be free of a strip search absent reasonable suspicion that they are carrying contraband or weapons[.]" *Shain v. Ellison,* 273 F.3d 56, 66 (2d Cir.2001). *See also Iqbal,* 490 F.3d at 172. After explaining that, "[u]nlike persons already in jail who receive contact visits, arrestees do not ordinarily have notice that they are about to be arrested and thus an opportunity to hide something[,]" the Second Circuit noted that "a person who is allowed to visit the bathroom unescorted before an arrest" would be an exception where "reasonable suspicion may well exist." *Shain,* 273 F.3d at 64. Where a detainee was strip searched after being arrested for a misdemeanor, and where the nature of the charge had nothing to do with drugs or weapons, reasonable suspicion was found to be lacking even though the detainee appeared to be under the influence of alcohol. *See Dodge v. County of Orange,* 282 F.Supp.2d 41, 59-60 (S.D.N.Y.2003). Here, according to the allegations in the Complaint as well as the arrest report, including Mr. Bebber's statement in support of Plaintiff's arrest, none of the circumstances surrounding Plaintiff's arrest or the underlying charge would warrant a reasonable suspicion that Plaintiff was carrying contraband or weapons at the time he was strip searched by the officers at the Justice Center. For this reason, the court is not able to conclude that Plaintiff has failed to state a Fourth Amendment claim against the individually named County Defendants, John Does. Accordingly, the County Defendants' motion to dismiss the Complaint is denied in this regard.

#### 4. Deliberate Indifference

#### a. Failure to Protect

*12 [30] The court also interprets Plaintiff's papers to allege facts in support of a claim that County Defendants failed to protect him from harm while in custody at the Justice Center. According to the Complaint, Plaintiff was placed in a group cell at the Justice Center, wherein he witnessed one prisoner assault another, while "[t]he County Jail officers [ ] watch[ed] without any reaction." Compl. ¶ 18. After the assault ended, the assailant was removed from the cell, but before the assailant was removed, he "asked Plaintiff if he had panties." *Id.* In his papers in opposition to the County Defendants' motion to dismiss, Plaintiff alleges that he was subjected to "unwanted sexual contact and/or assault" when he was placed in the group cell, and that the "officers from [the] County jail ... did not exercise their affirmative duty to protect the constitutional rights of citizens from infringement ... premised on the official presence and realistic opportunity to intervene to prevent harm from occurring." Pl.'s Mem. of Law in Opp'n to Mot. to Dismiss, at 14-15, Dkt. No. 20.

[31][32][33] The Due Process Clause of the Fourteenth Amendment protects pre-trial detainees, such as Plaintiff here, against intolerable prison conditions. *See Patrick v. Amicucci,* No. 05-Civ. 5206, 2007 WL 840124, at *3 (S.D.N.Y. Mar. 19, 2007) (*citing Weyant,* 101 F.3d at 856). The failure to protect a pre-trial detainee from harm is one type of intolerable prison condition. Thus, a prison official's deliberate indifference to a substantial risk of serious harm to an inmate may form the basis of a deliberate indifference claim. *See id.* However, where, as here, the plaintiff does not allege that he was assaulted or threatened by other inmates, or where plaintiff only alleges that he was in fear of an assault, a claim for failure to protect must be dismissed. *See Chalif v. Spitzer,* No. 9:05-CV-1355, 2008 WL 1848650, at *9 (N.D.N.Y. Apr. 23, 2008) (*citing Dawes v. Walker,* 239 F.3d 489, 494 (2d Cir.2001) (*overruled on other grounds* ); *Bolton v. Goord,* 992 F.Supp. 604, 627 (S.D.N.Y.1998)). Here, while Plaintiff alleges that an assault took place in his presence while County Defendant officers watched, and that the assailant asked Plaintiff "if he had panties" which caused Plaintiff to fear for his safety, there is no allegation that Plaintiff was assaulted. Moreover, according to Plaintiff, the assailant was removed from the group cell after the assault, eliminating whatever risk of harm existed. Accordingly, to the extent Plaintiff claims that County Defendants failed to protect him in violation of his Due Process rights, said claim is dismissed.

#### b. Failure to Provide Medical Care

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2008 WL 5459147 (N.D.N.Y.)
(Cite as: 2008 WL 5459147 (N.D.N.Y.))

Also included in the Complaint are allegations that during his incarceration at the Justice Center, Plaintiff had a bruised rib, was in pain, and was not given Tylenol with Codeine or his other medication. *See* Compl. ¶ 17. Plaintiff alleges that "[e]xcept one person, nobody addressed [his] medical concerns." Compl. ¶ 21.

**\*13** [34][35] Where a pre-trial detainee alleges deliberate indifference to a medical need while incarcerated, such a claim is evaluated under the Due Process Clause of the Fourteenth Amendment. *See Arac v. Bodek,* 213 F.3d 625 (2d Cir.2000) (*citing City of Revere v. Massachusetts Gen. Hosp.,* 463 U.S. 239, 244-45, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983)). While the exact standard to be applied to such a claim has not been made clear, what is known is that the pre-trial detainee's rights are at least as great as those provided to a convicted prisoner under the Eighth Amendment, *see City of Revere,* 463 U.S. at 244, 103 S.Ct. 2979, and that something more than negligence on the part of the defendant is required, *see Bryant v. Maffucci,* 923 F.2d 979, 984 (2d Cir.1991). Consequently, courts tend to apply the Eighth Amendment standard when deciding a pre-trial detainee's claim for deliberate indifference to a medical need under the Fourteenth Amendment. *See Lloyd v. Lee,* 570 F.Supp.2d 556, 570 (S.D.N.Y.2008). *See also Lara v. Bloomberg,* No. 04-CV-8690, 2008 WL 123840, at \*2 n. 4 (S.D.N.Y. Jan. 8, 2008) (*citing Cuoco v. Moritsugu,* 222 F.3d 99, 106 (2d Cir.2000)). Accordingly, in order for a pre-trial detainee to establish a claim for deliberate indifference to a medical need, a plaintiff must allege

(1) a deprivation that is 'sufficiently serious,' i.e., a deprivation that presents a 'condition of urgency, one that may produce death, degeneration, or extreme pain,' *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994) (*quoting Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J., dissenting)), and (2) reckless indifference, that is, 'defendants were aware of plaintiff's serious medical needs and consciously disregarded a substantial risk of serious harm[,]' *Singleton v. Perilli,* No. 03 Civ. 2271(DC), 2004 WL 74238, at \*3 (S.D.N.Y. Jan. 16, 2004).

*Lloyd,* 570 F.Supp.2d at 566.

[36] Here, to begin with, Plaintiff's allegation of a bruised rib does not satisfy the requirement of a sufficiently serious deprivation. In one case, for example, even where the court assumed as true the plaintiff's allegation that he suffered "soreness, pain and a lump behind his right ear, lump on the back of his head, small abrasions on his nose and knuckle, and bruising to his back, ribs and legs," it nonetheless found that those injuries do not constitute the requisite "serious medical need" in order to satisfy the first prong of a deliberate indifference claim. *Jones v. Furman,* No. 02-CV-939F, 2007 WL 894218, at \*10 (W.D.N.Y. Mar. 21, 2007) (*citing Hemmings v. Gorczyk,* 134 F.3d 104, 109 (2d Cir.1998)).

[37] However, even if Plaintiff were to satisfy the first element of his deliberate indifference claim, he still has failed to state such a claim because he admits that his medical concerns were in fact addressed by someone at the Justice Center. While Plaintiff alleges in the first instance that "his medical concerns were not addressed at all," in the very next sentence he claims "[e]xcept one person, nobody addressed [his] medical concerns." Compl. ¶ 21. Accordingly, because Plaintiff's alleged injury is not sufficiently serious, and because he alleges that his medical concerns were addressed by at least one person, he fails to state a claim against Defendants for deliberate indifference to a medical need.

### c. Deprivation of Food

**\*14** [38][39] Next, while Plaintiff claims "[h]e was held without drink and food," ¶ 19, he also claims he was given breakfast the morning following his initial detention, *see* ¶ 22. Courts have found a constitutional violation where an inmate has suffered "[s]ubstantial deprivation of nutritionally adequate food ... if the food is served in a fashion that presents an immediate danger to the inmate's health or well-being." *Beckford v. Portuondo,* 151 F.Supp.2d 204, 213 (N.D.N.Y.2001) (internal quotation and citation omitted). Where a prisoner is deprived of two of three meals served regularly each day, a constitutional violation may exist if that one meal is nutritionally inadequate. *See id.* Here, Plaintiff was incarcerated after his arrest at 5:35 p.m. *See* Ex. A to Mem. of Law in Supp. of Mot. for J. on the Pleadings, Dkt. No. 39. Thus, the fact that he received no food or drink until the following morning does not establish a constitutional violation.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2008 WL 5459147 (N.D.N.Y.)
(Cite as: 2008 WL 5459147 (N.D.N.Y.))

Accordingly, to the extent Plaintiff claims his due process rights were violated by the deprivation of food and water, said claim is dismissed.

### B. Claims Against Onondaga County Sheriff's Office; Onondaga County Justice Center; and Syracuse City Police Department

[40][41] The County Defendants argue that the Onondaga County Sheriff's Office and the Onondaga County Justice Center, which is a facility operated by the Sheriff's Office, are not proper defendants, but that "the real party in interest is the municipality County of Onondaga." Mem. of Law in Supp. of Mot. to Dismiss, at 3, Dkt. No. 16. The City Defendants, while not directly addressing the issue, assume that the City of Syracuse is a defendant. *See* Mem. of Law in Supp. of Mot. for J. on the Pleadings, at 8, Dkt. No. 37. It is important to note that an administrative arm of a municipality, such as SPD or the Onondaga County Sheriff's Office, "cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity." *Leland v. Moran,* 100 F.Supp.2d 140, 145 (N.D.N.Y.2000) (internal quotation omitted). *See also Clayton v. City of Kingston,* 44 F.Supp.2d 177, 183 (N.D.N.Y.1999). Accordingly, all claims against the Onondaga County Sheriff's Office, the Onondaga County Justice Center, which is a facility operated by the Sheriff's Office, and SPD are dismissed. However, because of the City and County Defendants' assertions that the City of Syracuse ("the City") and County of Onondaga ("the County") are the proper parties, and the court's duty to liberally construe Plaintiff's papers due to his pro se status, the court will consider the Complaint to include claims against the City and County.

[42][43] Although Plaintiff insists that the municipal defendants are liable for the actions of their employees under the doctrine of respondeat superior, the law is clear that a municipal entity may not liable pursuant to § 1983 under the theory of respondeat superior, but may be only liable where its employee acted pursuant to an official policy, custom, or practice of said entity. *See Monell v. Dep't of Soc. Serv. of the City of New York,* 436 U.S. 658, 694-95, 98 S.Ct. 2018, 2037-38, 56 L.Ed.2d 611 (1978); *Rojas v. Alexander's Dep't Store, Inc.,* 924 F.2d 406, 408 (2d Cir.1990). Such a policy, custom or practice may "be inferred where the municipality so failed to train its

employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction." *Patterson,* 375 F.3d at 226 (*quoting Kern v. City of Rochester,* 93 F.3d 38, 44 (2d Cir.1996)) (internal quotation marks omitted).

*15 [44] To be sure, "where a *Monell* claim is based solely on the actions of a municipality's officers, municipal liability cannot exist if the individual defendants have not violated the plaintiff's constitutional rights." *Matican v. City of New York,* 424 F.Supp.2d 497, 508 (E.D.N.Y.2006) (*citing City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986)). Accordingly, because the claims here against the City employees have been dismissed, it follows that any *Monell* claim against the City is likewise dismissed.

For its part, the County Defendants argue that Plaintiff fails to properly plead a *Monell* claim against the County. The County argues that Plaintiff fails to allege the existence of a policy or custom that led to any constitutional deprivation he suffered, and that he fails to allege any facts to support an inference of a such a policy or custom.

[45] The Supreme Court has held that no heightened pleading standard should be applied to § 1983 actions alleging claims for municipal liability under *Monell. See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). The Court in *Leatherman* in accordance with *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) that under Rule 8, all that is required is "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman,* 507 U.S. at 168, 113 S.Ct. at 1163 (*quoting Conley,* 355 U.S. at 47, 78 S.Ct. at 103) (internal quotations omitted). [FN5] The Second Circuit has evolved from its requirement that "a complaint must contain specific allegations of fact which indicate a deprivation of constitutional rights[,]" *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir.1987), to the post- *Leatherman* conclusion that "the court may not go beyond FRCP 8(a)(2) to require the plaintiff to supplement his pleadings with additional facts that support his allegation of knowledge either directly or by inference. Whether the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2008 WL 5459147 (N.D.N.Y.)
(Cite as: 2008 WL 5459147 (N.D.N.Y.))

plaintiff can produce evidence to create a genuine issue with regard to his allegation is to be resolved through a motion for summary judgment[,]" *Phelps v. Kapnolas,* 308 F.3d 180, 186-87 (2d Cir.2002). In *Phelps,* on an Eighth Amendment claim against prison officials for deliberate indifference, the court found that the mere allegation of an official's knowledge of a substantial risk to the plaintiff's safety was enough to set forth the subjective element of said claim. *See id.* at 186. It is clear from the language of that opinion that a plaintiff need not plead facts to support allegations of constitutional violations beyond what is required by Rule 8. *See id. See also Hernandez v. Goord,* 312 F.Supp.2d 537, 544-45 (S.D.N.Y.2004). Regarding *Monell* claims in particular, "[t]he pleading requirement for a § 1983 claim against a municipality will be met if a plaintiff alleges that 'a formal policy which is officially endorsed by the municipality' caused the plaintiff's injuries." *Perez v. Westchester County Dep't of Corrs.,* No. 05-Civ.-8120, 2007 WL 1288579, at *5 (S.D.N.Y. Apr. 30, 2007) (quoting *Moray v. City of Yonkers,* 924 F.Supp. 8, 12 (S.D.N.Y.1996) (citing *Monell,* 436 U.S. at 690, 98 S.Ct. 2018)). Even where allegations in the complaint of the existence of an official policy are not buttressed by supporting facts, dismissal is not warranted as long as the defendant has "fair notice of what the plaintiff's claim is and the grounds upon which it rests[,]" *Nesbitt v. County of Nassau,* No. 05-CV-5513, 2006 WL 3511377, at *4 (E.D.N.Y. Dec. 6, 2006) (quoting *Conley,* 355 U.S. at 47, 78 S.Ct. 99). "It is up to the 'liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.' " *Id.* (quoting *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) and *citing Leatherman,* 507 U.S. at 168-69, 113 S.Ct. 1160). *See also Conley,* 355 U.S. at 47-48, 78 S.Ct. at 103 ("Such simplified 'notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues.").

*16 [46] Here, to be sure, Plaintiff alleges that Chief Miguel "has been and still is responsible for the promulgation, and implementation of police procedures and practices among police officer of [SPD], sued herein as John Does, which officers include members of the Onondaga County Sheriff's Office ...." Compl. ¶ 51. Construing such an allegation liberally, as it must, the court determines that Plaintiff contends that both City and County Defendants have policies or procedures pursuant to which their employees carry out their duties. Because this allegation puts the County on notice of Plaintiff's *Monell* claim, the County's motion to dismiss in that regard is denied. However, it should be noted that the *Monell* claim is limited to the sole remaining Fourth Amendment claim regarding the alleged unlawful strip search.

Finally, the court notes that the County Defendants correctly argue that municipalities, and municipal employees sued in their official capacities, are not liable for punitive damages, and accordingly, any claims for punitive damages against the County or any County employee sued in his official capacity, are dismissed. *See Jefferson v. City of Tarrant, Ala.,* 522 U.S. 75, 118 S.Ct. 481, 482, 139 L.Ed.2d 433 (1997) (*citing Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981)); *Ivani Contracting Corp. v. City of New York,* 103 F.3d 257, 262 (2d Cir.1997) (*citing Brandon v. Holt,* 469 U.S. 464, 471-73, 105 S.Ct. 873, 877-79, 83 L.Ed.2d 878, (1985)).

**C. State Common Law Claims**

[47] Plaintiff's claims for negligence, negligent infliction of emotional distress and intentional infliction of emotional distress remain for consideration. County Defendants argue that Plaintiff's state law claims must be dismissed because he has failed to file a notice of claim as is required under New York's General Municipal Law. *See* N.Y. GEN. MUN. LAW § 50-e (McKinney). It is true that "[a]s a condition precedent to commencing a tort action against New York municipalities, or any of their officers, agents, or employees, New York General Municipal Law section 50-e requires plaintiffs to file a notice of claim within ninety days after the claim arises." *Olsen v. County of Nassau,* No. CV-05-3623, 2008 WL 4838705, at *1 (E.D.N.Y. Nov. 4, 2008). Further, while Plaintiff may seek permission to file a late notice of claim, he must do so in state court. *See Olsen,* 2008 WL 4838705, at *3 (citing New York General Municipal Law § 50-e(5)(7)). Accordingly, Plaintiff's state law claims must be dismissed without prejudice on this basis. Nonetheless, the court is constrained to note that even if Plaintiff had filed a timely notice of claim, his negligence and NIED claims fail, and

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2008 WL 5459147 (N.D.N.Y.)
(Cite as: 2008 WL 5459147 (N.D.N.Y.))

therefore are dismissed on the merits.

**[48][49]** In New York, in order to establish a claim of negligence, Plaintiff must prove "(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." *Muller-Paisner v. TIAA,* 289 Fed.Appx. 461, 465 (2d Cir.2008) (internal quotation omitted). Here, Plaintiff fails to allege that he suffered a physical injury as a result of the County Defendants' action or inaction. Plaintiff alleges only emotional damages. Accordingly, the court must evaluate Plaintiff's claim as solely a claim for negligent infliction of emotional distress ("NIED"). *See Stephens v. Shuttle Associates, L.L.C.,* 547 F.Supp.2d 269, 275 (S.D.N.Y.2008).

**\*17** In his papers in opposition to the County Defendants' motion to dismiss, Plaintiff contends that he claims liability on his NIED cause of action under both the bystander and direct duty theories and that Plaintiff "found himself [at] risk of bodily harm resulting from really possible assault and/or rape." Pl.'s Mem. of Law in Opp'n to Mot. to Dismiss, at 16, Dkt. No. 20.

**[50][51][52][53]** A plaintiff who alleges that he suffered emotional harm due to a defendant's negligence may recover on a claim for NIED in New York under either a "bystander theory," meaning the plaintiff was "a bystander who was in the zone of danger [and] suffers emotional trauma as a result of [his] observations," or a "direct duty theory," meaning "the defendant breache[d] a direct duty to [the] plaintiff which results in emotional injury to the plaintiff." *Stephens,* 547 F.Supp.2d at 275. In order to recover under the bystander theory, however, a plaintiff must prove that he witnessed "the death or serious bodily injury of a member of [his] immediate family" which clearly has not been alleged by Plaintiff in this case. *Id.* Accordingly, Plaintiff's only chance for recovery here would be under the direct duty theory, wherein "a plaintiff suffers an emotional injury from defendant's breach of a duty which unreasonably endangered [plaintiff's] own physical safety." *Id.,* at 275-276. Nonetheless, "[t]he duty in such cases must be specific to the plaintiff and not some amorphous, free-floating duty to society." *Id.* Moreover, where a plaintiff "has not established that his physical safety was ever threatened or endangered by defendants, he cannot recover under either [the direct duty theory or

bystander] theory." *Id.* (*quoting Danielak v. City of New York,* No. 02 Civ. 2349, 2005 WL 2347095, at \*18 (E.D.N.Y. Sept. 26, 2005)).

**[54]** Plaintiff's allegation regarding the threat to his physical safety is exceptionally dubious. Essentially, Plaintiff claims that the John Doe defendants, officers at the Justice Center, stood by and watched while two other inmates who occupied the same group cell as Plaintiff engaged in a physical altercation. Thereafter, Plaintiff alleges the officers removed the assailant from the group cell, but not before the assailant asked Plaintiff is he was wearing panties. From this sequence of events, Plaintiff concludes that he was at "risk of bodily harm resulting from really possible assault or/and rape." Pl.'s Mem. of Law in Opp'n to Mot. to Dismiss, at 16, Dkt. No. 20. Based the aforementioned allegations, Plaintiff has failed to plead the requisite unreasonable endangerment to his physical safety in order for his NIED claim to go forward. Accordingly, even if Plaintiff had filed a timely notice of claim, the County Defendants' motion to dismiss his negligence and NIED claims must nonetheless be granted on the merits.

**[55]** Such is not the case for Plaintiff's IIED claim against the John Doe County Defendants.[FN6] "To state a claim for IIED under New York law, [a] plaintiff must plead the following four elements: (1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal relationship between the conduct and the resulting injury; and (4) severe emotional distress." *Davey v. Jones,* 2007 WL 1378428, at \*3 (S.D.N.Y.2007) (*citing Bender v. City of New York,* 78 F.3d 787, 790 (2d Cir.1996)).

**\*18 [56]** As to the first element, New York courts impose a heavy burden on the plaintiff such that "the alleged conduct must be so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Davey,* 2007 WL 1378428, at \*3 (internal citations and quotations omitted). The Second Circuit has noted that New York state courts have sustained IIED claims where there is "some combination of public humiliation, false accusations of criminal or heinous conduct, verbal abuse or harassment, physical threats, permanent loss of employment, or conduct contrary to public policy." *Stuto v. Fleishman,* 164 F.3d

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2008 WL 5459147 (N.D.N.Y.)
(Cite as: 2008 WL 5459147 (N.D.N.Y.))

820, 828 (2d Cir.1999). When evaluating IIED claims regarding an unlawful strip search, most district courts in this circuit have followed suit, allowing the claim to go forward where some other circumstance existed in combination with the unlawful search. *See, e.g.* Jean-Laurent v. Hennessy, No. 05-CV-1155, 2008 WL 3049875, at *20 (E.D.N.Y. Aug. 1, 2008) (denying summary judgment on an IIED claim where questions of fact existed regarding whether the plaintiff was slammed against a car and strip searched in public without justification); Travis v. Village of Dobbs Ferry, 355 F.Supp.2d 740, 756 (S.D.N.Y.2005) (denying summary judgment on IIED claim where defendants lacked probable cause for the arrest, and accordingly, the strip search incident to the arrest was also unlawful, but where the court also found the facts of the case were outrageous in that the arrest essentially was based on a hunch that plaintiff was in possession of illegal drugs, and the strip search was conducted in order to corroborate said hunch); Mejia v. City of New York, 119 F.Supp.2d 232, 286 (E.D.N.Y.2000) (denying summary judgment on IIED claim where questions of fact remained regarding whether strip search was justified and whether ethnic slurs were used by defendant during plaintiff's arrest). However, one district court in this circuit denied a defendant's motion for summary judgment on plaintiff's IIED claim where there was a question of fact regarding whether the plaintiff was subjected to a strip search without probable cause, but where none of the other aforementioned circumstances were present. *See* Caceres v. Port Authority of New York and New Jersey, No. 06-Civ.-1558, 2008 WL 4386851, at *13 (S.D.N.Y. Sept. 24, 2008) (finding that "subjecting [a] plaintiff to a strip search without probable cause for such an intrusive search could be considered extreme and outrageous").

[57] At this stage of the litigation the court is unable to determine whether Plaintiff's strip search was lawful, and it appears that an unlawful strip search, without more, may be considered extreme and outrageous conduct. Accordingly, should Plaintiff be granted leave in state court to file a late notice of claim, the court would, based on the allegations in the Complaint, deny the County Defendants' motion to dismiss insofar as Plaintiff states an IIED claim against the John Doe County Defendants. Accordingly, Plaintiff's claim of IIED against the John Doe County Defendants is dismissed without prejudice to renew upon the filing of a notice of claim pursuant to New York General Municipal Law section 50-e.

**\*19** Regarding the City Defendants and SHA Defendants, because the federal civil rights claims against them, of which the court had original jurisdiction, have been dismissed in their entirety, the court may dismiss the remaining state law claims against them due to the lack of diversity jurisdiction. *See* Weinraub v. Glen Rauch Securities, Inc., 399 F.Supp.2d 454, 464 (S.D.N.Y.2005) (*citing* 28 U.S.C. § 1367(c)(3); Martinez v. Simonetti, 202 F.3d 625, 636 (2d Cir.2000)). Nonetheless, because there are no allegations in the Complaint sufficient to state a claim for negligence, NIED or IIED against the City Defendants or SHA Defendants, those claims are dismissed against said defendants with prejudice.

*VI. Conclusion*

In accordance with the foregoing discussion of the pending motions, it is hereby

ORDERED that the motion for judgment on the pleadings by defendants, City of Syracuse; Syracuse City Police Department; Gary Miguel, Chief of Police, Syracuse City Police Department; and John Does, *see* Dkt. No. 37, is GRANTED, and it is further

ORDERED that all claims against defendants, City of Syracuse; Syracuse City Police Department; Gary Miguel, Chief of Police, Syracuse City Police Department; and John Does are DISMISSED; and it is further

ORDERED that all claims against defendants Syracuse Housing Authority Security and John Doe, Syracuse Housing Authority Detective, are sua sponte DISMISSED; and it is further

ORDERED that the motion to dismiss for failure to state claims upon which relief may be granted by defendants County of Onondaga, Onondaga County Sheriff's Office, Onondaga County Justice Center and John Does, *see* Dkt. No. 16, is GRANTED in part and DENIED in part, and it is further

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2008 WL 5459147 (N.D.N.Y.)
(Cite as: 2008 WL 5459147 (N.D.N.Y.))

ORDERED that the Clerk of the Court shall change the caption of this case to reflect the substitution of the County of Onondaga as a defendant for the Onondaga County Sheriff's Office and the Onondaga County Justice Center; and it is further

ORDERED that the Clerk of the Court shall close this case as to all defendants except the County of Onondaga and John Does; and it is further

ORDERED that Clerk of the Court shall serve a copy of this memorandum, decision and order upon plaintiff, Wlodzimierz J. Dzwonczyk, by regular mail.

IT IS SO ORDERED.

FN1. By its opinion in *Bell Atlantic,* the Supreme Court abrogated the often-cited language of *Conley v. Gibson* "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 550 U.S. 544, 561, 127 S.Ct. 1955, 1968, 167 L.Ed.2d 929 (2007) (*quoting Conley,* 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957)). In doing so, the Court found that *Conley* "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Id.,* at 1969.

FN2. Although Plaintiff refers to Mr. Bebber as "Daniel Bcber" throughout the Complaint and opposition papers, the court will adopt the spelling of Mr. Bebber's surname as is reflected in his own statement regarding the circumstances supporting Plaintiff's arrest, to be discussed *infra.*

FN3. Ostensibly, Plaintiff refers to *Dzwonczyk v. Syracuse Housing Authority, et al.,* 5:07-cv-01239. The court notes, however, that Plaintiff previously filed another action against the Syracuse Housing Authority, alleging

violations of, among other things, the Fair Housing Act, which was dismissed by stipulation of the parties on December 13, 2004. *See Dzwonczyk v. Syracuse Housing Authority, et al.,* 5:04-cv-01198.

FN4. The court is constrained to express its curiosity regarding the claim included in the misdemeanor information, signed by the arresting officer, that through the notice of trespass letter which was sent to Mr. Bebber, Plaintiff "purport[ed] to be a representative of Syracuse Housing Authority when in fact he is not." Ex. A to Mem. of Law in Supp. of Mot. for J. on the Pleadings, Dkt. No. 39. Despite the dubious relevance of said claim to the charge of second degree aggravated harassment, a fair reading of the referenced notice of trespass letter reveals no such representation by Plaintiff.

FN5. Abrogated on other grounds by *Bell Atlantic v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). To be sure, the Court in *Bell Atlantic,* while rejecting *Conley's* "no set of facts" language, nonetheless favorably cited the "fair notice" language cited here. *See* 127 S.Ct. at 1964.

FN6. Plaintiff's IIED claim against the County must fail, as it is "well-settled that public policy bars claims sounding in intentional infliction of emotional distress against a government entity." *Rivera v. City of New York,* 392 F.Supp.2d 644, 657 (S.D.N.Y.2005) (*quoting Lauer v. City of New York,* 240 A.D.2d 543, 659 N.Y.S.2d 57, 58 (1997)).

N.D.N.Y.,2008.
Dzwonczyk v. Syracuse City Police Dept.
--- F.Supp.2d ----, 2008 WL 5459147 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2008 WL 596891 (N.D.N.Y.)
(Cite as: 2008 WL 596891 (N.D.N.Y.))

H

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
George HARRIS, Plaintiff,
v.
G. MORTON, et al, Defendants.
**No. 9:05-CV-1049 (LEK/RFT).**

Feb. 29, 2008.

George Harris, Marcy, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State
of New York, Risa L. Viglucci, Esq., Assistant Attorney
General, of Counsel, Albany, NY, for Defendants.

### DECISION AND ORDER

LAWRENCE E. KAHN, District Judge.

**\*1** This matter comes before the Court following a
Report-Recommendation filed on January 24, 2008 by the
Honorable Randolph F. Treece, United States Magistrate
Judge, pursuant to 28 U.S.C. § 636(b) and L.R. 72.3 of
the Northern District of New York. Report-Rec. (Dkt. No.
36). After ten days from the service thereof, the Clerk has
sent the entire file to the undersigned, including the
objections by Plaintiff George Harris, which were filed on
February 26, 2008. Objections (Dkt. No. 38).

It is the duty of this Court to "make a de novo
determination of those portions of the report or specified
proposed findings or recommendations to which objection
is made." 28 U.S.C. § 636(b). "A [district] judge ... may
accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge." *Id.*

This Court has considered the objections and has
undertaken a de novo review of the record and has
determined that the Report-Recommendation should be
approved for the reasons stated therein.

Accordingly, it is hereby

**ORDERED,** that the Report-Recommendation (Dkt. No.
36) is **APPROVED** and **ADOPTED** in its **ENTIRETY;**
and it is further

**ORDERED,** that Defendants' Motion for summary
judgment (Dkt. No 28) is **GRANTED;** and it is further

**ORDERED,** that the Complaint (Dkt. No. 1) is
**DISMISSED;** and it is further

**ORDERED,** that the Clerk serve a copy of this Order on
all parties.

**IT IS SO ORDERED.**

### REPORT-RECOMMENDATION and ORDER

RANDOLPH F. TREECE, United States Magistrate
Judge.

*Pro se* Plaintiff George Harris brings this civil rights
action pursuant to 42 U.S.C. § 1983 claiming that his
constitutional rights under the Eighth Amendment were
violated when he was not properly treated for an injury he
suffered as a passenger in a car accident. Dkt. No. 1,
Compl. Defendants have filed a Motion for Summary
Judgment (Dkt. No. 28) under Rule 56 of the Federal
Rules of Civil Procedure, to which Plaintiff has responded
in opposition (Dkt. No. 29). For the reasons that follow, it
is recommended that Defendants' Motion for Summary
Judgment be **granted,** and Plaintiff's Complaint be
**dismissed.**

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 596891 (N.D.N.Y.)
(Cite as: 2008 WL 596891 (N.D.N.Y.))

## I. FACTS

The following facts were derived mainly from the Defendants' Statement of Material Facts, submitted in accordance with N.D.N.Y.L.R. 7. 1, which were not specifically countered nor opposed by Plaintiff. *See* N.D.N.Y.L.R. 7.1(a)(3) ( *"Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party."* (emphasis in original)). In any event, most, if not all, of the material facts are not in dispute, but rather, the issue is whether those facts give rise to constitutional violations.

On October 24, 2003, Plaintiff was a passenger in a van driven by Defendant Corrections Officer (C.O.) Morton headed from Mid-State Correctional Facility to the SUNY Health Care Center in Syracuse, New York. Dkt. No. 28-4, Defs.' 7.1 Statement at ¶ 1. While attempting to back out of a parking space, Morton hit the rear driver side panel of another vehicle. *Id.* at ¶ 3. Both Morton and Defendant C.O. Irving, who was also present in the car, inspected the vehicles and noted minimal damages. *Id.* at ¶ 4. Plaintiff was wearing a seatbelt when the accident occurred. *Id.* at ¶ 5. Plaintiff arrived at Mid-State at approximately 11:20 a.m. and was seen in the infirmary at approximately 12:40 p.m., at which point he completed an inmate injury report. *Id.* at ¶ 6; Compl. at p. 5. Plaintiff complained of a "bumped" left knee and a "snapped" neck, but Defendant Nurse Hanley found that Plaintiff was not suffering from any injuries requiring medical treatment, and noted that Plaintiff had full range of motion and was alert and oriented. Defs' 7.1 Statement at ¶¶ 8-9. Plaintiff did not seek any further medical attention until October 31, 2003, when he complained of pain and discomfort in his neck and knee to Nurse Myers [FN1] at the flu shot clinic, which is provided for the purpose of administering flu shots only. *Id.* at ¶ 9; Compl. at p. 6. Nurse Myers instructed Plaintiff to sign up for sick call if he needed medical attention, to which Plaintiff responded that he intended to file a grievance. Defs' 7.1 Statement at ¶ 9; Compl. at p. 7.

FN1. Nurse Myers is not a named Defendant in this action.

**\*2** Plaintiff filed a grievance on November 6, 2003, which Superintendent James A. Nichols denied on November 11, 2003, after an investigation. Dkt. No. 28, Defs.' Mot. for Summ. J., Risa Viglucci, Esq., Affirm., dated Apr. 2, 2007, Ex. B at p. 3. Plaintiff's appeal to the Central Office Review Committee (CORC) was unanimously denied. *Id.* at p. 2; Defs' 7.1 Statement at ¶ 10. Plaintiff now brings this action claiming violation of his constitutional rights.

## II. DISCUSSION

### A. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e) ] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.,* 964 F.2d 149, 154 (2d Cir.1992).

To defeat a motion for summary judgment, the non-movant must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts submitted by the movant. FED. R. CIV. P. 56(e); *see also Scott v. Coughlin,* 344 F.3d 282, 287 (2d Cir.2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525-26 (2d Cir.1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard ... they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 596891 (N.D.N.Y.)
(Cite as: 2008 WL 596891 (N.D.N.Y.))

judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin,* 344 F.3d at 289 (citing *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995) and *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.,* 164 F.3d 736, 742 (2d Cir.1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. This in, short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1224 (2d Cir.1994). Furthermore, where a party is proceeding *pro se,* the court must "read [his or her] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994), *accord, Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1994). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991).

**B. Eighth Amendment Claim**

**\*3** Plaintiff claims that the Defendants failed to adequately care for injuries he sustained to his neck and knee during a minor car accident. "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove deliberate indifference to [his] serious medical needs." *Smith v. Carpenter,* 316 F.3d 178, 183 (2d Cir.2003) (internal quotation marks and citations omitted) (alteration in original). This standard contains both objective and subjective elements. *Id.* "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberative indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Id.* at 183-84 (citing *Chance v. Armstrong,* 143 F.3d at 702 & *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996)). The subjective element "entails something more than mere negligence ... [but] something less than acts or omissions for the very purpose of causing harm or

with knowledge that harm will result." *Hathaway v. Coughlin,* 99 F.3d at 553 (quoting *Farmer v. Brennan,* 511 U.S. 825, 835 (1994)).

The record in this case shows that on the day of the accident, October 24, 2003, Plaintiff was attended to by Defendant Nurse Hanley, who found Plaintiff free of injury. Viglucci Affirm., Ex. A ., Rep. of Inmate Injury, dated Oct. 24, 2003. Plaintiff did not seek any further medical attention until October 31, 2003, when he complained of pain and discomfort in his neck and knee to Nurse Myers, who instructed him to utilize the sick call procedure in order to receive medical attention. Compl. at p. 6. Plaintiff's Ambulatory Health Record (AHR) shows that Plaintiff continued to complain of neck pain in the months that followed. *See* Viglucci Affirm., Ex. A, AHR. The medical staff questioned whether Plaintiff had possibly suffered from whiplash, and it was recommended that Plaintiff take Tylenol and apply heat to the afflicted area. *Id.* at entries dated Jan. 15 & Feb. 17, 2004.[FN2] An x-ray exam of Plaintiff's cervical spine revealed an "old apparent injury to [the] C6 spinous process." Dkt. No. 29, Pl.'s Resp. to Defs.' Mot. to Dismiss, Ex. 9, Cervical Spine Exam Rep., dated Jan. 16, 2004. Plaintiff's regular physician received the x-ray report and recommended no changes to his prescriptions. AHR, entry, dated Jan. 22, 2004. This injury was later diagnosed as a pinched nerve in his neck. *Id.* at entry dated Mar. 5, 2004. Such a minor injury does not normally rise to the level of seriousness required to make a viable claim of medical indifference under the Eighth Amendment. *See Bennett v. Hunter,* 2006 WL 1174309, at *3 (N.D.N.Y.2006) (stating that a pinched nerve is not a serious medical need).

FN2. We note that although Plaintiff states he suffered from a "snapped" neck, he does not indicate he suffered from anything other than a generic neck injury. *See* Compl. at p. 9.

The record also reflects that Plaintiff has suffered from Degenerative Disc Disease [FN3] since 2002. Pl.'s Opp. to Defs.' Mot. to Dismiss, Ex. 9, Bone Scan Rep. dated Mar. 29, 2002 & Radiologic Consultation, dated Jan. 16, 2004. The January 16, 2004 report notes a "straightening and mild degenerative disc disease at C5-6 and C6-7." Degenerative Disk Disease itself might be considered a constitutionally significant injury, *see Moolenaar v.*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 596891 (N.D.N.Y.)
(Cite as: 2008 WL 596891 (N.D.N.Y.))

Champagne, 2006 WL 2795339, at *6 n. 6 (N.D.N.Y. Sept. 26, 2006) (citation omitted), however, Plaintiff does not claim that he received inadequate treatment for this ongoing condition, but rather for the neck injury he allegedly suffered as a result of the car accident. *See generally* Compl.; *see also* Smith v. Carpenter, 316 F.3d at 186 (citations omitted) (stating Eighth Amendment claims concern "the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract"). In addition, the Plaintiff has not asserted, nor does the record reflect, that his disease was somehow worsened as a result of the alleged injury he sustained in the car. Therefore, the Plaintiff's claim must fail under the objective prong of the Eighth Amendment deliberate indifference standard.

> FN3. Degenerative Disc Disease (DDD) is "not really a disease but a term used to describe the normal changes in your spinal discs as you age ... [it] can take place throughout the spine, but it most often occurs in the discs in the lower back (lumbar region) and the neck (cervical region)." Information *available at* www.webmd.com. DDD involves the break down or degeneration of the spinal disks caused by the loss of fluid in the discs or tiny cracks or tears in the outer layer of a disc. *Id.* DDD can result in back or neck pain, depending on the location of the affected disc. *Id.*

*4 Even assuming, *arguendo,* that Plaintiff sustained a serious medical injury, his claim would fail under the subjective prong as well. Defendants Irving, Morton, and Hanley are the only named Defendants who were directly involved in the care Plaintiff received after the accident. *See generally* Compl. C.O.'s Irving and Morton were present in the van during the accident, and upon their return to Mid-State, Defendant Morton sent Plaintiff to the infirmary to be checked out for any injury. *Id.* at p. 5. Thus, far from exhibiting a deliberate indifference to Plaintiff's medical needs or otherwise preventing Plaintiff from receiving medical attention, these officers ensured that Plaintiff received medical attention in a timely fashion. *Id.*

Nurse Hanley examined Plaintiff on the day of the

accident and found no injuries, noting that Plaintiff was alert and had a full range of motion. Rep. of Inmate Injury, dated Oct. 24, 2003. Plaintiff states in his Complaint that he requested to see a doctor, but that Hanley denied his request stating he would have to go to sick call to see a doctor. Compl. at p. 6. Plaintiff also states later that night he again complained of neck pain to C.O. Jordan FN4 who informed Hanley of his complaints, but that Hanley refused to see Plaintiff. *Id.* Even accepting these statements as true, there is no evidence on the record to suggest that Hanley acted with deliberate indifference towards Plaintiff's alleged injuries. Prison officials act with deliberate indifference "when [they] 'know[ ] of and disregard[ ] an excessive risk to inmate health or safety; the official[s] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference.' " *Chance v. Armstrong,* 143 F.3d at 702 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1970). Hanley did a "head to toe assessment" and found nothing wrong with Plaintiff, and then advised Plaintiff to utilize the sick call procedure if he wanted to see a doctor. Rep. of Inmate Injury, dated Oct. 24, 2003. Plaintiff admits that despite the severe pain he allegedly felt, he did not inform any medical staffer until October 31, 2003, seven days after the car accident. Compl. at p. 6. At worse then, Hanley failed to identify an injury that Plaintiff himself had not felt the effects of at the time of Hanley's assessment. *Id.* (stating that only after Hanley's examination did Plaintiff "really feel the effects of the accident upon his neck."). There is no accusation nor evidence on the record that Defendant Hanley consciously disregarded Plaintiff's medical needs. *See* Farmer v. Brennan, 511 U.S. at 836 (stating a plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm).

> FN4. C.O. Jordan is not a named Defendant in this action.

For the foregoing reasons, it is recommended that Summary Judgment be **granted** as to Defendants Hanley, Irving, and Morton.

### C. Personal Involvement

*5 The Second Circuit has held that "personal

Not Reported in F.Supp.2d, 2008 WL 596891 (N.D.N.Y.)
(Cite as: 2008 WL 596891 (N.D.N.Y.))

involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citations omitted). Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement. Therefore, a prison official may not be found liable for a constitutional violation merely because of the acts of those under his control." *Kinch v. Artuz,* 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin,* 58 F.3d 865, 874 (2d Cir.1995) & *Wright v. Smith,* 21 F.3d at 501) (further citations omitted).

If a plaintiff seeks to bring a § 1983 action for supervisory liability, liability on the part of the supervisor may exist

> in one or more of the following ways: 1) actual direct participation in the constitutional violation, 2) failure to remedy a wrong after being informed through a report or appeal, 3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, 4) grossly negligent supervision of subordinates who committed a violation, or 5) failure to act on information indicating that unconstitutional acts were occurring.

*Hernandez v. Keane,* 341 F.3d 137, 145 (2d Cir.2003) (citing *Colon v. Coughlin,* 58 F.3d at 873) (further citations omitted).

In the case at bar, Plaintiff has failed to identify how the remaining Defendants, Baxter, Stine, Nichols, Berry, and Mohrman, were personally involved in his alleged Eighth Amendment claim. Plaintiff's statements about these Defendants concern the investigation of the Grievance he filed and the subsequent decisions rendered against him. Plaintiff takes issue with several alleged failures to follow correct procedure in reporting the car accident, and accuses these Defendants of failing to follow what Plaintiff asserts is correct protocol in the aftermath of a car accident.[FN5] *See* Compl. at pp. 5-9. However, aside from his Eighth Amendment claim, Plaintiff fails to explain, and the Court cannot itself fathom, how any of these accusations amount to a violation of his constitutional rights.

FN5. For example, Plaintiff states that Defendants Morton and Irvin failed to "speak with their superiors and get instructions as to what procedure was to be followed" in the wake of the car accident. Compl. at p. 5. Similarly, Plaintiff accuses Defendant Stine of failing to contact Plaintiff in order to make a written report of the accident. *Id.* at p. 7.

For these reasons it is recommended that the Motion for Summary Judgment be **granted** as to the remaining Defendants.

### D. Qualified Immunity

Defendants raise the affirmative defense of qualified immunity. However, because we find that Plaintiff has suffered no constitutional violation, we need not address the merits of that defense. *See Saucier v. Katz,* 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for fruther inquiries regarding qualified immunity.").

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED,** that Defendants' Motion for Summary Judgment (Dkt. No. 28) be **granted;** and it if further

***6 RECOMMENDED,** that Plaintiff's Complaint (Dkt. No. 1) be **dismissed;** and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 596891 (N.D.N.Y.)
(Cite as: 2008 WL 596891 (N.D.N.Y.))

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten
(10) days within which to file written objections to the
foregoing report. Such objections shall be filed with the
Clerk of the Court. ***FAILURE TO OBJECT TO THIS
REPORT WITHIN TEN (10) DAYS WILL PRECLUDE
APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85,
89 (2d Cir.1993) (citing *Small v. Sec'y of Health and
Human Servs .,* 892 F.2d 15 (2d Cir.1989)); *see also* 28
U.S.C. § 636(b) (1); FED. R. CIV. P. 72, 6(a), & 6(e).

N.D.N.Y.,2008.
Harris v. Morton
Not Reported in F.Supp.2d, 2008 WL 596891 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2007 WL 894218 (W.D.N.Y.)
(Cite as: 2007 WL 894218 (W.D.N.Y.))

**C**
Only the Westlaw citation is currently available.

United States District Court,
W.D. New York.
Eugene JONES, Plaintiff,
v.
Sergeant FURMAN, C.O. Carpender, C.O. Bly, C.O.
Losito, C.O. John Doe # 1, C.O. John Doe # 2, C.O.
John Doe # 3, C.O. John Doe # 4, Nurse John Doe,
Nurse J. Brink, R. Murphy, C.O., Lanasa, C.O., D.
Hersh, Nurse, and T. Lanasa, Correctional Officer,
Defendants.
No. 02-CV-939F.

March 21, 2007.

Eugene Jones, Fallsburg, NY, pro se.

Andrew M. Cuomo, Attorney General, State of New York,
Stephen F. Gawlik, Assistant Attorney General, of
Counsel, Buffalo, NY, for Defendants.

### DECISION and ORDER

LESLIE G. FOSCHIO, United States Magistrate Judge.

### JURISDICTION

**\*1** On May 7, 2003, the parties to this action consented
pursuant to 28 U.S.C. § 636(c) to proceed before the
undersigned. The matter is presently before the court on
Defendants' motion for summary judgment (Doc. No. 58),
filed February 18, 2005.

### BACKGROUND

Plaintiff Eugene Jones ("Plaintiff"), proceeding *pro se,*
commenced this civil rights action on December 27, 2002,
alleging that while incarcerated at Southport Correctional
Facility ("Southport"), Defendants Sergeant Furman
("Sgt.Furman"), C.O. Carpenter [FN1] ("Carpenter"), C.O.
Bly ("Bly"), C.O. Losito ("Losito"), C.O. John Does 1
through 4 and Nurse Jane Doe (together, "the Doe
Defendants"), and Nurse J. Brink ("Brink"), subjected
Plaintiff to excessive force, cruel and unusual punishment
and acted with deliberate indifference to Plaintiff's
medical needs, in violation of the Eighth Amendment. On
March 27, 2003, an answer was filed by Defendants Sgt.
Furman, Carpenter, Bly, Losito and Brink. On October 21,
2003, Plaintiff filed an Amended Complaint (Doc. No. 21)
("Amended Complaint"), asserting essentially the same
claims against the original named Defendants, and naming
new Defendants, including C.O. Lanasa ("Lanasa"), C.O.
R. Murphy ("Murphy"), and Nurse D. Hersh ("Hersh") in
place of the Doe Defendants. Answers to the Amended
Complaint were filed on November 13, 2003, by
Defendants Sgt. Furman, Bly, Brink, Carpenter, and
Losito (Doc. No. 22), and on October 14, 2004, by
Defendants Hersh, LaNasa and Murphy (Doc. No. 49).

FN1. Plaintiff incorrectly spells Carpenter's name
as "Carpender".

On February 18, 2005, Defendant filed the instant motion
seeking summary judgment ("Defendants' motion").
Defendants also filed, on February 18, 2005, papers in
support of the motion a Memorandum of Law (Doc. No.
59) ("Defendants' Memorandum"), a Statement of Facts
Not in Dispute (Doc. No. 60) (Defendants' Statement of
Facts"), and the Declarations of Defendants Brink (Doc.
No. 61) ("Brink Declaration"), Furman (Doc. No. 62)
("Furman Declaration"), Lanasa (Doc. No. 63) ("Lanasa
Declaration"), Murphy (Doc. No. 64) ("Murphy
Declaration"), Hersh, a/k/a Weed (Doc. No. 65) ("Weed
Declaration"), Carpenter (Doc. No. 66) ("Carpenter
Declaration"), Bly (Doc. No. 67) ("Bly Declaration"), and
Losito (Doc. No. 68) ("Losito Declaration").

In opposition to summary judgment, Plaintiff filed on June
8, 2005, a Memorandum of Law (Doc. No. 72)
("Plaintiff's Memorandum"), a Statement of Disputed

Not Reported in F.Supp.2d, 2007 WL 894218 (W.D.N.Y.)
(Cite as: 2007 WL 894218 (W.D.N.Y.))

Factual Issues and Questions (Doc. No. 73) ("Plaintiff's Statement of Facts"), and the Declaration of Plaintiff (Doc. No. 74) ("Plaintiff's Declaration"), attached to which are exhibits A though X ("Plaintiff's Exh(s). ----"). In further support of summary judgment, Defendants filed on June 16, 2005 the Reply Declaration of Assistant Attorney General Stephen F. Gawlik ("Gawlik") (Doc. No. 75) ("Gawlik Declaration"). Oral argument was deemed unnecessary.

Based on the following, Defendants' motion for summary judgment is GRANTED in part and DENIED in part.

### FACTS [FN2]

[FN2.] Taken from the pleadings and motion papers filed in this action.

*2 Plaintiff's claims are based on separate incidents occurring on April 26, 2002 and June 4, 2002. Because Plaintiff's and Defendants' versions of the events concerning each incident vary greatly, and are critical to resolution of Defendants' motion, the court describes both.

### The April 26, 2002 Incident

Plaintiff alleges that while incarcerated at the Southport Correctional Facility ("Southport"), on April 26, 2002, Defendants Sgt. Furman, and Corrections Officers Bly, Carpenter, and Lanasa, subjected Plaintiff to excessive force by engaging in an unprovoked physical attack on Plaintiff, and that following the attack, Defendants Thurman, Bly, Carpender, Lanasa and Nurse Brink ("Brink") acted with deliberate indifference to Plaintiff's medical needs by failing to treat Plaintiff for injuries allegedly sustained as a result of the attack. First Claim for Relief, Amended Complaint at 4. According to Plaintiff, on the morning of April 26, 2002, Plaintiff was released from his prison cell to attend recreation, and Sgt. Furman proceeded to pat-frisk Plaintiff, and remarked that Plaintiff "like[d] to write, huh? Well, we are going to give you something to write about." Id. Plaintiff maintains that after the pat-frisk concluded, Plaintiff "was directed back on to the company," and when Plaintiff reached the "shower

area" he was struck on the right side of his head by Sgt. Furman, causing Plaintiff to fall to the floor, where Defendants Furman, Bly, Carpenter and Lanasa kicked, punched and jabbed at Plaintiff with batons. Id. According to Plaintiff, he was handcuffed and restrained with a wrist chain during the incident. Id.

According to Plaintiff, after the incident, Defendants Bly and Carpenter dragged Plaintiff to his cell and placed him inside. Amended Complaint at 4. Plaintiff requested that his injuries, including a sore and painful right ear, lumps behind his right ear and on the back of his head, small cuts on his nose and hand, and bruising on his ribs, back, and legs, be treated, but Sgt. Furman responded "Yeah, right!," and no treatment was provided at that time. Id.

Later, while Defendant Losito was on rounds, Plaintiff described his injuries to Losito and requested to see the nurse. Amended Complaint at 4. Losito responded that "the nurse will be around with medication and as long as you ['re] still breathing [it's] not a[n] emergency." Id. Plaintiff never saw the nurse on April 26, 2002. Id. Rather, on April 27 or 28, 2002, Plaintiff informed Defendant Nurse Brink of his injuries and blood in his urine while Brink was distributing medications to the inmates. Id. at 5. Plaintiff maintains Brink did not believe Plaintiff and, instead, responded by calling Plaintiff a "trouble maker and liar." Id.

Defendants deny any force was used against Plaintiff on April 26, 2002. Rather, Defendants maintain that Plaintiff, during his daily exercise run on April 26, 2002, refused to comply with exercise procedures by repeatedly turning his head while undergoing a pat-frisk. As a result, Sgt. Furman ordered Plaintiff to stop turning his head and warned that Plaintiff's continued refusal to comply with proper exercise procedures would constitute an exercise refusal necessitating Plaintiff's return to his cell. Because Plaintiff continued to turn his head, he was placed in restraints and escorted back to his cell where the restraints were removed without incident.

*3 According to Defendants, Plaintiff was seen by Nurse Brink on April 28, 2002 during Brink's regular rounds. Brink maintains that at that time, Plaintiff complained that since the previous evening, he had been passing blood in

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 894218 (W.D.N.Y.)
(Cite as: 2007 WL 894218 (W.D.N.Y.))

his urine, but made no other complaints and exhibited no other signs or symptoms, and there was no indication that Plaintiff suffered from any serious ailment requiring immediate attention. Brink Declaration ¶ 4. Brink advised Plaintiff to increase his fluids intake and report any change in signs or symptoms, and also requested a urinalysis be ordered. *Id.* The urinalysis order was approved by Southport Medical Director Dr. Alves. and, on April 30, 2002, Plaintiff's urine sample was collected for urinalysis which showed blood, bacteria and increased white blood cell count indicative of a mild urinary tract infection ("UTI"). *Id.* ¶¶ 4-5. Follow-up urinalysis on samples collected from Plaintiff on May 7 and 13, 2002 established that by May 13, 2002, Plaintiff's urine was normal. *Id.* ¶ 6.

On April 30, 2002, Plaintiff was seen by Nurse Peters [FN3] in connection with complaints of problems with his right ear. Upon examination, Nurse Peters observed no bruising or swelling and scheduled an ear examination.

        FN3. Nurse Peters is not a party to this action.

When Nurse Brink next saw Plaintiff on May 1, 2002, Plaintiff complained that he was unable to hear out of his right ear. Brink found no outward sign of injury and discussed the matter with staff from Southport's mental health unit, advising of Plaintiff's recent allegations of paranoia. Brink noted in Plaintiff's medical chart that Plaintiff would sporadically refuse his morning psychiatric medications and that an ear examination was pending.

On May 2, 2002, Nurse Brink, at the request of Southport's security staff, examined Plaintiff in connection with Plaintiff's complaint that he had recently been the subject of an excessive use of force, which revealed a mark on Plaintiff's nose, a right swollen ear, a bump on the back of Plaintiff's head, a sore right rib, bilateral flank soreness, and a mark between Plaintiff's fourth and fifth left fingers. Upon a complete physical examination of Plaintiff in his underwear, Nurse Brink observed only a 3 cm superficial abrasion on Plaintiff's nose, and a 2 cm superficial abrasion on Plaintiff's knuckle. Otherwise, Plaintiff had no swelling or trauma about his ears, his ear canals were healthy, there were no bumps or bruising on Plaintiff's head, his lungs were clear,

Plaintiff ambulated without difficulty and had full range of motion in all extremities, digits were normal, all skin was intact, and Plaintiff required no medication.

**The June 4, 2002 Incident**

As to the incident Plaintiff claims occurred on June 4, 2002, Plaintiff alleges Sgt. Furman advised that Plaintiff was being moved from C-Block, 2-Company, 6-Cell to C-Block, 1-Company, 15-Cell, and while escorting Plaintiff to the new cell, remarked that such cell "was technically our of order, but that was where [Plaintiff] was being placed." Second Claim for Relief, Amended Complaint at 6. Plaintiff describes his new cell as "not in living condition," as the toilet did not flush, the sink's cold water did not work, although the hot water was on and would not stop running, the cell's floor was covered with water and grime, and the cell mattress was wet with water or urine. *Id.* Plaintiff maintains that upon informing Furman of the cell's conditions, Furman ignored Plaintiff and walked away. *Id.*

**\*4** According to Plaintiff, later that day, Defendant Murphy dropped two of Plaintiff's books into Plaintiff's cell. Amended Complaint at 6. When Plaintiff asked about his other personal property, including legal materials, bed sheets, letters, photographs, and other items, Murphy "just walked away." *Id.* Plaintiff also maintains that Murphy failed to provide Plaintiff with lunch, and when Plaintiff complained to Sgt. Furman about not receiving his luncheon meal, Furman acted as though he could not hear Plaintiff and walked away. *Id.*

Plaintiff asserts that the stress Defendants caused Plaintiff on June 4, 2002, "gave me a mental breakdown," such that after dinner, Plaintiff ate and smeared feces on his body, face and around his cell. Amended Complaint at 6-7. Plaintiff further maintains he slashed his wrist and forearm with a medication tube and that when he showed such wounds to Defendant Losito and requested help, Losito did nothing. *Id.* at 7. Defendants Losito and Nurse Hersh later stopped by Plaintiff's cell and, upon observing the blood and feces smeared on Plaintiff and around the cell, as well as the slash marks on Plaintiff's arms for which Plaintiff again requested help, Losito and Hersh laughed and Hersh stated "You want to kill yourself? Use your

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 894218 (W.D.N.Y.)
(Cite as: 2007 WL 894218 (W.D.N.Y.))

socks and hang yourself from the bars," and then walked away. *Id.*

On June 5, 2002, at 7:10 A.M., Nurse Peters stopped by Plaintiff's cell and advised that she was going to get Plaintiff some help. At 9:15 A.M. on June 5, 2002, two unidentified corrections officers and a sergeant removed Plaintiff, who was covered in feces and crying uncontrollably, from the cell and escorted to the infirmary. Plaintiff was never returned to the cell where the alleged actions on June 4th and 5th took place.

Defendants maintain that when Sgt. Furman placed Plaintiff in the new cell on June 4, 2002, Plaintiff did not inform Furman of any problems with the cell's conditions. Rather, according to Southport's logbook,[FN4] Plaintiff was placed in the new cell on June 4, 2002, at 2:30 P.M., after Plaintiff made threats against Defendant Murphy. The officer making rounds at 5:15 P.M. that same day observed that Plaintiff had wiped feces on the cell's walls. Southport's logbook indicates that on June 5, 2002, at 9:10 A.M., Mr. Militello, a mental health worker from the New York State Office of Mental Health, visited Plaintiff and, by 10:10 A.M. on June 5, 2002, Plaintiff had been transferred to Southport's infirmary.

FN4. Copies of the relevant portions of Southport's logbook are attached as Exh. A to the Furman Declaration.

According to Plaintiff's medical records, on June 4, 2002, Plaintiff was examined at 7:30 P.M., by Nurse Whedon[FN5] who noted that Plaintiff complained of a rash and dryness on his lower legs. June 4, 2002 Medical Records, Weed Declaration Exh. A. On June 5, 2002, Plaintiff was transferred from Southport to the Elmira Correctional Facility ("Elmira").

FN5. Nurse W hedon is not a party to this action.

According to Outpatient Psychiatric Progress Notes prepared by Militello and submitted by Plaintiff ("Outpatient Psychiatric Progress Notes"), Plaintiff's Exh. W, when Plaintiff was transferred to Elmira on June 5, 2002, Plaintiff exhibited anger, self-harm, threats to self-harm, was withdrawn, had regressed and had behavioral problems including scratching his wrists, and smearing feces on himself. Plaintiff was noted to have an extensive psychiatric history. Plaintiff was diagnosed with schizophrenia and antisocial personality disorder, and was further noted with self-harm gestures, and tendencies toward exposing himself to females and violence. On June 24, 2003, Mr. H.E. Smith ("Smith"), Executive Director of Central New York Psychiatric Center filed a petition ("the Petition") in New York Supreme Court, Oneida County, seeking an order pursuant to New York Correction Law § 402, committing Plaintiff to a state hospital for the mentally ill. Plaintiff's Exh. X. According to Smith, the Petition was based on an examination of Plaintiff conducted by prison physicians[FN6] on June 23, 2002. *Id.*

FN6. The record does not specify whether such "physicians" included a psychiatrist.

### DISCUSSION

### 1. Summary Judgment

*5 Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a) and (b); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250-51 (1986); *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991). The court is required to construe the evidence in the light most favorable to the non-moving party. *Tenenbaum v. Williams,* 193 F.3d 58, 59 (2d Cir.1999) (citing *Anderson, supra,* 477 U.S. at 255); *Rattner,* 930 F.2d at 209. The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment. *Celotex,* 477 U.S. at 322; *see Anderson,* 477 U.S. at 247-48 ("summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 894218 (W.D.N.Y.)
(Cite as: 2007 WL 894218 (W.D.N.Y.))

return a verdict for the nonmoving party").

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.' Such a motion, whether or not accompanied by affidavits, will be 'made and supported as provided in this rule [FRCP 56],' and Rule 56(e) therefore requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Celotex, 477 U.S. at 323-24 (1986) (quoting Fed.R.Civ.P. 56). Thus, "as to issues on which the non-moving party bears the burden of proof, the moving party may simply point out the absence of evidence to support the non-moving party's case." Nora Beverages, Inc. v. Perrier Group of America, Inc., 164 F.3d 736, 742 (2d Cir.1998). Once a party moving for summary judgment has made a properly supported showing as to the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor. Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d Cir.1995). Rule 56 further provides that

[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed.R.Civ.P. 56(e).

*6 Here, Plaintiff alleges Defendants violated his civil rights under 42 U.S.C. § 1983. Pursuant to § 1983, an individual may seek damages against any person who, under color of state law, subjects such individual to the deprivation of any rights, privileges, or immunities protected by the Constitution or laws of the United States. 42 U.S.C. § 1983. However, "Section 1983 'is not itself a source of a substantive rights,' but merely provides 'a

method for vindication of federal rights elsewhere conferred.' " Albright v.. Oliver, 510 U.S. 266, 271 (1994) (citing Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979)). Thus, "[t]he first step in any such claim is to identify the specific constitutional right allegedly infringed." Id. (citing Graham v. Connor, 490 U.S. 386, 394, (1989); and Baker, 443 U.S. at 140).

Based on the incident of April 26, 2002, Plaintiff claims violations of his Eight Amendment rights when Defendants Furman, Bly, Carpenter and Lanasa used excessive force on him, and when Defendants Furman, Bly, Carpenter, Lanasa and Brink acted with deliberate indifference to Plaintiff's medical needs. Amended Complaint at 5. Based on the incident of June 4, 2002, Plaintiff alleges violations of his Eighth Amendment rights against cruel and unusual punishment occurred when Defendant Sgt. Furman placed Plaintiff in an unsanitary cell and refused to resolve Plaintiff's complaints of not being served a meal and providing clean bedding, and Murphy withheld from Plaintiff food, clean bedding and Plaintiff's personal property. Amended Complaint at 7. Plaintiff further claims Losito and Hersh violated his Eighth Amendment rights by acting with deliberate indifference to Plaintiff's psychiatric and medical needs. Id. at 7-8.[FN7]

FN7. Although Defendants assert as an affirmative defense that Plaintiff failed to exhaust administrative remedies for any of the instant claims, Answer filed by Defendants Sgt. Furman, Bly, Brink, Carpenter, and Losito (Doc. No. 22), ¶ 17; Answer filed by Defendants Hersh, Lanasa and Murphy (Doc. NO. 49) ¶ 18, Defendants have not moved for summary judgment on that ground. Further, it is unclear from the record whether Plaintiff has, in fact, exhausted his administrative remedies. See Amended Complaint, Inmate Grievance Program Superintendent Statement (advising Plaintiff his grievance was untimely and granting Plaintiff permission to appeal to the Superintendent's Office, but failing to disclose whether Plaintiff ever pursued such appeal). The court takes no position as to whether Defendants can now move for leave to amend the scheduling order to permit further dispositive motions as to the exhaustion issue after the cut-off date provided in the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 9:09-cv-00580-DNH-DEP   Document 23   Filed 07/23/10   Page 72 of 121

Page 6

Not Reported in F.Supp.2d, 2007 WL 894218 (W.D.N.Y.)
(Cite as: 2007 WL 894218 (W.D.N.Y.))

Scheduling Order (Doc. No. 53) for dispositive motions. Accordingly, for the purposes of the instant motion, no exhaustion of remedies defense is before the court.

## 2. Eighth Amendment

Plaintiff's claims of excessive force, deliberate indifference to medical needs, and unsanitary conditions of confinement pertaining to the separate incidents on April 26, 2002 and June 4, 2002 all arise under the Eighth Amendment. In particular, the Eighth Amendment prohibits "cruel and unusual punishments" during imprisonment. U.S. Const. 8th amend.; *Wilson v. Seiter,* 501 U.S. 294, 296-97 (1991); *Romano v. Howarth,* 998 F.2d 101, 104 (2d cir.1993). Not every governmental action affecting the interests or well-being of a prisoner, however, is subject to Eighth Amendment protections. *Whitley v. Albers,* 475 U.S. 312, 319 (1986). Rather, only the unnecessary and wanton infliction of pain constitutes the cruel and unusual punishment forbidden by the Eighth Amendment. *Id.* Nevertheless, within the ambit of the Eighth Amendment are protections against the use of excessive force, deliberate indifference to an inmate's serious medical need, and inhumane conditions of confinement. *See Trammell v. Keane,* 338 F .3d 155, 162 (2d Cir.2003) (observing different tests for evaluating Eighth Amendment claims for excessive force, conditions of confinement, and denial of medical care).

## A. Excessive Force

*7 Defendants argue in support of summary judgment that despite Plaintiff's claims asserted in the Amended Complaint and by Plaintiff in his affidavit opposing summary judgment, there is a complete lack of any objective evidence supporting Plaintiff's assertion that on April 26, 2002, he was subjected to excessive force, resulting in injuries for which Plaintiff was subsequently denied medical treatment. Defendants' Memorandum at 3-9. In opposition to summary judgment, Plaintiff submits the affidavit of David Albelo ("Albelo") ("Albelo Affidavit"), an inmate who was also confined in Southport's C-Block on April 26, 2002, and who witnessed the incident. Albelo Affidavit, Plaintiff's Exh. A, ¶ 1-4.

In assessing an inmate's claims that prison officials subjected him to cruel and unusual punishment by using excessive force, courts must determine whether the prison officials acted "in a good-faith effort to maintain or restore prison discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillan,* 503 U.S. 1, 7 (1992). An inmate plaintiff claiming that prison officials subjected him to cruel and unusual punishment by use of excessive force must establish both an objective and subjective component of the claim. *Romano,* 998 F.2d at 105.

Objectively, a § 1983 plaintiff must establish that the alleged deprivation is sufficiently serious or harmful to reach constitutional dimensions. *Romano,* 998 F.S2d at 104, *see also Wilson,* 501 U.S. at 296. This objective component is "contextual and responsive to 'contemporary standards of decency.' " *Hudson,* 503 U.S. at 8. Thus, while a *de minimis* use of force will rarely suffice to state a constitutional claim, a plaintiff is not required to show that the application of force resulted in any serious injury. *Id.* at 9-10; *see also Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973) (noting that "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."). An inmate's constitutional protections against excessive force by corrections officers "is nowhere nearly so extensive as that afforded by the common law tort action for battery ." *Johnson,* 481 F.2d at 1033; *Anderson v. Sullivan,* 702 F.Supp. 424, 426 (S.D.N.Y.1988).

In the instant case, Plaintiff has filed in opposition to summary judgment the affidavit of David Albelo ("Albelo") ("Albelo Affidavit"), an inmate who was also confined in Southport's C-Block on April 26, 2002, and who claims to have witnessed the incident. Albelo Affidavit, Plaintiff's Exh. A, ¶ 1-4. Albelo avers he observed Sgt. Furman strike Plaintiff in the side of the head, causing Plaintiff to fall to the floor, and then observed Furman, Bly, Carpenter and two other corrections officers punch and kick Plaintiff as he lay on the floor in handcuffs and chains. *Id.* ¶ 5. According to Albelo, he and other inmates screamed for the officers to stop assaulting Plaintiff, *id.* ¶ 6, but that "Plaintiff was then half dragged and half walked to his cell while officer Bly slapped him." *Id.* ¶ 7. Albelo further stated that he was concerned about Plaintiff's well-being and asked the "unit

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 894218 (W.D.N.Y.)
(Cite as: 2007 WL 894218 (W.D.N.Y.))

officer" to check on Plaintiff, but the unit officer told Albelo to "mind your business, it does not concern [ ] you." *Id.* ¶ 9.

**\*8** The statements contained in the Albelo Affidavit contradicts the statements made by Defendants in support of summary judgment in which Defendants, while admitting that Plaintiff was placed in handcuffs and chained, deny that any force was used in returning Plaintiff to his cell on the morning of April 26, 2002, following Plaintiff's refusal to comply with Sgt. Furman's order to stop turning his head while being pat-frisked in preparation for the exercise run. Furman Declaration ¶¶ 5-10; Bly Declaration ¶¶ 5-7; Carpenter Declaration ¶¶ 5-8.

Nor is the fact that Plaintiff's medical records are devoid of any evidence that Plaintiff was injured in the April 26, 2002 dispositive of the claim. Rather, an Eighth Amendment excessive force claim does not require any serious injury. *Hudson,* 503 U.S. at 8; *Johnson,* 481 F.2d at 1028. Furthermore, the record on this motion establishes that Plaintiff was not thoroughly examined in connection with his complaints following the April 26, 2002 incident until May 2, 2002, almost a week later, during which time more minor injuries would likely become less apparent. Had Plaintiff undergone a thorough examination on April 26, 2002, the two abrasions observed on May 2, 2002, including the 3 cm superficial abrasion on Plaintiff's nose, and the 2 cm superficial abrasion on Plaintiff's knuckle, would likely have appeared more palpable and thus more serious. As such, there is a material issue of fact as to the first prong of Plaintiff's excessive force claim, and the court next considers the second, subjective prong of the claim.

The subjective component of an Eighth Amendment excessive force claim requires that the defendants act malicious and with the intent to harm the inmate plaintiff. *Hudson,* 503 U.S. at 7; *Romano,* 998 F.2d at 105. To determine whether the defendants acted maliciously, the trier of fact should consider (1) the extent of the plaintiff's injuries; (2) the need for the application of force; (3) the correlation between the need for force and the amount of force used; (4) the threat reasonably perceived by the defendants; and (5) any efforts made by the defendants to temper the severity of a forceful response. *Whitley,* 475

U.S. at 321. Here, the record also establishes a material issue of fact as to whether Plaintiff was subjected to the use of any force in being returned to his cell on April 26, 2002 and, if so, whether the use of such force was reasonable.

Specifically, as discussed above, *supra,* at 5, Defendants admit that Plaintiff was both handcuffed and restrained with a wrist chain before being escorted to his cell on April 26, 2002, but deny any force was used against Plaintiff, in contrast to Plaintiff's allegations, corroborated by Albelo, that Defendants struck Plaintiff in the side of the head, knocking Plaintiff to the ground, and then continued to punch and kick Plaintiff while he lay in on the floor, still restrained by handcuffs and the chain. Defendants' assertion that no force was used implies that any threat posed by Plaintiff was small, such that any use of force by Defendants could be disproportionate. It is significant that Defendants do not challenge the accuracy or authenticity of the Albelo Affidavit, which is both signed and notarized as required to be considered admissible evidence. This unresolved factual issue as to the subjective prong of Plaintiff's excessive force claim is not only material, but also sufficient to preclude summary judgment.

**\*9** Summary judgment on Plaintiff's excessive force claim arising from the April 26, 2002 incident is DENIED.

**B. Deliberate Indifference to Serious Medical Need**

Defendants also maintain that the record contains no objective evidence supporting Plaintiff's alleged injuries resulting from Defendants alleged use of excessive force on April 26, 2002, or that Plaintiff was denied necessary medical treatment for any serious injury. *Id.* at 9-12. According to Defendants, the record also fails to contain any evidence that on June 4, 2002, Plaintiff experienced a mental breakdown for which he was denied appropriate psychiatric care. *Id.* at 17-19.

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998)

Not Reported in F.Supp.2d, 2007 WL 894218 (W.D.N.Y.)
(Cite as: 2007 WL 894218 (W.D.N.Y.))

(quoting *Estelle v. Gamble,* 429 U.S. 97, 104 (1976) (bracketed text in original)). A serious medical condition exists where "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Chance,* 143 F.3d at 702. The standard for determining whether there has been an Eighth Amendment violation based on deliberate indifference to a prisoner's serious medical needs

incorporates both objective and subjective elements. The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison officials acted with a sufficiently culpable state of mind.

*Smith v. Carpenter,* 316 F.3d 178, 183-84 (2d Cir.2003) (citing *Estelle,* 429 U.S. at 104, and *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996)).

Denying or delaying access to medical care or intentionally interfering with prescribed treatment may constitute deliberate indifference. *Estelle,* 429 U.S. at 104; *see Harrison v. Barkley,* 219 F.3d 132, 138 (2d Cir.2000) (holding dentist's outright refusal for one year to treat a cavity, a degenerative condition tending to cause acute and pain if left untreated, combined with imposition of an unreasonable condition on such treatment, could constitute deliberate indifference on the part of the prison dentist, precluding summary judgment in defendant's favor). Such delay in treatment violates the Eighth Amendment "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards by intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle,* 429 U.S. at 104-05. Further, culpable intent requires the inmate establish both that a prison official "has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." *Hayes v. New York City Department of Corrections,* 84 F.3d 614, 620 (2d Cir.1996) (citing *Farmer v. Brennan,* 511 U.S. 825, 834-35 (1994). Nevertheless, neither "inadvertent failures to provide adequate medical care" nor "negligence in diagnosing or treating a medical condition" comprise Eighth Amendment violations. *Estelle,* 429 U.S. at 105-06 (holding medical malpractice

does not become a constitutional violation merely because the victim is a prisoner); *Harrison,* 219 F.3d at 139 ("We agree that the mere malpractice of medicine does not amount to an Eighth Amendment violation."). Nor does a "mere disagreement" with a physician over the appropriate course of treatment arise to a constitutional violation, although in certain instances a physician may evince deliberate indifference by consciously choosing "an easier and less efficacious" treatment plan. *Chance,* 143 F.3d at 703.

*\*10 As to the objective prong, a sufficiently serious conditions is "a condition of urgency, one that may produce death, degeneration or extreme pain." *Hathaway,* 99 F.3d at 66. In the instant case, the record is devoid of any evidence establishing that Plaintiff, in connection with either incident, had any medical urgency that might produce death, degeneration or extreme pain. Rather, the record demonstrates that any injury inflicted on Plaintiff in connection with the April 26, 2002 incident was relatively minor, given that by the time Plaintiff underwent the thorough physical examination on May 2, 2002, only two small abrasions were discovered. As such, assuming, *arguendo,* that on April 26, 2002, Plaintiff did in fact suffer the alleged injuries, including soreness, pain in and a lump behind his right ear, lump on the back of his head, small abrasions on his nose and knuckle, and bruising to his back, ribs and legs, Amended Complaint at 4, such injuries do not constitute the requisite "serious medical condition" necessary to establish an Eight Amendment deliberate indifference claim. *Compare Hemmings v. Gorczyk,* 134 F.3d 104, 109 (2d Cir.1998) (reversing district court's grant of summary judgment in favor of defendants on inmate plaintiff's Eighth Amendment deliberate indifference to serious medical needs claim where inmate suffered from ruptured Achilles tendon, which remained swollen and painful, requiring plaintiff use crutches to walk, which was originally diagnosed as a bad sprain, yet defendants failed for two months to provide proper treatment despite fact that plaintiff's disabling condition was "easily observable"). That by May 2, 2002, such injuries had healed without any medical treatment further establishes that the injuries were not likely to produce death, degeneration or extreme pain without urgent medical treatment. Additionally, that Plaintiff, on April 28, 2002, reported he was passing blood in his urine, yet failed at that time to make any other complaints, demonstrates that Plaintiff's claimed injuries had already sufficiently healed such that urgent treatment

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 894218 (W.D.N.Y.)
(Cite as: 2007 WL 894218 (W.D.N.Y.))

for them was never required. That Plaintiff received timely medical care in response to such complaint, including collecting a urine sample which, upon analysis, showed evidence of a mild UTI, rather than any trauma, further undermines Plaintiff's asserted denial of urgent medical care. The record thus fails to establish any factual issue which, if decided in Plaintiff's favor, could establish the objective prong of Plaintiff's deliberate indifference claim with regard to the April 26, 2002 incident.

The record is similarly deficient as to the June 4, 2002 incident. Specifically, although Plaintiff claims that he had a "mental breakdown" after he was placed in the allegedly unsanitary cell, which caused him to eat and smear feces on himself, and to attempt to slash his wrists with a medication tube, Amended Complaint, at 7, the record shows that Plaintiff was first observed to have wiped feces on himself and the walls of his cell at 5:15 P.M. on June 4, 2002, less than three hours after Plaintiff was moved to the cell. Prison Logbook, Furman Declaration Exh. A. At 7:10 P.M. that same day, Plaintiff was seen by Nurse Whedon in connection with Plaintiff's complaints of a rash and dryness on his lower legs. Weed Declaration ¶ 4 and Exh. A, Plaintiff's Ambulatory Health Record for June 4, 2002. In fact, two affidavits submitted by Plaintiff in opposition to summary judgment corroborate the fact that Plaintiff was seen by a nurse in the evening of June 4, 2002. *See* Plaintiff's Exhs. T (Affidavit of Inmate Bussey ("Bussey Affidavit")) and U (Affidavit of Inmate Douglas ("Douglas Affidavit")).[FN8] Significantly, Whedon did not note any injury to Plaintiff's wrists. Moreover, the very next morning, June 5, 2002, at 9:10 A.M., Plaintiff was seen by a mental health worker, Mr. Militello, who had Plaintiff transferred to the infirmary and then transferred to Elmira for reevaluation of Plaintiff's schizophrenia diagnosis because Plaintiff was exhibiting signs of mental illness. Furman Declaration ¶¶ 14-15; Outpatient Psychiatric Progress Notes, Plaintiff's Exh. W. Militello also reported that Plaintiff exhibited anger, was threatening to harm himself, had smeared feces on himself, and described Plaintiff as having "scratched wrists," Outpatient Psychiatric Progress Notes, but did not report any physical or mental condition arising to a serious medical need for which treatment had been denied. Rather, the record establishes that Defendants realized in the evening of June 4, 2002 that Plaintiff was experiencing some mental issues for which help was provided the next morning. The record thus fails to establish any factual issue which, if decided in Plaintiff's favor, could establish the objective prong of Plaintiff's deliberate indifference claim with regard to the June 24, 2002 incident.

> FN8. Both Bussey and Douglas state that at 6:30 P.M. on June 24, 2002, Defendant Nurse Hersh, accompanied by C.O. Losito, stopped at Plaintiff's cell and while dispensing nighttime medications. Bussey Affidavit ¶ 10; Douglas Affidavit ¶ 10.

**\*11** Because Plaintiff has failed to establish the objective prong for his deliberate indifference claim as to either the April 26 or June 4, 2002 incident, the court need not address whether Plaintiff can establish the subjective prong as to either incident. Summary judgment as to Plaintiff's claim that Defendants acted with deliberate indifference to his serious medical needs is GRANTED as to Defendants.

**C. Conditions of Confinement**

Defendants argue in support of summary judgment that the alleged unsanitary conditions of the cell to which Plaintiff was transferred on June 4, 2002, even if true, are insufficient to support Plaintiff's claims that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment. Defendants' Memorandum at 13-15. Nor does Defendant Murphy's failure to serve Plaintiff lunch one day constitute any Eighth Amendment claim. *Id* . at 15-17. In opposition to summary judgment, Plaintiff submits the Bussey and Douglas Affidavits in which Southport inmates Bussey and Douglas corroborate Plaintiff's assertions that Plaintiff, upon being placed in a different cell on June 4, 2002, complained of the living conditions in the cell, or the fact that he was not served lunch, and that although Defendant Murphy dropped two of Plaintiff's books into Plaintiff's cell, Plaintiff's request for the rest of his personal belongings were ignored. Bussey Affidavit ¶¶ 3-6; Douglas Affidavit ¶¶ 3-6.

To establish an Eighth Amendment violation based on prison conditions, a plaintiff must demonstrate "that it is contrary to current standards of decency for anyone to be exposed against his will" to the challenged prison conditions. *Helling v. McKinney,* 509 U.S. 25, 35 (1993).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 894218 (W.D.N.Y.)
(Cite as: 2007 WL 894218 (W.D.N.Y.))

An Eighth Amendment claim based on prison conditions must satisfy

> both an objective element-that the prison official's transgression was "sufficiently serious"-and an objective element-that the officials acted, or omitted to act, with a "sufficiently culpable state of mind," *i.e.,* with "deliberate indifference to inmate health or safety."

*Phelps v. Kapnolas,* 308 F.3d 180, 185 (2d Cir.2002) (quoting *Farmer,* 511 U.S. at 834).

As to the objective element, while the Constitution "does not mandate comfortable prisons," *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981), prison inmates may not be denied "the minimal civilized measure of life's necessities." *Id.* at 347. The Supreme Court has held that the Eighth Amendment requires that inmates not be deprived of their "basic human needs-*e.g.,* food, clothing, shelter, medical care, and reasonable safety." *Helling,* 509 U.S. at 32 (internal citation and quotation omitted). "Nor may prison officials expose prisoners to conditions that 'pose an unreasonable risk of serious damage to [their] future health.'" *Phelps,* 308 F.3d at 185 (quoting *Helling,* 509 U.S. at 35). The Eighth Amendment's objective prong requires an inmate "prove that the conditions of his confinement violate contemporary standards of decency." *Id.*

**12** As to the subjective element, the Supreme Court has held that

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

*Farmer,* 511 U.S. at 837.

The "deliberate indifference" element is equivalent to criminal law's reckless indifference standard. *Id.* at 839-40.

In the instant case, Plaintiff's Eighth Amendment claim fails to satisfy the objective element necessary to state a claim based on prison conditions. Although Plaintiff claims the cell to which he was moved on June 4, 2002 was dirty, the mattress was wet, no bedding was provided, the cell sink's cold water did not work, while the hot water continually ran, and Plaintiff missed receiving one meal, the amount of time for which Plaintiff endured such conditions, less than one full day, renders the claim without merit. *See Hutto v. Finney,* 437 U.S. 678, 687 (1978) ("the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards. A filthy, overcrowded cell and a diet of 'grue' *[sic]* might be tolerable for a few days and intolerably cruel for weeks and months."). As such, Defendant's motion for summary judgment is GRANTED as to Plaintiff's claim challenging the conditions of his confinement based on the June 4, 2002 incident.

**3. Deprivation of Property**

Although not asserted as such, Plaintiff's claim that upon being transferred to a different cell on June 4, 2002, Defendants failed to give Plaintiff his personal property is properly construed under the Fourteenth Amendment as asserting a deprivation of property without due process. Nevertheless, no claim under 42 U.S.C. § 1983 lies based on the negligent conduct of a state actor even though such conduct may result in deprivation of a property interest. *Daniels v. Williams,* 474 U.S. 327, 330-31 (1986). Further, even intentional, unauthorized deprivations of property by prison officials are not redressable pursuant to 42 U.S.C. § 1983 if "adequate state post-deprivation remedies are available." *Hudson v. Palmer,* 468 U.S. 517, 533 (1984). In New York, several adequate post-deprivation remedies are available such that even if Defendants either negligently or intentionally failed to provide Plaintiff with his personal property, no claim for relief under § 1983 lies.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 894218 (W.D.N.Y.)
(Cite as: 2007 WL 894218 (W.D.N.Y.))

Specifically, an administrative procedure for inmate personal property claims is provided by N.Y. Comp.Codes R. & Regs. Tit. 7, Pt. 1700. Plaintiff may also commence an action to recover the value of his lost property in New York Court of Claims. *See Butler v. Castro,* 896 F.2d 698, 700 (2d Cir.1990)(holding that New York court of claims presents adequate post-deprivation remedy which precludes § 1983 action only where alleged deprivation was result of random, unauthorized conduct rather than the result of operation of established state procedure). Plaintiff alleges no state policy caused the alleged interference with his property. As such, Plaintiff may not sue under § 1983 to recover for deprivation of personal property. *Hudson,* 468 U.S. at 533.

**\*13** Summary judgment is thus GRANTED in favor of Defendants on Plaintiff's Fourteenth Amendment Due Process claim based on the June 4, 2002 incident.

**4. Qualified Immunity**

Alternatively, Defendants assert they are entitled to qualified immunity on all claims for damages. Defendants' Memorandum at 19-21. Plaintiff has not responded to this argument. Because the court is granting summary judgment on Plaintiff's claims alleging deliberate indifference to his serious medical needs and challenging the conditions of his confinement, as well as on Plaintiff's Fourteenth Amendment due process claim, the court addresses qualified immunity only as to Plaintiff's excessive force claim.

Qualified immunity shields law enforcement officials who perform discretionary functions from liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable prison official would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 806 (1982); *Washington Square Post No. 1212 v. Maduro,* 907 F.2d 1288, 1291 (2d Cir.1990). Even if the right at issue was clearly established, if it was objectively reasonable for the defendant to believe that his act did not violate the plaintiff's constitutional rights, the defendant may nevertheless be entitled to qualified immunity. *Saucier v. Katz,* 533 U.S.194, 201-02 (2001); *Anderson v. Creighton,* 483 U .S. 635, 641 (1987); *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 568-69 (2d Cir.1996); *Van*

*Emrik v. Chemung County Dep't of Soc. Servs.,* 911 F.2d 863, 865-66 (2d Cir.1990); *Robison v. Via,* 821 F.2d 913, 920-21 (2d Cir.1987). "The availability of the defense depends on whether a reasonable officer could have believed his action to be lawful, in light of clearly established law and the information he possessed." *Weyant v. Okst,* 101 F.3d 845, 858 (2d Cir.1996) (internal quotation marks omitted).

A right is clearly established if (1) it was defined with reasonable specificity, (2) its existence has been affirmed by either the Supreme Court or the relevant court of appeals, and (3) a reasonable defendant official would have understood under the existing law that his acts were unlawful. *Brown v. City of Oneonta, N.Y. Police Dep't,* 106 F.3d 1125, 1131 (2d Cir.1997). If, however, it was objectively reasonable for the defendant to believe that his act did not violate the plaintiff's constitutional rights, the defendant may be entitled to qualified immunity. *Robison,* 821 F.2d at 920-21.

A defendant is entitled to summary judgment based on qualified immunity if the court finds that the asserted rights were not clearly established, or "if the defendant adduces[s] sufficient facts [such] that no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to the plaintiff ... could conclude that it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not violate a federally protected right." *Robison,* 821 F.2d at 921 (internal quotation omitted). Stated another way, a defendant is entitled to qualified immunity under the objectively reasonable standard if "officers of reasonable competence could disagree" on the legality of the defendant's actions. *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995).

**\*14** Where, however, the objective reasonableness of an officer's actions depends on disputed facts, summary judgment based on qualified immunity is properly denied. *Rivera v. United States,* 928 F.2d 592, 607 (2d Cir.1991); *Brawer v. Carter,* 937 F.Supp. 1071, 1082 (S.D.N.Y.1996). Provided that no factual issues are disputed, the application of qualified immunity to the facts is a question of law for the court to decide. *Finnegan v. Fountain,* 915 F.2d 817, 821 (2d Cir.1990). Accordingly, as to Plaintiff's excessive force claim, the court must

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 894218 (W.D.N.Y.)
(Cite as: 2007 WL 894218 (W.D.N.Y.))

evaluate whether Defendants' actions, in light of clearly established law in existence as of April 26, 2002, violated Plaintiff's civil rights.

Prison inmates have a clearly established right to be free from the application of excessive force by prison employees. *Hudson,* 503 U.S. at 7. However, a prisoner does not have a clearly established right to be free from the use of force by corrections officers attempting to subdue the prisoner with regard to a physical altercation and whether Defendants' conduct violated a clearly established right is not dependent on whether identical conduct has been previously held to violate a prisoner's constitutional rights. *See Hope v. Pelzer,* 536 U.S. 730, 740-41 (2002) (for purposes of qualified immunity, notice that a corrections officer's conduct violates established law does not require facts of previous cases be materially or fundamentally similar to situation in question, but that state of law at relevant time provides fair warning that conduct is unconstitutional).

Here, the same disputed issues of fact that preclude summary judgment on Plaintiff's excessive force claim also prevent the court from finding Defendants are qualifiedly immune from liability on such claim. Accordingly, determination of Defendants' qualified immunity defense must await a fact trier's resolution of the questions of fact presented. Summary judgment based on qualified immunity is DENIED.

## CONCLUSION

Based on the foregoing, Defendants' motion for summary judgment (Doc. No. 58) is DENIED in part and GRANTED in part. The action will proceed only on Plaintiff's Eighth Amendment excessive force claim asserted against Defendants Sgt. Furman, Bly, Carpenter and Lanasa based on the April 26, 2002 incident. The parties are directed to appear before the court on **April 18, 2007** at 10:30 A .M. to schedule a trial date. Defendants are directed to make arrangements for Plaintiff to participate in the conference by telephone.

SO ORDERED.

W.D.N.Y.,2007.
Jones v. Furman
Not Reported in F.Supp.2d, 2007 WL 894218 (W.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2005 WL 2125874 (S.D.N.Y.)
(Cite as: 2005 WL 2125874 (S.D.N.Y.))

**H**
Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Jamal KEARSEY, Plaintiff,
v.
Adeyemi WILLIAMS, Defendant.
**No. 99 Civ. 8646 DAB.**

Sept. 1, 2005.

*MEMORANDUM & ORDER*

BATTS, J.

**\*1** Plaintiff Jamal Kearsey, proceeding *pro se,* has filed the above-captioned case against Defendant Dr. Adeyemi Williams ("Dr.Williams") pursuant to 42 U.S.C. § 1983 alleging that Dr. Williams violated Plaintiff's Eighth Amendment rights by being deliberately indifferent to Plaintiff's serious medical needs. Defendant has moved to dismiss the Complaint for failure to exhaust administrative remedies, for failure to state a claim, and because Defendant is shielded by qualified immunity.[FN1] For the reasons stated herein, Defendant's Motion to Dismiss is DENIED.

> FN1. This Court granted Defendant's Motion to Dismiss for failure to exhaust administrative remedies in its June 6, 2002 Order but vacated that Order on September 20, 2004 upon Plaintiff's motion pursuant to Fed.R.Civ.P. 60(b). *See Kearsey v. Williams,* No. 99 Civ. 8646, 2004 WL 2093548 (S.D.N.Y. Sept. 20, 2004).

I. BACKGROUND

In his Complaint, Plaintiff alleges that while he was incarcerated at Rikers Island Correctional Facility ("Rikers"), Defendant, a doctor at Rikers, violated Plaintiff's Eighth Amendment rights by refusing to provide him with an asthma pump when Plaintiff experienced breathing difficulties. Specifically, on April 4, 1999, Plaintiff requested to speak with a doctor because the heat in his cell was aggravating his asthma. (Compl. at 3-4.) When Dr. Williams went to Plaintiff's cell, Plaintiff stated that his chest had "tighten[ed] up" and that he "couldn't breath[e]," and requested that Dr. Williams take him "downstairs" to get an asthma pump. (Id. at 4.) Dr. Williams declined to take Plaintiff downstairs but said that he would send a pump to Plaintiff's cell that evening. (Id.) After a period of time, a corrections officer called Dr. Williams and he also informed him of Plaintiff's medical condition. (Id.) Dr. Williams told the officer that he would bring the asthma pump. (Id.) Plaintiff alleges that Dr. Williams forgot to bring the pump. (Id.)

Plaintiff complained for a third time to Dr. Williams of his inability to breathe and stated that he was experiencing chest pain. (Id.) Once again, Dr. Williams responded by promising to send an asthma pump that evening. (Id.) Plaintiff subsequently asked for Defendant's name, to which Dr. Williams allegedly responded, "I won't send you anything now!" (Id.) Dr. Williams then handed Plaintiff a note with his name. (Id. at 5.) No pump was given to Plaintiff. Shortly after Dr. Williams left, Plaintiff borrowed an asthma pump from a fellow minute, although that pump was different from the one Plaintiff was used to. (Id.) Plaintiff complained of chest pains and breathing difficulties for the rest of the day. (Id.) On April 6, 1999, Plaintiff was having blood work done and spoke with a nurse about his medical condition. (Id.) The nurse ordered an emergency pump that arrived later in the day. (Id.)

On June 24, 1999, Plaintiff filed a Complaint pursuant to 42 U.S.C. § 1983 alleging that Defendant exhibited deliberate indifference to his serious medical needs in violation of Plaintiff's Eighth Amendment rights. Defendant has filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Plaintiff failed to exhaust administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997(e), and, in particular, the exhaustion

Not Reported in F.Supp.2d, 2005 WL 2125874 (S.D.N.Y.)
(Cite as: 2005 WL 2125874 (S.D.N.Y.))

procedure established by N.Y. Comp.Codes R & Regs., tit. 7, § 701.7, that Plaintiff failed to state a cause of action for which relief can be granted, and that Defendant is shielded from liability based on the doctrine of qualified immunity. (Def.'s Mem. Law at 1, 3, 20.) On June 6, 2002, this Court issued an Order granting Defendant's Motion to Dismiss on the ground that Plaintiff failed to comply with the grievance procedures established by N.Y. Comp.Codes R & Regs., tit. 7, § 701.7. Kearsey v. Williams, No. 99 Civ. 8646, 2002 WL 1268014, at *2 (S.D.N.Y. June 6, 2002).

*2 Plaintiff filed a Motion for Relief from Judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.[FN2] Plaintiff argued that the Court had erred in holding that he was required to exhaust the grievance procedures established by N.Y. Comp.Codes R & Regs., tit. 7, § 701.7, because those procedures are required only of inmates at state-run facilities, whereas Rikers, as a municipally-run facility, has different grievance procedures. Kearsey, No. 99 Civ. 8646, 2004 WL 2093548, at *2 (S.D.N.Y. Sept. 20, 2004). In its September 20, 2004 Order, the Court vacated its dismissal Order, finding Plaintiff was not required to exhaust the grievance procedures established by N.Y. Comp.Codes R & Regs., tit. 7, § 701.7. Id. at *4.

> FN2. Plaintiff was represented by counsel when he filed the 60(b) Motion.

Because the Court's June 6, 2002 Order did not reach the additional grounds in Defendant's Motion to Dismiss, the remaining motions were *sub judice*. In this Order, the Court considers Defendant's remaining arguments: that Plaintiff has failed to state a cause of action and that Defendant is entitled to qualified immunity.

## II. DISCUSSION

### A. Rule 12(b)(6) Standard

In a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court "must accept as true the factual allegations in the complaint, and draw

all reasonable inferences in favor of the plaintiff." Bolt Elec., Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir.1995) (citations omitted). "The district court should grant such a motion only if, after viewing [the] plaintiff's allegations in this favorable light, it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." Harris v. City of New York, 186 F.3d 243, 247 (2d Cir.1999). A court's review of such a motion is limited and "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Burnheim v. Litt, 79 F.3d 318, 321 (2d Cir.1996). In fact, it may appear to the court that "a recovery is very remote and unlikely but that is not the test." Branham v. Meachum, 72 F.3d 626, 628 (2d Cir.1996).

These liberal pleading standards "appl[y] with particular force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*." Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir.1998). It is well-settled that *pro se* complaints are held "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 521 (1972).

### B. Eighth Amendment

Defendant moves to dismiss the Complaint on the grounds that Plaintiff has failed to state a cause of action under 42 U.S.C. § 1983.

1. Standard for § 1983 deliberate indifference claim

Section 1983 of Title 42, United States Code, enables a plaintiff to bring a cause of action against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Thus, a plaintiff bringing a § 1983 action must demonstrate that "the conduct complained of was committed by a person acting under color of state law ... [and that] this conduct deprived a person of rights ... secured by the Constitution or laws of the United States."

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2125874 (S.D.N.Y.)
(Cite as: 2005 WL 2125874 (S.D.N.Y.))

*Greenwich Citizens Committee, Inc. v. Counties of Warren and Washington Indus. Development Agency,* 77 F.3d 26, 29-30 (2d Cir.1996) (quoting *Parratt v. Taylor,* 451 U.S. 527, 535 (1981)) (internal quotations omitted). Section 1983 is not in itself "a source of substantive rights," but instead "provides a method for vindicating federal rights elsewhere conferred." *Patterson v. County of Oneida, N.Y.,* 375 F.3d 206, 225 (2d Cir.2004) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n. 3 (1979)).

**\*3** One such source of federal rights is the Eighth Amendment of the Constitution, which states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. In *Estelle v. Gamble,* the Supreme Court held that prison employees' "deliberate indifference [to an inmate's] serious medical needs" violates the inmate's Eighth Amendment rights and is actionable under § 1983. *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976). A plaintiff pursuing a § 1983 claim for deliberate indifference to serious medical needs must meet a two-prong standard by demonstrating a serious medical need (the objective prong) and by showing that the defendant employee possessed the requisite culpable mental state (the subjective prong). *See Farmer v. Brennan,* 511 U.S. 825, 837 (1994); *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996).

2. Serious medical need

The objective prong of the deliberate indifference standard requires a showing of a "sufficiently serious" medical need. *Hathaway,* 99 F.3d at 553 (internal quotations and citations omitted). While "it is a far easier task to identify a few exemplars of conditions so plainly trivial and insignificant as to be outside the domain of Eighth Amendment concern than it is to articulate a workable standard for determining 'seriousness' at the pleading stage," several factors are helpful in determining the seriousness of a medical condition. *Chance,* 143 F.3d at 702-03 (quoting *Gutierrez v. Peters,* 111 F.3d 1364, 1372 (7th Cir.1997)).

A serious medical need is generally characterized by "a condition of urgency that may result in degeneration or extreme pain" or "the unnecessary and wanton infliction

of pain." *Chance,* 143 F.3d at 702 (citation omitted). Whether "a reasonable doctor or patient would find [the condition] important and worthy of comment or treatment" reflects on the seriousness of the medical need, as does the effect of the condition on the inmate's "daily activities" and the extent to which the condition causes "chronic and substantial pain." *Id.* (citation omitted). The refusal to treat a patient suffering from what ordinarily would not be considered a serious medical condition also raises Eighth Amendment concerns if the condition is easily treatable and degenerative. *See Harrison v. Barkley,* 219 F.3d 132, 136 (2d Cir.2000) (holding that "the refusal to treat an inmate's tooth cavity unless the inmate consents to extraction of another diseased tooth constitutes a violation of the Eighth Amendment"). The constitutional implications of a decision not to treat an inmate's medical condition depend on the specific facts of the case-"a prisoner with a hang-nail has no constitutional right to treatment, but ... prison officials [who] deliberately ignore an infected gash ... might well violate the Eighth Amendment." *Id.* at 137-37 (internal quotations and citations omitted).

**\*4** While the failure to treat an inmate's generalized asthmatic condition may not implicate the Eighth Amendment, "an actual asthma attack, depending on the severity, may be a serious medical condition." *Scott v. DelSignore,* No. 02 Civ. 029F, 2005 WL 425473, at \*9 (W.D.N.Y. Feb. 18, 2005); *see also Patterson v. Lilley,* No. 02 Civ. 6056, 2003 WL 21507345, at \*3-4 (S.D.N.Y. June 30, 2003). Indeed, "it is common knowledge that a respiratory ailment, such as asthma, can be serious and life-threatening." *Whitley v. Westchester County,* No. 97 Civ. 0420, 1997 WL 659100, at \*4 (S.D.N.Y. Oct. 22, 1997). An acute asthma attack is arguably a "condition of urgency" that may cause "substantial pain" and that "reasonable doctor[s] or patient[s] would find important and worthy of comment or treatment." *Chance,* 143 F.3d at 702 (citation omitted); *see Whitley,* No. 97 Civ. 0420(SS), 1997 WL 659100, at \*4.

Plaintiff has alleged that on three separate occasions, he informed Defendant that he was unable to breathe. (Compl. at 4-5.) He also complained that his chest had "tighten[ed] up," and, later, that he was experiencing "chest pains." (Id.) Plaintiff resorted to using a fellow inmate's inhaler when Defendant refused to provide him with one, which suggests the seriousness of his need. (Id.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2125874 (S.D.N.Y.)
(Cite as: 2005 WL 2125874 (S.D.N.Y.))

at 5.) Moreover, by alleging in his Complaint that his asthma "started to act up," Plaintiff describes a time-specific incident more in line with an asthma attack than with a generalized asthmatic condition. (Id. at 4.)

Defendant cites *Reyes v. Corrections Officer Bay,* No. 97 Civ. 6419, 1999 WL 681490 (S.D.N.Y. Sept. 1, 1999), as a case similar to this one where the court found that the plaintiff did not allege a sufficiently serious medical condition. However, unlike the plaintiff in *Reyes,* who went ahead with his scheduled visit with his family after complaining of an asthma attack, Plaintiff continued to complain to officers of his condition. Plaintiff resorted to self-medication, by borrowing an asthma pump from a fellow inmate in order to alleviate his condition. In light of these facts, it can hardly be said that Plaintiff was merely suffering from "discomfort."

Accordingly, the Court finds that in his Complaint, Plaintiff alleges facts that he experienced an asthma attack, serious enough to constitute a sufficiently serious medical need for purposes of an Eighth Amendment claim.

3. Deliberate indifference

To satisfy the subjective prong of the deliberate indifference standard, Plaintiff must prove that the prison official was aware of, and consciously disregarded, the prisoner's medical condition. *Chance,* 143 F.3d at 703; *see also Farmer,* 511 U.S. at 837. The prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Chance,* 143 F.3d at 702 (quoting *Farmer,* 511 U.S. at 837). While purposefully refusing to treat a serious medical condition constitutes deliberate indifference, it need not be the official's purpose to harm the inmate; "a state of mind that is the equivalent of criminal recklessness" is sufficient. *Hathaway,* 37 F.3d at 553.

**\*5** A physician's mere negligence in treating or failing to treat a prisoner's medical condition does not implicate the Eighth Amendment and is not properly the subject of a § 1983 action. *Estelle,* 429 U.S. at 105-06; *Chance,* 143 F.3d at 703. "Medical malpractice does not become a

constitutional violation merely because the victim is a prisoner." *Estelle,* 429 U.S. at 106. Thus, a physician who "delay[s] ... treatment based on a bad diagnosis or erroneous calculus of risks and costs" does not exhibit the mental state necessary for deliberate indifference. *Harrison,* 219 F.3d at 139. Likewise, an inmate who disagrees with the physician over the appropriate course of treatment has no claim under § 1983 if the treatment provided is "adequate." *Chance,* 143 F.3d at 703. However, if prison officials consciously delay or otherwise fail to treat an inmate's serious medical condition "as punishment or for other invalid reasons," such conduct constitutes deliberate indifference. *Harrison,* 219 F.3d at 138.

In the instant case, Plaintiff informed Defendant on a number of occasions that he was unable to breathe and that he was experiencing chest pains. (Compl. at 4.) While Defendant's initial decision not to take Plaintiff downstairs for immediate treatment is the sort of prisoner-physician dispute regarding the particularities of medical care that is outside the scope of the Eighth Amendment, the unmistakable inference to be drawn from Plaintiff's allegation that Defendant refused to provide an asthma pump when Plaintiff asked for Defendant's name is that Defendant withheld medical care as retaliation or punishment for Plaintiff's conduct. (Id.) Because consciously delaying treatment in order to punish or retaliate against an inmate meets the subjective standard for deliberate indifference, the Court finds that the Complaint adequately alleges that Defendant acted with the requisite culpable mental state in refusing to treat Plaintiff's asthma attack.

C. Qualified Immunity

Defendant's final argument for dismissal is that, as a government official, Dr. Williams is entitled to qualified immunity.

At the outset, the Court notes that while a defendant may assert a qualified immunity defense on a Rule 12(b)(6) motion, "that defense faces a formidable hurdle when advanced on such a motion." *McKenna v. Wright,* 386 F.3d 432, 434 (2d Cir.2004). This is because "[n]ot only must the facts supporting the defense appear on the face of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2125874 (S.D.N.Y.)
(Cite as: 2005 WL 2125874 (S.D.N.Y.))

the complaint, but, as with all Rule 12(b)(6) motions, the motion may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Id.* (internal quotations and citations omitted). The plaintiff thus benefits from all reasonable inferences against the defendant's qualified immunity defense on a Rule 12(b)(6) motion. *Id.*

The defense of qualified immunity protects public officers, including prison physicians, from civil actions related to their conduct while they are acting in an official capacity so long as they do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Ford v. McGinnis,* 352 F.3d 582, 596 (2d Cir.2003). Such a defense "serves important interests in our political system. It protects government officials from liability they might otherwise incur due to unforeseeable changes in the law governing their conduct." *Sound Aircraft Services, Inc. v. Town of East,* 192 F.3d 329, 334 (2d Cir.1999). Qualified immunity also serves the important public interest of "protecting public officials from the costs associated with the defense of damages action ... [including] the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from accepting public positions." *Crawford-El v. Britton,* 523 U.S. 574, 590 at fn. 12 (1998).

**\*6** Qualified immunity shields a defendant from liability "if either (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Johnson v. Newburgh Englarged Sch. Dist.,* 293 F.3d 246, 250 (2d Cir.2001); *Brosseau v. Haugen,* 125 S.Ct. 596, 599 (2004) ("Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted"); *see also Harlow,* 457 U.S. at 818-19.

"[A] court evaluating a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne,* 526 U.S. 603, 609 (1999); *see also Ying Jing Gan*

*v. City of New York,* 996 F.2d 522, 532 (2d Cir.1993). Determining the constitutional question first serves two purposes: it spares the defendant of unwarranted demands and liability "customarily imposed upon those defending a long drawn-out lawsuit" and determining the constitutional question first "promotes clarity in the legal standards for official conduct, for the benefit of both the officers and the general public ." *Id.*

If a deprivation of a constitutional right has been alleged, a court must determine whether the constitutional right was clearly established by determining: (1) if the law was defined with reasonable clarity, (2) if the Supreme Court or the law of the Second Circuit affirmed the rule, and (3) whether a reasonable defendant would have understood from existing law that the conduct was lawful. *See Young v. County of Fulton,* 160 F.3d 899, 903 (2d Cir.1998). "[T]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 634, 640 (1987).

As the Supreme Court made clear in *Saucier,* determining whether the right in question was clearly established requires particularized, case-specific analysis. *Id.* at 201-02. The case-specific nature of the inquiry does not mean that official conduct is protected by qualified immunity whenever "courts had not agreed on one verbal formulation of the controlling standard." *Id* . at 202-03. A "general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct" even if courts have not ruled on the constitutionality of the specific act in question, and previously decided cases with comparable but not identical facts influence the clarity of the right in question. *Hope v. Pelzer,* 536 U.S. 730 at 741 (2002) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)). The fundamental question is whether "the state of the law" at the time of the alleged violation gave the defendant "fair warning" that his conduct was unconstitutional. *Id.*

**\*7** Even if the right is clearly established, "defendants may nonetheless establish immunity by showing that reasonable persons in their position would not have understood that their conduct was within the scope of the established protection." *LaBounty v. Coughlin,* 137 F.3d 68, 73 (2d Cir.1998). "[R]easonableness is judged against the

Not Reported in F.Supp.2d, 2005 WL 2125874 (S.D.N.Y.)
(Cite as: 2005 WL 2125874 (S.D.N.Y.))

backdrop of the law at the time of the conduct.... [T]his inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau,* 125 S.Ct. at 599.

In the present matter, the Court has already determined that Plaintiff's allegations, taken as true, indicate that Defendant violated Plaintiff's Eighth Amendment rights by refusing to treat Plaintiff's asthma attack in retaliation for Plaintiff's request for Defendant's name. *See supra* at 10-13.

With regard to whether the right allegedly violated was clearly established at the time of the violation, neither the Supreme Court nor the Second Circuit has held that an asthma attack constitutes a serious medical condition for purposes of a deliberate indifference claim. In considering whether Defendant nonetheless had fair warning of the unconstitutionality of the conduct he is alleged to have engaged in, the Court notes that the Second Circuit has repeatedly held as unlawful denials of treatment that "cause or perpetuate pain" falling short of torture and not resulting in death. *Brock v. Wright,* 315 F.3d 158, 163 (2d Cir.2003). Among the conditions the Second Circuit has deemed serious for Eighth Amendment purposes are a tooth cavity, *Harrison,* 219 F.3d at 137; a degenerative hip condition, *Hathaway,* 99 F.3d 550, 551-52; a painful tissue growth, *Brock,* 315 F.3d at 161; a ruptured Achilles tendon that caused pain and swelling, *Hemmings v. Gorczyk,* 134 F.3d 104, 106-07 (2d Cir.1998); and an eye condition that led to blindness in one eye, *Koehl v. Dalsheim,* 85 F.3d 86, 87 (2d Cir.1996). These various conditions, held to be sufficiently serious, are not life-threatening, although they are painful. An asthma attack, however, can be both painful and fatal. Given the state of the law in the Second Circuit, Defendant had ample warning that the law prohibits a prison doctor from consciously withholding medical care from an inmate with a painful and potentially fatal medical condition.

The Court finds that at this early stage of litigation, Defendant has not shown that he is entitled to qualified immunity.

III. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is DENIED.

Defendant shall file an Answer to the Complaint within thirty (30) days of this Order.

SO ORDERED.

S.D.N.Y.,2005.
Kearsey v. Williams
Not Reported in F.Supp.2d, 2005 WL 2125874 (S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2002 WL 31309244 (N.D.N.Y.)
(Cite as: 2002 WL 31309244 (N.D.N.Y.))

**C**

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Karus LAFAVE, Plaintiff,
v.
CLINTON COUNTY, Defendants.
**No. CIV.9:00CV0744DNHGLS.**

April 3, 2002.

Karus Lafave, Plaintiff, Pro Se, Plattsburgh, for the
Plaintiff.

Maynard, O'Connor Law Firm, Albany, Edwin J. Tobin,
Jr., Esq., for the Defendants.

REPORT-RECOMMENDATION [FN1]

FN1. This matter was referred to the undersigned
for Report-Recommendation by the Hon. David
N. Hurd, United States District Judge, pursuant
to 28 U.S.C. § 636(b)(1)(B) and L.R. 72.3(c).

SHARPE, Magistrate J.

I. INTRODUCTION

**\*1** Plaintiff, *pro se,* Karus LaFave ("LaFave") originally
filed this action in Clinton County Supreme Court. The
defendant filed a Notice of Removal because the
complaint presented a federal question concerning a
violation of LaFave's Eighth Amendment rights (Dkt. No.
1). Currently before the court is the defendant's motion to
dismiss made pursuant to Rule 12(b)(6) and in the
alternative, pursuant to Rule 56(b) of the Federal Rules of
Civil Procedure (Dkt. No. 5). LaFave, in response, is
requesting that the court deny the motion, excuse his

inability to timely file several motions, and to permit the
matter to be bought before a jury [FN2]. After reviewing
LaFave's claims and for the reasons set forth below, the
defendant's converted motion for summary judgment
should be granted.

FN2. It should be noted that the date for
dispositive motions was February 16, 2001. The
defendant's motion to dismiss was filed on
September 29, 2000. On January 9, 2001, this
court converted the defendant's motion to dismiss
to a motion for summary judgment, and gave
LaFave a month to respond. On April 16, 2001,
after three months and four extensions, LaFave
finally responded.

II. BACKGROUND

LaFave brings this action under 42 U.S.C. § 1983
claiming that the defendant violated his civil rights under
the Eighth Amendment [FN3]. He alleges that the defendant
failed to provide adequate medical and dental care causing
three different teeth to be extracted.

FN3. LaFave does not specifically state that the
defendant violated his Eighth Amendment rights
but this conclusion is appropriate after reviewing
the complaint.

III. FACTS [FN4]

FN4. While the defendant provided the court
with a "statement of material facts not in issue"
and LaFave provided the court with "statement
of material facts genuine in issue," neither
provided the court with the exact nature of the
facts.

Between January and July of 1999, LaFave, on several
occasions, requested dental treatment because he was
experiencing severe pain with three of his teeth. After

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31309244 (N.D.N.Y.)
(Cite as: 2002 WL 31309244 (N.D.N.Y.))

being seen on several occasions by a Clinton County Correctional Facility ("Clinton") doctor, he was referred to a dentist. Initially, LaFave's mother had made an appointment for him to see a dentist, but he alleges that Nurse LaBarge ("LaBarge") did not permit him to be released to the dentist's office [FN5]. Subsequently, he was seen by Dr. Boule, D.D.S ., on two occasions for dental examinations and tooth extractions.

FN5. This appears to be in dispute because the medical records show that LaFave at first stated that his mother was going to make arrangements, but later requested that the facility provide a dentist.

IV. DISCUSSION

A. *Legal Standard*

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc .,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *accord F.D.I.C. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994). The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once this burden is met, it shifts to the opposing party who, through affidavits or otherwise, must show that there is a material factual issue for trial. Fed.R.Civ.P. 56(e); *see Smythe v. American Red Cross Blood Services Northeastern New York Region,* 797 F.Supp. 147, 151 (N.D.N.Y.1992).

Finally, when considering summary judgment motions, *pro se* parties are held to a less stringent standard than attorneys. *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Haines v. Kerner,* 404 U.S. 519, 520-21, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972). Any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the non-moving party. *Thompson v. Gjivoje,* 896 F.2d 716,

720 (2d Cir.1990). With this standard in mind, the court now turns to the sufficiency of LaFave's claims.

B. *Eighth Amendment Claims*

*2 LaFave alleges that his Eighth Amendment rights were violated when the defendant failed to provide adequate medical care for his dental condition. The Eighth Amendment does not mandate comfortable prisons, yet it does not tolerate inhumane prisons either, and the conditions of an inmate's confinement are subject to examination under the Eighth Amendment. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 1975, 128 L.Ed.2d 811 (1994). Nevertheless, deprivations suffered by inmates as a result of their incarceration only become reprehensible to the Eighth Amendment when they deny the minimal civilized measure of life's necessities. *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991) (*quoting Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)).

Moreover, the Eighth Amendment embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency ..." against which penal measures must be evaluated. See *Estelle v. Gamble,* 429 U.S. 97, 102, 97 S.Ct. 285, 290, 50 L.Ed.2d (1976). Repugnant to the Amendment are punishments hostile to the standards of decency that " 'mark the progress of a maturing society." ' *Id.* (*quoting Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958) (plurality opinion)). Also repugnant to the Amendment, are punishments that involve " 'unnecessary and wanton inflictions of pain." ' *Id.* at 103, 97 S.Ct. at 290 (*quoting Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)).

In light of these elementary principles, a state has a constitutional obligation to provide inmates adequate medical care. See *West v. Atkins,* 487 U.S. 42, 54, 108 S.Ct. 2250, 2258, 101 L.Ed.2d 40 (1988). By virtue of their incarceration, inmates are utterly dependant upon prison authorities to treat their medical ills and are wholly powerless to help themselves if the state languishes in its obligation. See *Estelle,* 429 U.S. at 103, 97 S.Ct. at 290. The essence of an improper medical treatment claim lies

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31309244 (N.D.N.Y.)
(Cite as: 2002 WL 31309244 (N.D.N.Y.))

in proof of "deliberate indifference to serious medical needs." *Id.* at 104, 97 S.Ct. at 291. Deliberate indifference may be manifested by a prison doctor's response to an inmate's needs. *Id.* It may also be shown by a corrections officer denying or delaying an inmate's access to medical care or by intentionally interfering with an inmate's treatment. *Id.* at 104-105, 97 S.Ct. at 291.

The standard of deliberate indifference includes both subjective and objective components. The objective component requires the alleged deprivation to be sufficiently serious, while the subjective component requires the defendant to act with a sufficiently culpable state of mind. *See Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998). A prison official acts with deliberate indifference when he " 'knows of and disregards an excessive risk to inmate health or safety." ' *Id.* (*quoting Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979). However, " 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." ' *Id.*

**\*3** However, an Eighth Amendment claim may be dismissed if there is no evidence that a defendant acted with deliberate indifference to a serious medical need. An inmate does not have a right to the treatment of his choice. *See Murphy v. Grabo,* 1998 WL 166840, at \*4 (N.D.N.Y. April 9, 1998) (*citation omitted* ). Also, mere disagreement with the prescribed course of treatment does not always rise to the level of a constitutional claim. *See Chance,* 143 F.3d at 703. Moreover, prison officials have broad discretion to determine the nature and character of medical treatment which is provided to inmates. *See Murphy,* 1998 WL 166840, at \*4 (*citation omitted* ).

While there is no exact definition of a "serious medical condition" in this circuit, the Second Circuit has indicated what injuries and medical conditions are serious enough to implicate the Eighth Amendment. *See Chance,* 143 F.3d at 702-703. In *Chance,* the Second Circuit held that an inmate complaining of a dental condition stated a serious medical need by showing that he suffered from great pain for six months. The inmate was also unable to chew food and lost several teeth. The Circuit also recognized that dental conditions, along with medical conditions, can vary in severity and may not all be severe. *Id.* at 702. The court acknowledged that while some injuries are not serious

enough to violate a constitutional right, other very similar injuries can violate a constitutional right under different factual circumstances. *Id.*

The Second Circuit provided some of the factors to be considered when determining if a serious medical condition exists. *Id.* at 702-703. The court stated that " '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain" ' are highly relevant. *Id.* at 702-703 (*citation omitted* ). Moreover, when seeking to impose liability on a municipality, as LaFave does in this case, he must show that a municipal "policy" or "custom caused the deprivation." *Wimmer v. Suffolk County Police Dep't,* 176 F.3d 125, 137 (2d Cir.1999).

In this case, the defendant maintains that the medical staff was not deliberately indifferent to his serious medical needs. As a basis for their assertion, they provide LaFave's medical records and an affidavit from Dr. Viqar Qudsi[FN6], M.D, who treated LaFave while he was incarcerated at Clinton. The medical records show that he was repeatedly seen, and prescribed medication for his pain. In addition, the record shows that on various occasions, LaFave refused medication because "he was too lazy" to get out of bed when the nurse with the medication came to his cell (*Def. ['s] Ex. A, P. 4*) .

FN6. Dr. Qudsi is not a party to this action.

According to the documents provided, Dr. Qudsi, examined LaFave on January 13, 1999, after LaFave reported to LaBarge that he had a headache and discomfort in his bottom left molar (*Qudsi Aff., P. 2*). Dr. Qudsi noted that a cavity was present in his left lower molar. *Id.* He prescribed Tylenol as needed for the pain and 500 milligrams ("mg") of erythromycin twice daily to prevent bacteria and infection. *Id.* On January 18, 19, and 20, 1999, the medical records show that LaFave refused his erythromycin medication (*Def. ['s] Ex. B, P. 1*).

**\*4** Between January 20, and April 12, 1999, LaFave made

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31309244 (N.D.N.Y.)
(Cite as: 2002 WL 31309244 (N.D.N.Y.))

no complaints concerning his alleged mouth pain. On April 12, 1999, LaFave was examined by LaBarge due to a complaint of pain in his lower left molar (*Def. ['s] Ex. A, P. 4* ). Dr. Qudsi examined him again on April 14, 1999. *Id.* He noted a cavity with pulp decay and slight swelling with no discharge. *Id.* He noted an abscess in his left lower molar and again prescribed 500 mg erythromycin tablets twice daily and 600 mg Motrin three times daily for ten days with instructions to see the dentist. *Id.* On the same day, LaBarge made an appointment for LaFave to see an outside dentist that provides dental service to facility inmates, Dr. Boule *(Qudsi Aff., P. 3).*

On May 3, 1999, LaBarge was informed by LaFave that his mother would be making a dental appointment with their own dentist and that the family would pay for the treatment (*Def. ['s] Ex. A, P. 4* ). On that same day, Superintendent Major Smith authorized an outside dental visit. *Id.* On May 12, 1999, he was seen by LaBarge for an unrelated injury and he complained about his lower left molar (*Def .['s] Ex. A, P. 5* ). At that time, LaFave requested that LaBarge schedule a new appointment with Dr. Boule because the family had changed their mind about paying an outside dentist. *Id.* LaBarge noted that he was eating candy and informed him of the deleterious effects of candy on his dental condition. *Id.* Thereafter, LaBarge scheduled him for the next available date which was June 24, 1999, at noon. *Id.*

On June 2, 1999, LaFave again requested sick call complaining for the first time about tooth pain in his upper right molar and his other lower left molar (*Def. ['s] Ex. A, P. 6* ). He claimed that both molars caused him discomfort and bothered him most at night. *Id.* LaFave confirmed that he had received treatment from Dr. Boule for his first lower left molar one week before. *Id.* The area of his prior extraction was clean and dry. *Id.* There was no abscess, infection, swelling, drainage or foul odor noted. *Id.* LaBarge recommended Tylenol as needed for any further tooth discomfort. *Id.*

On June 21, 1999, LaFave again requested a sick call and was seen by LaBarge (*Def. ['s] Ex. A, P. 6* ). No swelling, drainage or infection was observed. *Id.* However, LaBarge noted cavities in LaFave's lower left molar and right lower molars. *Id.* LaBarge made arrangements for Dr. Qudsi to further assess LaFave. *Id.* On June 23, 1999, Dr. Qudsi

examined his right lower molar and noted cavitation with decay in that area (*Def. ['s] Ex. A, P. 7* ). In addition, he noted that LaFave had a cavity in his second left lower molar. *Id.* He prescribed 500 mg of erythromycin twice daily for 10 days and 600 mg of Motrin three times daily for 10 days, with instructions to see a dentist. *Id.*

On June 30, 1999, Officer Carroll reported that LaFave was again non-compliant with his medication regimen as he refused to get up to receive his medication (*Def. ['s] Ex. A, P. 8* ). On July 7, 1999, he again requested sick call complaining of a toothache in his lower right molar (*Def. ['s] Ex. A, P. 9* ). Again, LaFave was non-compliant as he had only taken his erythromycin for five days instead of the ten days prescribed. *Id.* During the examination, Dr. Qudsi informed LaFave that extraction of these teeth could be necessary if he did not respond to conservative treatment. *Id.* At that time, LaFave informed Dr. Qudsi that he was going to be transferred to another facility. *Id.* Dr. Qudsi advised LaFave to follow-up with a dentist when he arrived at the new facility. *Id.* Dr. Qudsi prescribed 500 mg Naproxin twice daily for thirty days with instructions to follow-up with him in two weeks if the pain increased. *Id.* The following day, LaFave requested sick call complaining to LaBarge that he had taken one dose of Naproxin and it was not relieving the pain. *Id.* He was advised that he needed to take more than one dose to allow the Naproxin to take effect. *Id.*

**\*5** On July 17, 1999, LaFave was again seen by Dr. Qudsi and he indicated that he did not believe he was benefitting from the prescribed course of conservative treatment with medication (*Def. ['s] Ex. A, P. 10* ). Subsequently, LaBarge made a dental appointment for him on July 23 FN7, 1999, at 3:15 p.m. *Id.* On July 23, 1999, a second extraction was conducted. *Id.* On July 28, 1999, he was again seen by Dr. Qudsi, for an ulceration at the left angle of his mouth for which he prescribed bacitracin ointment. *Id.* At this time, LaFave continued to complain of tooth pain so he was prescribed 600 mg of Motrin three times daily. *Id.*

FN7. The medical records contain an error on the July 17, 1999, note which indicted that an appointment was set for June 23, 1999, however, it should have been recorded as July 23, 1999.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31309244 (N.D.N.Y.)
(Cite as: 2002 WL 31309244 (N.D.N.Y.))

On August 4, 1999, he was seen for feeling a sharp piece of bone residing in the area of his lower left molar (*Def. ['s] Ex. A, P. 11* ). Dr. Qudsi recommended observation and to follow-up with dental care if his condition continued. *Id.* The defendant maintains that given all of the documentation that he was seen when he requested to be seen and prescribed numerous medications, the medical staff was not deliberately indifferent to his serious medical needs. The defendant contends that at all times, professional and contentious dental and medical treatment were provided in regards to his various complaints.

In his response, LaFave disagrees alleging that the county had a custom or policy not to provide medical treatment to prisoners. However, LaFave does not allege in his complaint that the county had a "custom or policy" which deprived him of a right to adequate medical or dental care. In his response to the motion for summary judgment, for the first time, LaFave alleges that the county had a policy which deprived him of his rights. He maintains that his continued complaints of pain were ignored and although he was prescribed medication, it simply did not relieve his severe pain.

This court finds that the defendant was not deliberately indifferent to his serious dental and medical needs. Moreover, even if this court construed his complaint to state a viable claim against the county, LaFave has failed to show that the county provided inadequate medical and dental treatment. As previously stated, an inmate does not have the right to the treatment of his choice. The record shows that he was seen numerous times, and referred to a dentist on two occasions over a six month period. While LaFave argues that the dental appointments were untimely, the record shows that the initial delay occurred because he claimed that his mother was going to make the appointment but later changed her mind. In addition, the record demonstrates that he did not adhere to the prescribed medication regime. On various occasions, LaFave failed to get out of bed to obtain his medication in order to prevent infection in his mouth. Although it is apparent that LaFave disagreed with the treatment provided by Clinton, the record does not show that the defendant was deliberately indifferent to his serious medical needs. Accordingly, this court recommends that the defendant's motion for summary judgment should be granted.

*6 WHEREFORE, for the foregoing reasons, it is hereby

RECOMMENDED, that the defendant's motion for summary judgment (Dkt. No. 5) be GRANTED in favor of the defendant in all respects; and it is further

ORDERED, that the Clerk of the Court serve a copy of this Report-Recommendation upon the parties by regular mail.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court within TEN days. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2002.
Lafave v. Clinton County
Not Reported in F.Supp.2d, 2002 WL 31309244 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2004 WL 2202645 (W.D.N.Y.)
(Cite as: 2004 WL 2202645 (W.D.N.Y.))

**C**

Only the Westlaw citation is currently available.

United States District Court,
W.D. New York.
Frank G. MOWRY, Plaintiff(s),
v.
Robert F. NOONE, In his Individual and Official
Capacity and Douglas Dickenson, Individually and in
his Official Capacity as an employee/agent of the
County of Seneca, Defendant(s).
**No. 02-CV-6257FE.**

Sept. 30, 2004.

Frank G. Mowry, Gowanda, NY, pro se.

Thomas J. Lynch, Esq., Law Offices of Thomas J. Lynch,
Syracuse, NY, Thomas Desimon, Esq., Harris Beach LLP,
Pittsford, NY, for Defendants.

DECISION AND ORDER

*Preliminary Statement*

FELDMAN, Magistrate J.

**\*1** Plaintiff Frank G. Mowry ("Mowry" or "plaintiff"),
proceeding *pro se,* brings this action pursuant to 42 U.S.C.
§ 1983. Plaintiff alleges that (1) defendant Robert F.
Noone, Jr. ("Noone") used excessive force to effectuate
his arrest, in violation of his rights under the Fourth
Amendment of the Constitution, (2) defendant Douglas
Dickenson ("Dickenson") failed to intervene to stop
Noone from using excessive force, and (3) both Noone
and Dickenson deliberately denied him medical care in
violation of his rights under the Fourteenth Amendment of
the Constitution. Defendants now move for summary

judgment pursuant to Rule 56 of the Federal Rules of Civil
Procedure (Docket # 70). In accordance with the
provisions of 28 U.S.C. § 636(c), the parties have
consented to the jurisdiction of this Court for all
dispositive matters, including trial. (Docket # 11). For the
reasons set forth herein, defendants' motion for summary
judgment is granted.

*Factual Background*

Mowry alleges that on July 22, 1999 he was stopped at a
traffic light in the left turn only lane at the Ovid Street
bridge in Seneca Falls, New York. Mowry continued
straight ahead onto Cayuga Street when the light turned
green. Defendant Officer Robert F. Noone, Jr. of the
Seneca Falls Police Department, observed Mowry disobey
the traffic sign, activated the emergency lights on his
vehicle and began following Mowry. (Mowry Dep. Trans.
p. 17, 17-18 <sup>FN1</sup>). Mowry knew that he was driving
illegally but did not pull over. (Mowry Dep. Trans. p. 18,
12). Noone continued to follow Mowry for several miles.
(Mowry Dep. Trans. p. 20, 8). When Mowry turned onto
Route 318, Deputy Douglas Dickenson of the Seneca
County Sheriff's Department, joined the pursuit and
activated his emergency lights. (Mowry Dep. Trans. p. 22,
5-6, p. 24, 3). Mowry continued driving even though he
knew he was the subject of pursuit. (Mowry Dep. Trans.
p. 25, 7). Mowry lead defendants on a highspeed chase
that reached speeds of over 75 mph and narrowly avoided
several head-on collisions as he attempted to pass vehicles
on the two-lane road. (Mowry Dep. Trans. p. 21, 12-13,
22). Mowry turned onto Birdsey Road and continued
driving until a construction road closure forced him to stop
his car. (Mowry Dep. Trans. p. 28, 9-22).

> FN1. Deposition references are to the page and
> line number of transcript of the May 27, 2003
> deposition of plaintiff Frank. G. Mowry.

Mowry exited his car and when he saw Dickenson,
followed by Noone, turn onto Birdsey Road he began to
flee. (Dep. Trans. p. 38, 9-13; p. 39, 3). Dickenson ran
after Mowry yelling at him to stop. (Mowry Dep. Trans. p.
39, 8). Once Mowry saw that he was about to be overtaken

Not Reported in F.Supp.2d, 2004 WL 2202645 (W.D.N.Y.)
(Cite as: 2004 WL 2202645 (W.D.N.Y.))

by Dickenson, he stopped and Dickenson brought him to the ground. (Mowry Dep. Trans. p. 34, 20). Mowry landed with his hands and knees on the gravel. (Mowry Dep. Trans. p. 37, 2; p. 40, 20-21). Dickenson asked Mowry if he was alright, and Mowry responded yes. (Mowry Dep. Trans. p. 42, 15-20).

Dickenson gave Mowry 30 seconds to catch his breath on his hands and knees, then pulled Mowry's right arm behind his back to handcuff him. (Mowry Dep. Trans. p. 42, 12-13, p. 39, 21-22). At the same time, Mowry heard a car door slam and saw Noone running towards them. (Mowry Dep. Trans. p. 72, 19-21). Mowry testified that when he saw Noone running towards them he only had time to turn his head away. (Mowry Dep. Trans. p. 46, 6-8). Mowry testified that Noone was running too fast and overran Mowry and Dickenson. (Mowry Dep. Trans. p. 46, 18-19). As Noone jumped over the top of Mowry's head, the toe of Noone's boot hit the side of Mowry's head. (Mowry Dep. Trans. p. 49, 4-5). Noone landed on one foot before regaining his balance. (Mowry Dep. Trans. p. 48, 21-23). Noone and Dickenson pulled Mowry off the ground and placed him in Noone's car. (Mowry Dep. Trans. p. 49, 13-14). Mowry claims to have lost consciousness until he was placed in the back of the patrol car. (Mowry Dep. Trans. 50, 9-14). Mowry denies telling anyone that he was injured until after he got to the police station and was formally "booked in" at the county jail. (Mowry Dep. Trans. 55, 7-13). Mowry concedes that he did not ask for any medical attention at that time. (Mowry Dep. Trans. 55, 17-22, 68, 10-15).

**\*2** Mowry was taken to the Seneca Falls Police Station where he was charged with Driving While Intoxicated, Aggravated Unlicensed Operation of a Motor Vehicle in the First Degree, and Reckless Endangerment.[FN2] Within 24 hours of his arrest, Mowry was examined by medical personnel at the county jail and was treated for neck pain. (Mowry Dep. Trans. p. 68, 19; p. 58, 3-4).

> FN2. Mowry later admitted guilt to all three charges. (Mowry Dep. Trans. p. 63, 8-20).

Mowry alleges that he was later diagnosed with a fractured left cheekbone. (Mowry Dep. Trans. p. 65, 5-9). He also asserts that as a result of this injury he experiences blurred

vision and migraine headaches. (Mowry Dep. Trans. p. 65, 6-9). According to Mowry, the results of an MRI taken while he was in prison were "normal." (Mowry Dep. Trans. p. 82, 18-19).

*Discussion*

*Summary Judgment Standard:* Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" only if it has some affect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Catanazaro v. Weiden,* 140 F.3d 91, 93 (2d Cir.1998).

The burden of showing the absence of any genuine issue of material fact rests on the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When a court is confronted with facts that permit different conclusions, all ambiguities and inferences that may reasonably be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Gottlieb v. County of Orange,* 84 F.3d 511, 518 (2d Cir.1996). Rule 56(e), however, also provides that in order to defeat a motion for summary judgment, the opposing party must "set forth specific facts showing that there is a genuine issue for trial. Such an issue is not created by a mere allegation in the pleadings [citations omitted], nor by surmise or conjecture on the part of the litigants." *United States v. Potamkin Cadillac Corp.,* 689 F.2d 379, 381 (2d Cir.1982) (per curium). "Affidavits submitted in opposition to a motion for summary judgment must set forth such facts as would be admissible in evidence." *Franklin v. Krueger Int'l,* 1997 WL 691424 at \*3 (S.D.N.Y. November 5, 1997) (citing *Raskin v. The Wyatt Co.,* 125 F.3d 55 (2d Cir.1997) ("only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment").

In addition, *pro se* submissions, particularly those alleging civil rights violations, are construed liberally and are

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 2202645 (W.D.N.Y.)
(Cite as: 2004 WL 2202645 (W.D.N.Y.))

treated as raising the strongest arguments that they might suggest. *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996). *See also Davis v. Goord,* 320 F.3d 346, 350 (2d Cir.2003) (because plaintiff's "complaint alleges civil rights violations and he proceeded *pro se* in the District Court, we must construe his complaint with particular generosity") (citations omitted).

**\*3** *I. Excessive Force Claim:* The Supreme Court has held that claims against police officers for excessive force must be examined under the Fourth Amendment's reasonableness standard. *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Determining whether the force used was reasonable requires a balancing of the intrusion on the individual's Fourth Amendment rights against the interests of the government. *Id.* at 396. The reasonableness of a particular use of force must be judged objectively from the perspective of a reasonable officer at the scene of the arrest. *Graham,* 490 U.S. at 397. In evaluating the officer's actions, courts should consider the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest or attempting to evade arrest by flight. *Id.* at 396. It is well established that the right to make an arrest necessarily carries with it the right to use some degree of physical coercion. *Id. See Mickle v. Morin,* 297 F.3d 114, 120 (2nd Cir.2002)(in the context of excessive force used during an arrest, "not every push or shove" is excessive.)(internal citations omitted).

In this case, the record is clear that the officers were faced with an extremely dangerous situation as Mowry drove erratically down narrow roads to avoid capture. Indeed, Mowry's actions repeatedly put the lives of other motorists in imminent danger. Applying the *Graham* balancing test to these circumstances, there is no question that the officers acted appropriately in stopping and arresting Mowry. *See Washington v. City of Riverside Illinois,* 2003 WL 1193347, \*5 (N.D.Ill. March 13, 2003) (summary judgment granted when driver's decision to flee justified officer's subsequent use of force to arrest.). Simply put, Mowry has produced no evidence upon which a reasonable jury could find that the defendants used excessive force during his take down and arrest.

As for Mowry's allegation that Noone applied excessive force by "kicking him in the head," this Court will not credit Mowry's attempt to change his deposition testimony with the affidavit he submits in opposition to defendants' motions. Rather, this Court relies on Mowry's deposition testimony which clearly establishes the accidental nature of any injury caused by Noone. *See Mack v. United States,* 814 F.2d 120, 124 (2d Cir.1987)("It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment."); *Hayes v. New York City Dep't of Corr.,* 84 F.3d 614, 619 (2d Cir.1996) ("[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial.").

The undisputed facts here are that after Mowry was taken down by Dickenson, Noone exited his vehicle, ran toward Mowry with such speed that he overran Mowry and Dickenson, and tripped over Mowry. In light of the prolonged chase, the officers had a reasonable basis for believing that Mowry posed a serious threat, especially since he continued to run and evade arrest after he exited his vehicle. Under these circumstances, this Court finds that it was objectively reasonable for Noone to approach Mowry at a high rate of speed in his effort to assist Dickenson in subduing Mowry, and that his actions can not constitute excessive force.

**\*4** *II. Failure to Intervene Claim:* Mowry also makes a claim for failure to intervene. It is well established that a law enforcement official has an affirmative duty to intervene on behalf of an individual whose constitutional rights are being violated in his presence by another. *Curley v. Village of Suffern,* 268 F.3d 65, 72 (2d Cir.2001); *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994); *O'Neill v. Krzeminski,* 839 F.2d 9, 11 (2d Cir.1988). Failure to intercede results in liability where an officer observes the use of excessive force or has reason to know that it will be used. *Anderson,* 17 F.3d at 557. In order to be held liable, the law enforcement official must have had a realistic opportunity to intervene in order to prevent the harm from occurring. *Id.* at 557.

Here, based on the facts as presented by Mowry, Dickenson did not have the opportunity to intercede before Noone tripped over Mowry, and therefore cannot be held liable. *See O'Neill v. Krzeminski,* 839 F.2d 9, 11

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 2202645 (W.D.N.Y.)
(Cite as: 2004 WL 2202645 (W.D.N.Y.))

(2d Cir.1988) (defendant entitled to judgment where record clear that blows were struck in such a rapid succession that officer "had no realistic opportunity to attempt to prevent them."). At the time the alleged excessive force was used, Dickenson had one hand on Mowry's left arm and was attempting to pull Mowry's right arm behind Mowry's back. Even Mowry stated that when he heard Noone running toward them he only had time to turn his head away before Noone overran them. Moreover, Noone's alleged use of excessive force was a single kick to the head, an event which Mowry concedes happened quickly and without warning. This was not a situation where the alleged excessive force continued for such a period of time that Dickenson, upon realizing what was happening, could have stopped it. *Id.* at 11-12.

Because a reasonable jury could not conclude otherwise, summary judgment should be granted in favor of Dickenson on the failure to intervene claim.

*III. Denial of Medical Treatment:* Mowry's third claim is for denial of medical treatment. The denial of medical treatment for a pre-trial detainee is evaluated under the Due Process Clause of the Fourteenth Amendment. *City of Revere v. Massachusetts General Hospital,* 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983); *Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996). Although not specifically defined by the Supreme Court, the due process rights of a pre-trial detainee are at least as great as the Eighth Amendment rights of a convicted prisoner. *City of Revere,* 463 U.S. at 244; *Weyant v. Okst,* 101 F.3d. at 856.

In *Weyant,* the Second Circuit established a two-part test to determine liability for denial of medical treatment. First, the denial of medical treatment must concern an objectively serious injury. *Weyant,* 101 F.3d at 856. A serious injury has been defined as "one that may produce death, degeneration or extreme pain." *Mills v. Fenger,* 2003 WL 251953, *4 (W.D.N.Y.2003)* (citations omitted). Second, the plaintiff is required to show that based on what the defendant knew or should have known, the defendant acted with deliberate indifference to plaintiff's serious medical needs. *Weyant,* 101 F.3d at 856. Deliberate indifference is established if the defendant acted with reckless disregard for the substantial risk posed by the plaintiff's serious medical condition. *Weyant,* 101 F.3d at 856.

*5 Here, the undisputed facts establish that the defendants did not deny plaintiff medical treatment. Even assuming arguendo that Mowry's injury rose to the level of an objectively serious medical injury, there is no credible evidence in the record to base a finding that either Noone or Dickenson should have been aware of his need for medical treatment, but were indifferent to his needs. Indeed, the record demonstrates that Mowry never told the defendants that he needed medical attention and the injuries he now alleges were not apparent to them. Contrary to plaintiff's claims, Dickenson demonstrated his concern for plaintiff's well-being when he asked Mowry if he was alright and gave him time to catch his breath. Mowry did not ask for medical assistance or complain about his alleged injuries immediately following the arrest. At the county jail, Mowry stated that he did not need medical attention. It was not until the following day that Mowry first requested medical attention. Mowry admits that in response to this request, he was then treated by the medical personnel at the county jail and given a prescription for neck pain.

The record is devoid of credible evidence that either defendant acted with reckless disregard for the substantial risk posed by the plaintiff's serious medical needs. *See Thomas v. Nassau County Correctional Center,* 288 F.Supp.2d 333, 338 (E.D.N.Y.2003) (to establish a constitutional violation the facts must give rise to a reasonable inference that defendants *knew* of serious medical needs and intentionally disregarded them.). Based on the record here, summary judgment should be granted in favor of defendants Dickenson and Noone on plaintiff's denial of medical treatment claim.

*Conclusion*

For all the foregoing reasons, defendants' Motions for Summary Judgment (Docket # 67, 70) are granted. Having granted defendants' motion for summary judgment by determining that plaintiff has failed to adduce evidence of a constitutional violation, plaintiff's motions for "dismissal of defendant's (sic) motion" and "cross motion" for summary judgement (Docket # 75) are denied.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 2202645 (W.D.N.Y.)
(Cite as: 2004 WL 2202645 (W.D.N.Y.))


SO ORDERED.


W.D.N.Y.,2004.
Mowry v. Noone
Not Reported in F.Supp.2d, 2004 WL 2202645
(W.D.N.Y.)


END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



--- F.Supp.2d ----, 2010 WL 889787 (E.D.N.Y.)
(Cite as: 2010 WL 889787 (E.D.N.Y.))

**C**

Only the Westlaw citation is currently available.

United States District Court,
E.D. New York.
Anthony PRICE, Plaintiff,
v.
Sheriff Edward REILLY, Kim Edwards, RN III, Perry
Intal, Mary Sullivan, RN, Dr. Benjamin Okonta, MD,
and Nassau University Medical Center, Defendants.
**No. 07-CV-2634 (JFB)(ARL).**

March 8, 2010.

**Background:** Pro se inmate, who suffered from end stage renal disease requiring dialysis, filed § 1983 action against sheriff, nurse practitioner, physician, and medical center, alleging violations of the Eighth Amendment for defendants' failure to provide adequate medical care. Defendants moved for summary judgment.

**Holdings:** The District Court, Joseph F. Bianco, J., held that:
(1) there was no evidence that administrative remedy was available to inmate;
(2) prison medical staff's modification of inmate's medication dosage did not constitute deliberate indifference to his medical needs;
(3) prison's failure to provide food with inmate's medication was not sufficiently serious to satisfy objective prong of test for deliberate indifference to serious medical needs;
(4) medical staff did not act with culpable intent to consciously disregard inmate's serious medical needs;
(5) genuine issue of material fact as to whether prison medical staff was aware of, and consciously disregarded inmate's request for a kidney transplant test precluded summary judgment;
(6) genuine issue of material fact as to whether inmate's shoulder pain was a serious medical condition precluded summary judgment;
(7) sheriff was not liable under § 1983; but

(8) genuine issues of material fact precluded summary judgment on § 1983 liability of registered nurse and doctor.

Motion granted in part and denied in part.

West Headnotes

**[1] Federal Civil Procedure 170A** 🗝 **2547.1**

170A Federal Civil Procedure
  170AXVII Judgment
    170AXVII(C) Summary Judgment
      170AXVII(C)3 Proceedings
        170Ak2547 Hearing and Determination
          170Ak2547.1 k. In General. Most Cited Cases
Generally, plaintiffs' failure to respond or contest facts set forth by defendants in their statement of facts, submitted in support of summary judgment, constitutes admission of those facts, and facts are accepted as undisputed under local rule. U.S.Dist.Ct.Rules S.D.N.Y., Civil Rule 56.1.

**[2] Federal Civil Procedure 170A** 🗝 **25**

170A Federal Civil Procedure
  170AI In General
    170AI(B) Rules of Court in General
      170AI(B)1 In General
        170Ak25 k. Local Rules of District Courts.
Most Cited Cases
District court has broad discretion to determine whether to overlook a party's failure to comply with local court rules.

**[3] Federal Civil Procedure 170A** 🗝 **2547.1**

170A Federal Civil Procedure
  170AXVII Judgment
    170AXVII(C) Summary Judgment
      170AXVII(C)3 Proceedings
        170Ak2547 Hearing and Determination

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 889787 (E.D.N.Y.)
(Cite as: 2010 WL 889787 (E.D.N.Y.))

170Ak2547.1 k. In General. Most Cited Cases

District court, when analyzing motion for summary judgment by sheriff and medical personnel in inmate's pro se action alleging cruel and unusual punishment, would treat as admitted only those facts that were supported by admissible evidence and not controverted by other admissible evidence in the record, given that inmate was acting pro se, he failed to file and serve a response to defendant's statement, but he had identified arguments and factual assertions in statement with which he disagreed. U.S.C.A. Const.Amend. 8; U.S.Dist.Ct.Rules S.D.N.Y., Civil Rule 56.1.

**[4] Federal Civil Procedure 170A ☞ 657.5(1)**

170A Federal Civil Procedure
  170AVII Pleadings and Motions
    170AVII(A) Pleadings in General
      170Ak654 Construction
        170Ak657.5 Pro Se or Lay Pleadings
          170Ak657.5(1) k. In General. Most Cited Cases

Court must construe pro se complaint broadly, and interpret it to raise the strongest arguments that it suggests.

**[5] Attorney and Client 45 ☞ 62**

45 Attorney and Client
  45II Retainer and Authority
    45k62 k. Rights of Litigants to Act in Person or by Attorney. Most Cited Cases

**Federal Civil Procedure 170A ☞ 657.5(1)**

170A Federal Civil Procedure
  170AVII Pleadings and Motions
    170AVII(A) Pleadings in General
      170Ak654 Construction
        170Ak657.5 Pro Se or Lay Pleadings
          170Ak657.5(1) k. In General. Most Cited Cases

**Federal Civil Procedure 170A ☞ 2546**

170A Federal Civil Procedure
  170AXVII Judgment
    170AXVII(C) Summary Judgment
      170AXVII(C)3 Proceedings
        170Ak2542 Evidence
          170Ak2546 k. Weight and Sufficiency. Most Cited Cases

Though pro se litigant's pleadings and other submissions are afforded wide latitude, pro se party's conclusory assertions, completely unsupported by evidence, are not sufficient to defeat motion for summary judgment.

**[6] Civil Rights 78 ☞ 1304**

78 Civil Rights
  78III Federal Remedies in General
    78k1304 k. Nature and Elements of Civil Actions. Most Cited Cases

To prevail on a claim under § 1983, a plaintiff must show: (1) deprivation of any rights, privileges, or immunities secured by the Constitution and its laws, (2) by a person acting under the color of state law. 42 U.S.C.A. § 1983.

**[7] Prisons 310 ☞ 317**

310 Prisons
  310II Prisoners and Inmates
    310II(H) Proceedings
      310k316 Exhaustion of Other Remedies
        310k317 k. In General. Most Cited Cases

In order to determine if prisoner exhausted his administrative remedies prior to commencement of lawsuit, as required by PLRA, court must first establish from a legally sufficient source that an administrative remedy is applicable, and that the particular complaint does not fall within an exception. Prison Litigation Reform Act of 1995, § 101(a), 42 U.S.C.A. § 1997e(a).

**[8] Prisons 310 ☞ 313**

310 Prisons

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 889787 (E.D.N.Y.)
(Cite as: 2010 WL 889787 (E.D.N.Y.))

310II Prisoners and Inmates
310II(H) Proceedings
310k307 Actions and Litigation
310k313 k. Trial. Most Cited Cases
Whether administrative remedy was available to prisoner in a particular prison or prison system, and whether such remedy was applicable to grievance underlying prisoner's suit, for purpose of PLRA's exhaustion requirement, are not questions of fact; rather, such issues either are, or inevitably contain, questions of law. Prison Litigation Reform Act of 1995, § 101(a), 42 U.S.C.A. § 1997e(a).

[9] Civil Rights 78 ☞ 1319

78 Civil Rights
78III Federal Remedies in General
78k1314 Adequacy, Availability, and Exhaustion of State or Local Remedies
78k1319 k. Criminal Law Enforcement; Prisons. Most Cited Cases
Sheriff and prison medical staff provided no evidence that an administrative remedy was available to inmate who suffered from end state renal disease, and who sought, but did not receive, medical testing to determine if he was a candidate for kidney transplant, and thus inmate's § 1983 action alleging violations of Eighth Amendment would not be dismissed for his failure to exhaust administrative remedies under PLRA; defendants failed to establish procedural framework for grievance resolution at the prison or the availability of any administrative remedies for prisoner's situation. U.S.C.A. Const.Amend. 8; Prison Litigation Reform Act of 1995, § 101(a), 42 U.S.C.A. § 1997e(a).

[10] Sentencing and Punishment 350H ☞ 1533

350H Sentencing and Punishment
350HVII Cruel and Unusual Punishment in General
350HVII(H) Conditions of Confinement
350Hk1533 k. Deliberate Indifference in General. Most Cited Cases
Test for determining whether prison official's actions or omissions rise to level of "deliberate indifference" in violation of the Eighth Amendment, as will allow recovery by prisoner in federal civil rights action, is twofold: first, prisoner must demonstrate that he is incarcerated under

conditions posing substantial risk of serious harm, and second, prisoner must demonstrate that defendant prison officials possessed sufficient culpable intent. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.

[11] Sentencing and Punishment 350H ☞ 1533

350H Sentencing and Punishment
350HVII Cruel and Unusual Punishment in General
350HVII(H) Conditions of Confinement
350Hk1533 k. Deliberate Indifference in General. Most Cited Cases
Second prong of test for determining whether prison officials acted with deliberate indifference to rights of prisoners in violation of the Eighth Amendment, that of "culpable intent," in turn involves two-tier inquiry; specifically, prison official has sufficient culpable intent if he has knowledge that inmate faces substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate harm. U.S.C.A. Const.Amend. 8.

[12] Sentencing and Punishment 350H ☞ 1546

350H Sentencing and Punishment
350HVII Cruel and Unusual Punishment in General
350HVII(H) Conditions of Confinement
350Hk1546 k. Medical Care and Treatment. Most Cited Cases
Mere fact that an inmate's underlying disease is a "serious medical condition" does not mean that prison staff's allegedly incorrect treatment of that condition automatically poses an "objectively serious health risk," in violation of Eighth Amendment. U.S.C.A. Const.Amend. 8.

[13] Prisons 310 ☞ 192

310 Prisons
310II Prisoners and Inmates
310II(D) Health and Medical Care
310k191 Particular Conditions and Treatments
310k192 k. In General. Most Cited Cases

--- F.Supp.2d ----, 2010 WL 889787 (E.D.N.Y.)
(Cite as: 2010 WL 889787 (E.D.N.Y.))

**Sentencing and Punishment 350H** ☞     1546

350H Sentencing and Punishment
    350HVII Cruel and Unusual Punishment in General
        350HVII(H) Conditions of Confinement
            350Hk1546 k. Medical Care and Treatment.
Most Cited Cases
Even though inmate's end stage renal disease requiring dialysis was serious medical condition, prison medical staff did not act with deliberate indifference to inmate's medical needs in violation of his Eighth Amendment rights by modifying his medication dosage, since reduction in medication levels posed no objectively serious health risk to inmate; only injury inmate suffered was an increase in phosphorous levels, which was correctable, and a slight rash. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.

**[14] Prisons 310** ☞     192

310 Prisons
    310II Prisoners and Inmates
        310II(D) Health and Medical Care
            310k191 Particular Conditions and Treatments
                310k192 k. In General. Most Cited Cases

**Sentencing and Punishment 350H** ☞     1546

350H Sentencing and Punishment
    350HVII Cruel and Unusual Punishment in General
        350HVII(H) Conditions of Confinement
            350Hk1546 k. Medical Care and Treatment.
Most Cited Cases
Even though inmate's prescriptions indicated that his medications for renal disease were to be taken with meals, prison officials' failure to provide food with the medication was not sufficiently serious to satisfy objective prong of test for deliberate indifference to inmate's serious medical needs, in violation of Eighth Amendment; inmate did not suffer any harm from taking medicine without food. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.

**[15] Sentencing and Punishment 350H** ☞     1546

350H Sentencing and Punishment
    350HVII Cruel and Unusual Punishment in General
        350HVII(H) Conditions of Confinement
            350Hk1546 k. Medical Care and Treatment.
Most Cited Cases
An inmate's mere disagreement with prison officials' prescribed medication dosage is insufficient as a matter of law to establish officials' "deliberate indifference" to his medical needs, in violation of the Eighth Amendment. U.S.C.A. Const.Amend. 8.

**[16] Prisons 310** ☞     192

310 Prisons
    310II Prisoners and Inmates
        310II(D) Health and Medical Care
            310k191 Particular Conditions and Treatments
                310k192 k. In General. Most Cited Cases

**Sentencing and Punishment 350H** ☞     1546

350H Sentencing and Punishment
    350HVII Cruel and Unusual Punishment in General
        350HVII(H) Conditions of Confinement
            350Hk1546 k. Medical Care and Treatment.
Most Cited Cases
Even though inmate disagreed with medical treatment he received at prison, medical staff did not act with culpable intent to consciously disregard inmate's serious medical needs, in violation of his Eighth Amendment rights, by adjusting the dosage levels of his prescription medication for renal disease; dosage inmate received adequately treated his condition, he suffered no injury from modification of dosage other than increased phosphorous levels, and officials changed dosage to correct those levels. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.

**[17] Federal Civil Procedure 170A** ☞     2491.5

170A Federal Civil Procedure
    170AXVII Judgment
        170AXVII(C) Summary Judgment
            170AXVII(C)2 Particular Cases
                170Ak2491.5 k. Civil Rights Cases in

--- F.Supp.2d ----, 2010 WL 889787 (E.D.N.Y.)
(Cite as: 2010 WL 889787 (E.D.N.Y.))

General. Most Cited Cases
Genuine issue of material fact as to whether prison medical staff was aware of, and consciously disregarded inmate's request for a kidney transplant test, precluded summary judgment in inmate's § 1983 action alleging officials' deliberate indifference to his medical needs, in violation of Eighth Amendment. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.

**[18]** Sentencing and Punishment 350H ☞ 1546

350H Sentencing and Punishment
   350HVII Cruel and Unusual Punishment in General
      350HVII(H) Conditions of Confinement
         350Hk1546 k. Medical Care and Treatment.
Most Cited Cases
An inmate's chronic pain can constitute a "serious medical condition" for purposes of claim of deliberate indifference to a serious medical need under the Eighth Amendment. U.S.C.A. Const.Amend. 8;.

**[19]** Federal Civil Procedure 170A ☞ 2491.5

170A Federal Civil Procedure
   170AXVII Judgment
      170AXVII(C) Summary Judgment
         170AXVII(C)2 Particular Cases
            170Ak2491.5 k. Civil Rights Cases in General. Most Cited Cases
Genuine issue of material fact as to whether inmate's shoulder pain was a serious medical condition, and whether prison medical staff acted with deliberate indifference by failing to prescribe pain medication or take x-rays, despite inmate's ongoing complaints, precluded summary judgment, in inmate's § 1983 Eighth Amendment claims against medical staff. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.

**[20]** Civil Rights 78 ☞ 1355

78 Civil Rights
   78III Federal Remedies in General
      78k1353 Liability of Public Officials
         78k1355 k. Vicarious Liability and Respondeat

Superior in General; Supervisory Liability in General. Most Cited Cases
Supervisor liability in § 1983 action can be shown in one or more of the following ways: (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring. 42 U.S.C.A. § 1983.

**[21]** Civil Rights 78 ☞ 1358

78 Civil Rights
   78III Federal Remedies in General
      78k1353 Liability of Public Officials
         78k1358 k. Criminal Law Enforcement; Prisons.
Most Cited Cases
Sheriff was not liable under § 1983 for alleged deliberate indifference to medical needs of inmate related to inmate's end stage renal disease or chronic shoulder pain; there was no showing that sheriff was personally involved in denying medical treatment to inmate, or that there was a custom or policy at prison of allowing alleged constitutional violations. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.

**[22]** Federal Civil Procedure 170A ☞ 2491.5

170A Federal Civil Procedure
   170AXVII Judgment
      170AXVII(C) Summary Judgment
         170AXVII(C)2 Particular Cases
            170Ak2491.5 k. Civil Rights Cases in General. Most Cited Cases
Genuine issue of material fact as to whether registered nurse on prison medical staff was personally involved in prison's alleged failure to arrange for inmate's kidney transplant test precluded summary judgment in inmate's § 1983 action alleging officials' deliberate indifference to his medical needs, in violation of Eighth Amendment. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 889787 (E.D.N.Y.)
(Cite as: 2010 WL 889787 (E.D.N.Y.))

[23] Civil Rights 78 🗝️ 1358

78 Civil Rights
    78III Federal Remedies in General
        78k1353 Liability of Public Officials
           78k1358 k. Criminal Law Enforcement; Prisons.
Most Cited Cases
If prison doctor denies medical treatment to an inmate, that doctor is "personally involved" in alleged constitutional violation for purposes of § 1983 liability.
U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.

[24] Federal Civil Procedure 170A 🗝️ 2491.5

170A Federal Civil Procedure
    170AXVII Judgment
        170AXVII(C) Summary Judgment
           170AXVII(C)2 Particular Cases
                170Ak2491.5 k. Civil Rights Cases in General. Most Cited Cases
Genuine issue of material fact as to whether doctor denied medical treatment to inmate suffering from end stage renal disease, precluded summary judgment in inmate's § 1983 action alleging prison officials' deliberate indifference to his medical needs, in violation of Eighth Amendment.
U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.
Anthony Price, pro se.

Edward J. Troy, Law Office of Edward J. Troy, Greenlawn, NY, for the Defendants.

MEMORANDUM AND ORDER

JOSEPH F. BIANCO, District Judge:

*1 Pro se plaintiff Anthony Price (hereinafter "Price" or "plaintiff") alleges, pursuant to 42 U.S.C. § 1983, that Sheriff Edward Reilly, Kim Edwards, RN, Perry Intal, Mary Sullivan, RN, Dr. Benjamin Okonta, and Nassau University Medical Center (hereinafter "defendants") violated his Eighth Amendment rights by acting with deliberate indifference to his serious medical needs while plaintiff was incarcerated at the Nassau County

Correctional Center (hereinafter "NCCC"). Specifically, plaintiff alleges that defendants: (1) prescribed an incorrect dosage of medication for his renal disease; (2) failed to get him tested for a kidney transplant list; and (3) failed to adequately treat him for shoulder pain. Defendants have moved for summary judgment on all of plaintiffs' claims. For the reasons set forth below, defendants' motion is granted in part and denied in part. Specifically, defendants' motion is granted with respect to plaintiff's claim regarding the dosage of his prescription medication and with respect to all of plaintiff's claims against Sheriff Reilly. Defendants' motion is denied in all other respects.

I. FACTS

[1][2][3] The Court has taken the facts set forth below from the parties' depositions, affidavits, and exhibits, and from the defendants' Rule 56.1 statement of facts.FN1 They are not findings of fact by the Court, but rather are assumed to be true for the purposes of deciding this motion. Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party-here, the plaintiff. See Capobianco v. City of New York, 422 F.3d 47, 50 n. 1 (2d Cir.2005). Unless otherwise noted, where a party's 56.1 statement or deposition is cited, that fact is undisputed or the opposing party has pointed to no evidence in the record to contradict it.

A. Arrival at NCCC and Medication

Plaintiff was incarcerated in the Nassau County Correctional Center from January 7, 2007 to December 11, 2007. (Price Dep. at 6, 35.) Plaintiff has end stage renal disease and has been on dialysis since 2004 related to kidney failure. (Id. at 10; Defs.' 56.1 ¶ 2.) Plaintiff takes two daily medications, Renagel and PhosLo, for this condition. (Price Dep. at 10.) Before arriving at the NCCC,FN2 plaintiff was taking two 800 milligram pills of Renagel three times a day and two 667 milligram pills of PhosLo three times a day. (Id. at 12-13.)

When plaintiff arrived at the NCCC, he was interviewed by Perry Intal, a nurse practitioner in the medical intake

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 889787 (E.D.N.Y.)
(Cite as: 2010 WL 889787 (E.D.N.Y.))

department. (*Id.* at 21-22.) Plaintiff told Intal about his medical history, including that he was a dialysis patient and that he took medications. (*Id.* at 22.) Plaintiff was given a prescription for one 800 milligram pill of Renagel two times a day and one 667 milligram pill of PhosLo two times a day. (*Id.* at 23-24.) Two or three weeks later, plaintiff went to dialysis treatment and a blood test revealed high phosphorous levels. (*Id.* at 25-26.) As a result, plaintiff was given an increased dosage of medication. (*Id.* at 25-27.) Thereafter, plaintiff's phosphorous levels decreased and about one month later (*id.* at 30-31), his dosage was decreased to one 800 milligram pill of Renagel three times a day and two 667 milligram pills of PhosLo three times a day. (*Id.* at 31-33.) This was the dosage plaintiff received for the rest of his incarceration at the NCCC.[FN3] (*Id.* at 32-33.) Plaintiff believed that the dosage he was receiving was "wrong" and that it was "hurting" him. (*Id.* at 59-60.) However, the more plaintiff complained about the dosage hurting him, "the more it seemed like the people got aggravated." (*Id.* at 60.) In addition, plaintiff's prescriptions for Renagel and PhosLo indicate that the medications were to be taken with meals. (*See* Defs.' Ex. E.) Plaintiff alleges, however, that the medications were sometimes given to him without food or at times that interfered with his meals. (Price Dep. at 23, 60.)

**\*2** Besides receiving medication, plaintiff also received dialysis treatment three times a week at the Nassau University Medical Center. (*Id.* at 30.) On some occasions, plaintiff refused dialysis treatment because he "was feeling good" and "wanted to take a break" from treatment. (*Id.* at 56.) Plaintiff's regular medical treatment at the hospital also included a blood test every 30 days. (*Id.* at 27-28, 30.)

### B. Kidney Transplant Request

In February or March 2007, plaintiff spoke with a social worker named "Susan" about getting tested for a kidney transplant. (*Id.* at 76.) A test was required before an inmate could be placed on a waiting list for kidney transplants. (*Id.* at 80-81.) Only two hospitals in the area dealt with such matters: Stony Brook and a hospital in Westchester County. (*Id.* at 75-76.) Susan tried to contact Dr. Benjamin Okonta (hereinafter "Okonta") at Nassau University Medical Center in or about February or March

2007 (*id.* at 76-77), but Susan told plaintiff that Okonta did not get back to her.[FN4] (*Id.* at 65-66, 74-78.) Susan also submitted a letter to Okonta in July 2007, stating: "As per our conversation on 7/27/07, I am re-submitting for your review my request [for] your medical services on behalf of our renal dialysis pt., Anthony Price." (*Id.* at 77-78; Defs.' Ex. K.) Plaintiff never received a response from Okonta. (Price Dep. at 82.)

Susan also submitted a letter to Nurse Mary Sullivan (hereinafter "Sullivan"), the day supervisor at the NCCC medical center, stating: "As per our telephone conversation, I am submitting in writing Anthony Price's request for referral and evaluation to a kidney transplant center ... Stonybrook Univ. Medical Ctr." (Def.'s Ex. K.) At some point in time, plaintiff was called down to the NCCC medical center and was told by Sullivan that defendants knew about plaintiff's request to get on the kidney transplant list but that they had "other priorities right now." (Price Dep. at 70.) Plaintiff believed Sullivan was referring to his other health issues. (*Id.* at 70.) Plaintiff did not ask when he would be tested for the kidney transplant list. (*Id.* at 71.)

On September 25, 2007, plaintiff filed a formal grievance regarding his request to be tested for the kidney transplant list.[FN5] (*Id.* at 85.) Plaintiff stated on his grievance form that he had "been waiting to take the test I need to take to get on the kidney transplant list" and that his social worker had told him that she had forwarded the paperwork to the jail, but could not get a response. (Defs.' Ex. F.) Plaintiff requested that he be "given the test to see if I'm a candidate for possibly a kidney transplant." (*Id.*) By interdepartmental memorandum dated September 27, 2007, the Inmate Grievance Coordinator informed plaintiff that the medical grievance "is being discussed with and turned over to the Health Services Administrator. The medical unit will evaluate you. A Grievance Unit Investigator will contact you at a later date to conduct an evaluation of your status and to closeout the paperwork." (*Id.*) In another memo dated October 5, 2007, defendant Kim Edwards,[FN6] informed plaintiff:

**\*3** The social worker can only inform you of treatment options that are available for your medical problem. If you are in need of a "test", documentation must be provided by the attending physician that is responsible

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 889787 (E.D.N.Y.)
(Cite as: 2010 WL 889787 (E.D.N.Y.))

for your renal treatment.

(*Id.*) Plaintiff interpreted this response from Edwards to mean that the matter was now in the hands of the medical department, and so he did not further proceed with the grievance and "did not feel it was necessary." (Pl.'s Opp. at 3.) [FN7] Therefore, plaintiff "signed off on the grievance," saying that he had "read it and accepted it." (Price Dep. at 88.)

Plaintiff did not get the requested test during the remainder of his incarceration at the NCCC. (*Id.* at 90.) Defendants have submitted evidence that they made efforts to get plaintiff tested and, in fact, scheduled plaintiff for a test at Stony Brook University Hospital on November 29, 2007, but that the test had to be cancelled due to "unforeseen circumstances"; the test was re-scheduled for January 10, 2008. (Defs.' Ex. G, Reschke Aff. ¶¶ 6-7.) Plaintiff was not informed about any scheduled test (Pl.'s Opp. at 2), and he was transferred to a different facility in December 2007. (Price Dep. at 35; Reschke Aff. ¶ 7.)

C. Shoulder Pain

Plaintiff began complaining about shoulder pain to the medical department at the NCCC on January 17, 2007, stating that his right shoulder was "extremely hurting." (Price Dep. at 36; Defs.' Ex. E, Sick Call Request, Jan. 17, 2007.) Plaintiff had received treatment for shoulder pain in the past, including a shot of Cortisone while at the Elmira facility (Price Dep. at 38, 53-54; Defs.' Ex. E, Sick Call Request, Apr. 14, 2007.) After the January 17 complaint, plaintiff was seen a couple of days later and given medication to rub on his shoulder. (Price Dep. at 41.) The medication did not help with the discomfort, and so plaintiff complained again later in January. (*Id.* at 42-43.) Although defendants gave plaintiff Motrin and Naprosyn for the pain, no x-rays were taken for several months. (*Id.* at 44, 55; Defs.' Ex. H, Edwards Aff. ¶ 4.) The pain medication continued to be ineffective, and plaintiff continued to complain. (*See, e.g., id.* at 45, 51.) For instance, in June 2007, plaintiff complained that his right shoulder "hurts really bad." (Def.'s Ex. E, Sick Call Request, June 12, 2007.) Plaintiff never refused medication for his shoulder. (Price Dep. at 56.) When

plaintiff eventually was given x-rays, in April and November 2007 (Edwards Aff. ¶ 4), plaintiff was told that nothing was wrong with his shoulder. [FN8] (Price Dep. at 44; *see also* Defs.' Ex. J, Discharge Summary, November 2007 ("Although no definite evidence of venous thrombosis is seen with Rt. upper extremity, short segment acute thrombosis cannot be reliably excluded, Ultrasound might provide additional information....").) Plaintiff states that, with respect to his right shoulder, he currently wears a brace for carpal tunnel syndrome, has a separated shoulder, and takes shots for the pain. (Pl.'s Opp. at 4.)

II. PROCEDURAL HISTORY

*4 On June 28, 2007, plaintiff filed the initial complaint in this action. Plaintiff filed an amended complaint on August 20, 2007 alleging, pursuant to Section 1983, that defendants Sheriff Edward Reilly, Kim Edwards, Perry Intal, and Nassau University Medical Center violated his Eighth Amendment rights with respect to his medication dosage, kidney transplant request, and shoulder pain. On November 14, 2007, plaintiff filed another complaint in a separate action (No. 07-CV-4841) making substantially the same allegations and expanding on his allegations regarding the kidney transplant request. This complaint named Mary Sullivan and Dr. Benjamin Okonta, as well as the Nassau University Medical Center, as defendants. By Order dated July 11, 2008, the Court consolidated both actions (Nos. 07-CV2634 and 07-CV-4841) because the allegations in the two actions were "factually intertwined."

Defendants moved for summary judgment on May 29, 2009. [FN9] Plaintiff submitted an opposition to the motion on August 3 and August 11, 2009. [FN10] Defendants replied on August 20, 2009. Plaintiff submitted a surreply on October 6, 2009. This matter is fully submitted.

III. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 889787 (E.D.N.Y.)
(Cite as: 2010 WL 889787 (E.D.N.Y.))

a matter of law." Fed.R.Civ.P. 56(c); *Reiseck v. Universal Comm'ns of Miami, Inc.,* 591 F.3d 101, 104 (2d Cir.2010). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones,* 396 F.3d 53, 69 (2d Cir.2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 122 (2d Cir.2004); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party " 'must do more than simply show that there is some metaphysical doubt as to the material facts .... [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*' " *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir.2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (emphasis in original)). As the Supreme Court stated in Anderson, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-50, 106 S.Ct. 2505 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.,* at 247-48, 106 S.Ct. 2505 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth " 'concrete particulars' " showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 77 (2d Cir.1984) (quoting *SEC v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978)). Accordingly, it is insufficient for a party opposing summary judgment " 'merely to assert a conclusion without supplying supporting arguments or facts.' " *BellSouth Telecomms., Inc. v. W.R. Grace & Co.,* 77 F.3d 603, 615 (2d Cir.1996) (quoting *Research Automation Corp.,* 585 F.2d at 33).

*5 [4][5] Where the plaintiff is proceeding *pro se,* the Court must "construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggest[s]." *Weixel v. Bd. of Educ. of the City of N.Y.,* 287

F.3d 138, 145-46 (2d Cir.2002) (alterations in original) (quoting *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000)). Though a *pro se* litigant's pleadings and other submissions are afforded wide latitude, a *pro se* party's conclusory assertions, completely unsupported by evidence, are not sufficient to defeat a motion for summary judgment. *Shah v. Kuwait Airways Corp.,* 653 F.Supp.2d 499, 502 (S.D.N.Y.2009) ("Even a *pro se* party, however, 'may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that its version of the events is not wholly fanciful.' " (quoting *Auguste v. N.Y. Presbyterian Med. Ctr.,* 593 F.Supp.2d 659, 663 (S.D.N.Y.2009))).

## IV. DISCUSSION

[6] To prevail on a claim under Section 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993).

There is no dispute for purposes of this motion that defendants were acting under color of state law. The question presented, therefore, is whether defendants' alleged conduct deprived plaintiff of his Eighth Amendment rights. Plaintiff alleges that his Eighth Amendment rights were violated when defendants: (1) prescribed him an incorrect dosage of medication for his renal disease; (2) failed to get him tested for the kidney transplant list; and (3) failed to adequately treat him for his shoulder pain. For the reasons set forth below, after drawing all reasonable inferences from the facts in favor of plaintiff, the Court concludes that defendants are entitled to summary judgment on plaintiff's claim regarding the dosage of his medication and on all of plaintiff's claims against Sheriff Reilly. Defendants' motion for summary judgment is denied in all other respects.

### A. Exhaustion

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 889787 (E.D.N.Y.)
(Cite as: 2010 WL 889787 (E.D.N.Y.))

As a threshold matter, defendants argue that plaintiff is barred from raising any Eighth Amendment claim with respect to his kidney transplant request because plaintiff has not exhausted his administrative remedies.[FN11] For the reasons set forth below, the Court disagrees and cannot conclude from this record that plaintiff failed to exhaust his administrative remedies.

#### 1. Legal Standard

The Prison Litigation Reform Act of 1995 ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.' Prisoners must utilize the state's grievance procedures, regardless of whether the relief sought is offered through those procedures." Espinal v. Goord, 558 F.3d 119, 124 (2d Cir.2009) (quoting Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 90, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). Therefore, the exhaustion inquiry requires a court to "look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." Espinal, 558 F.3d at 124 (citing Jones v. Bock, 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) and Woodford, 548 U.S. at 88-90, 126 S.Ct. 2378).

**\*6** Prior to Woodford, 548 U.S. 81, 126 S.Ct. 2378 (2006), the Second Circuit "recognized some nuances in the exhaustion requirement: (1) administrative remedies that are ostensibly 'available' may be unavailable as a practical matter, for instance, if the inmate has already obtained a favorable result in administrative proceedings but has no means of enforcing that result; (2) similarly, if prison officials inhibit the inmate's ability to seek administrative review, that behavior may equitably estop them from raising an exhaustion defense; (3) imperfect exhaustion may be justified in special circumstances, for

instance if the inmate complied with his reasonable interpretation of unclear administrative regulations, or if the inmate reasonably believed he could raise a grievance in disciplinary proceedings and gave prison officials sufficient information to investigate the grievance." Reynoso v. Swezey, 238 Fed.Appx. 660, 662 (2d Cir.2007) (internal citations omitted); see also Davis v. New York, 311 Fed.Appx. 397, 399 (2d Cir.2009) (citing Hemphill v. New York, 380 F.3d 680, 686, 691 (2d Cir.2004)). However, the Second Circuit has not decided whether the above-discussed considerations apply post- Woodford. See, e.g., Reynoso, 238 Fed.Appx. at 662 ("Because we agree with the district court that [plaintiff] cannot prevail on any of these grounds, we have no occasion to decide whether Woodford has any bearing on them."); Ruggiero v. County of Orange, 467 F.3d 170, 176 (2d Cir.2006) ("We need not determine what effect Woodford has on our case law in this area, however, because [plaintiff] could not have prevailed even under our pre- Woodford case law.").

As the Supreme Court has held, exhaustion is an affirmative defense: "We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); see also Key v. Toussaint, 660 F.Supp.2d 518, 523 (S.D.N.Y.2009) ("Failure to exhaust remedies under the PLRA is an affirmative defense, and thus the defendants have the burden of proving that [plaintiff's] retaliation claim has not been exhausted." (citations omitted)).

#### 2. Application

Defendants argue that plaintiff did not appeal the resolution of his grievance request, i.e., the memo from Edwards dated October 5, 2007, stating that: "If you are in need of a 'test', documentation must be provided by the attending physician that is responsible for your renal treatment." (Defs.' Ex. F.) Therefore, defendants argue, plaintiff has failed to exhaust his administrative remedies under the PLRA. (Defs.' Br. at 25.) Plaintiff argues in response that he did not believe any further action on his grievance was "necessary" because the matter was put into the hands of the medical department. (Pl.'s Opp. at 3.) For the reasons discussed below, the Court concludes that, on this record, defendants have not met their burden of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 889787 (E.D.N.Y.)
(Cite as: 2010 WL 889787 (E.D.N.Y.))

proving that plaintiff failed to exhaust his administrative remedies.

**\*7** [7][8][9] As discussed above, the PLRA requires exhaustion only with respect to "such administrative remedies as are available." *See* 42 U.S.C. § 1997e(a). Therefore, in order to determine whether plaintiff exhausted his administrative remedies, the Court "must first establish from a legally sufficient source that an administrative remedy is applicable and that the particular complaint does not fall within an exception. Courts should be careful to look at the applicable set of grievance procedures, whether city, state or federal." *Mojias v. Johnson,* 351 F.3d 606, 610 (2d Cir.2003); *see also Espinal,* 558 F.3d at 124 (holding that, when considering exhaustion, courts must "look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures" (citations omitted)). "Whether an administrative remedy was available to a prisoner in a particular prison or prison system, and whether such remedy was applicable to the grievance underlying the prisoner's suit, are not questions of fact. They are, or inevitably contain, questions of law." *See Snider v. Melindez,* 199 F.3d 108, 113-14 (2d Cir.1999). However, "the existence of the procedure may be a matter of fact." *Id.* at 114.

On the record before the Court on this motion, the Court is unable to establish from any legally sufficient source that an administrative remedy was available to plaintiff. Defendants have made no submissions to the Court regarding the applicable grievance procedures at the NCCC. *See, e.g., Abney v. County of Nassau,* 237 F.Supp.2d 278, 281 (E.D.N.Y.2002) (noting that the "Inmate Handbook" for the Nassau County Correctional Facility grievance procedure was "annexed to Defendants' moving papers"). Specifically, defendants have not submitted any evidence, by affidavit or otherwise, that NCCC procedures offer a remedy to address the particular situation in this case.[FN12] Therefore, the Court cannot conclude from this record that plaintiff had an available administrative remedy that he failed to exhaust.

**B. Plaintiff's Claims of Deliberate Indifference**

**1. Legal Standard**

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment" and therefore "states a cause of action under § 1983." *Estelle v. Gamble,* 429 U.S. 97, 104-05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). As the Second Circuit has explained,

[t]he Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody. Moreover, under 42 U.S.C. § 1983, prison officials are liable for harm incurred by an inmate if the officials acted with "deliberate indifference" to the safety of the inmate. However, to state a cognizable section 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice.

*Hayes v. N.Y. City Dep't of Corr.,* 84 F.3d 614, 620 (2d Cir.1996) (citations omitted). Within this framework, "[d]eliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment, in violation of the Eighth Amendment, as made applicable to the states through the Fourteenth Amendment." *Bellotto v. County of Orange,* 248 Fed.Appx. 232, 236 (2d Cir.2007). Thus, according to the Second Circuit,

**\*8** [d]efendants may be held liable under § 1983 if they ... exhibited deliberate indifference to a known injury, a known risk, or a specific duty, and their failure to perform the duty or act to ameliorate the risk or injury was a proximate cause of plaintiff's deprivation of rights under the Constitution. Deliberate indifference is found in the Eighth Amendment context when a prison supervisor knows of and disregards an excessive risk to inmate health or safety .... Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause.

*Ortiz v. Goord,* 276 Fed.Appx. 97, 98 (2d Cir.2008) (citations and quotation marks omitted); *see also Harrison v. Barkley,* 219 F.3d 132, 137 (2d Cir.2000) ("Deliberate indifference will exist when an official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.' ") (quoting *Farmer v. Brennan,* 511 U.S. 825,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 889787 (E.D.N.Y.)
(Cite as: 2010 WL 889787 (E.D.N.Y.))

837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)); *Curry v. Kerik,* 163 F.Supp.2d 232, 237 (S.D.N.Y.2001) (" '[A]n official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' ") (quoting *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (internal quotation marks omitted)).

[10][11] In particular, the Second Circuit has set forth a two-part test for determining whether a prison official's actions or omissions rise to the level of deliberate indifference:

> The test for deliberate indifference is twofold. First, the plaintiff must demonstrate that he is incarcerated under conditions posing a substantial risk of serious harm. Second, the plaintiff must demonstrate that the defendant prison officials possessed sufficient culpable intent. The second prong of the deliberate indifference test, culpable intent, in turn, involves a two-tier inquiry. Specifically, a prison official has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm.

*Hayes,* 84 F.3d at 620 (internal citation omitted); *see also Phelps v. Kapnolas,* 308 F.3d 180, 185-86 (2d Cir.2002) (setting forth two-part deliberate indifference test).

In *Salahuddin v. Goord,* the Second Circuit set forth in detail the objective and subjective elements of a medical indifference claim. 467 F.3d 263 (2d Cir.2006). In particular, with respect to the first, objective element, the Second Circuit explained:

> The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious. Only deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Determining whether a deprivation is an objectively serious deprivation entails two inquiries. The first inquiry is whether the prisoner was actually deprived of adequate medical care. As the Supreme Court has noted, the prison official's duty is only to provide reasonable care. Thus, prison officials who act reasonably [in response to an inmate-health risk] cannot be found liable under the Cruel and Unusual Punishments Clause, and, conversely, failing to take reasonable measures in response to a medical condition can lead to liability.

*9 Second, the objective test asks whether the inadequacy in medical care is sufficiently serious. This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner. For example, if the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious. Factors relevant to the seriousness of a medical condition include whether a reasonable doctor or patient would find [it] important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain. In cases where the inadequacy is in the medical treatment given, the seriousness inquiry is narrower. For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone. Thus, although we sometimes speak of a serious medical condition as the basis for an Eighth Amendment claim, such a condition is only one factor in determining whether a deprivation of adequate medical care is sufficiently grave to establish constitutional liability.

467 F.3d at 279-80 (citations and quotation marks omitted); *see also Jones v. Westchester County Dep't of Corr. Medical Dep't,* 557 F.Supp.2d 408, 413-14 (S.D.N.Y.2008).

With respect to the second, subjective component, the Second Circuit further explained:

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 889787 (E.D.N.Y.)
(Cite as: 2010 WL 889787 (E.D.N.Y.))

The second requirement for an Eighth Amendment violation is subjective: the charged official must act with a sufficiently culpable state of mind. In medical-treatment cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health. Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law. This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result. Although less blameworthy than harmful action taken intentionally and knowingly, action taken with reckless indifference is no less actionable. The reckless official need not desire to cause such harm or be aware that such harm will surely or almost certainly result. Rather, proof of awareness of a substantial risk of the harm suffices. But recklessness entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent.

*Salahuddin,* 467 F.3d at 280 (citations and quotation marks omitted); *see also Jones,* 557 F.Supp.2d at 414. The Supreme Court has stressed that

in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*10 *Estelle v. Gamble,* 429 U.S. 97, 105-06, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (internal citations omitted); *see also Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2003) ("A showing of medical malpractice is therefore insufficient to support an Eighth Amendment claim unless the malpractice involves culpable recklessness, i.e., an act

or a failure to act by the prison doctor that evinces a conscious disregard of a substantial risk of serious harm." (internal quotations omitted)); *Harrison v. Barkley,* 219 F.3d 132, 139 (2d Cir.2000) (a medical practitioner who "delay[s] ... treatment based on a bad diagnosis or erroneous calculus of risks and costs" does not evince the culpability necessary for deliberate indifference).

2. Application

Plaintiff alleges that defendants violated his Eighth Amendment rights by: (1) prescribing an incorrect dosage of his renal disease medication; (2) failing to have him tested for the kidney transplant list; and (3) failing to properly treat his shoulder pain. The Court considers each claim in turn and, for the reasons discussed below, concludes that defendants are entitled to summary judgment on plaintiff's claim regarding his medication dosage and on all of plaintiff's claims against Sheriff Reilly. Defendants' motion is denied in all other respects.

a. Medication Dosage

Defendants concede that plaintiff's kidney condition is serious (Defs.' Br. at 21), but argue that the dosage of Renagel and PhosLo prescribed for plaintiff did not result in any injury. Defendants also argue that, even if the dosage was incorrect, it was at most "an error in medical judgment." Finally, defendants argue that plaintiff cannot show deliberate indifference because defendants continually tested plaintiff and twice changed the dosage of his medication depending on his phosphorous levels. (Defs.' Br. at 22.) For the reasons set forth below, the Court agrees and concludes that no rational jury could find that defendants acted with deliberate indifference with respect to the prescription of medication for plaintiff's renal disease.

i. Objective Prong

[12][13][14] Plaintiff has failed to present any evidence that the allegedly incorrect medication dosage posed an objectively serious risk to plaintiff's health. As a threshold matter, the mere fact that plaintiff's underlying renal

--- F.Supp.2d ----, 2010 WL 889787 (E.D.N.Y.)
(Cite as: 2010 WL 889787 (E.D.N.Y.))

disease is a serious medical condition does not mean that the allegedly incorrect treatment for that condition poses an objectively serious health risk. *See* Smith v. Carpenter, 316 F.3d 178, 186-87 (2d Cir.2003) ("As we noted in Chance [*v. Armstrong*, 143 F.3d 698 (2d Cir.1998) ], it's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes."). Furthermore, plaintiff has failed to produce any evidence that his medication dosage at the NCCC caused him any objectively serious harm. Instead, plaintiff testified merely that the prescribed dosage was "wrong" and was "hurting" him.[FN13] (Price Dep. at 60.) Plaintiff's belief that the medication dosage was incorrect is insufficient to establish the objective prong of the deliberate indifference test.[FN14] *See* Fox v. Fischer, 242 Fed.Appx. 759, 760 (2d Cir.2007) ("[T]he fact that [plaintiff] was provided Claritin as a substitute for Allegra fails to establish deliberate indifference to a serious medical need, because there is no allegation that the change in medication caused harm, if any, sufficiently serious to establish the objective prong of a deliberate indifference claim...."); Reyes v. Gardener, 93 Fed.Appx. 283, 285 (2d Cir.2004) ( "[Plaintiff] has offered no evidence ... showing that the prescribed medication regimen deviated from reasonable medical practice for the treatment of his condition."). Although there is evidence that plaintiff's phosphorous levels increased when he was prescribed a lesser dosage of medication upon arriving at the NCCC (*see* Price Dep. at 23-26), that is not by itself enough to support a finding of an objectively serious condition.[FN15] *See* Smith, 316 F.3d at 188-89 ("Although [plaintiff] suffered from an admittedly serious underlying condition, he presented no evidence that the two alleged episodes of missed medication resulted in permanent or on-going harm to his health, nor did he present any evidence explaining why the absence of actual physical injury was not a relevant factor in assessing the severity of his medical need.") (affirming denial of motion for new trial). Thus, plaintiff's medication dosage claim must fail because he cannot show that the complained-of dosage posed an objectively serious health risk.[FN16]

ii. Subjective Prong

**\*11** [15][16] Plaintiff's claim with respect to his medication dosage also fails because plaintiff cannot show

that defendants acted with subjectively culpable intent, i.e., that they were aware of, and consciously disregarded, plaintiff's serious medical needs. Plaintiff's claim is based on his assertion that the prescribed dosage was "wrong." However, mere disagreement with a prescribed medication dosage is insufficient as a matter of law to establish the subjective prong of deliberate indifference. *See* Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir.1998) ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."); Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F.Supp.2d 303, 312 (S.D.N.Y.2001) ("[D]isagreements over medications ... are not adequate grounds for a Section 1983 claim. Those issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment." (citing Estelle, 429 U.S. at 107, 97 S.Ct. 285)); *see also, e.g.,* Fuller v. Ranney, No. 06-CV-0033, 2010 WL 597952, at \*11 (W.D.N.Y. Feb. 17, 2010) ("Plaintiff's claim amounts to nothing more than a disagreement with the prescribed treatment he received and his insistence that he be prescribed certain medications. Without more, plaintiff's disagreement with the treatment he received does not rise to the level of a constitutional violation of his Eighth Amendment rights."); Covington v. Westchester County Dep't of Corr., No. 06 Civ. 5369, 2010 WL 572125, at \*6 (S.D.N.Y. Jan. 25, 2010) ("[Plaintiff's] claims that Defendants failed to change or increase his medication and counseling sessions amount to negligence claims at most, which is insufficient."); Hamm v. Hatcher, No. 05-CV-503, 2009 WL 1322357, at \*8 (S.D.N.Y. May 5, 2009) ("Plaintiff's unfulfilled demand for a larger dosage of [the medication] represents a mere disagreement over the course of Plaintiff's treatment and is inconsistent with deliberate indifference ....").

The fact that defendants adjusted the dosage of plaintiff's medication in response to plaintiff's phosphorous levels (*see* Price Dep. at 25-27) is also inconsistent with deliberate indifference. *See* Bellotto v. County of Orange, 248 Fed.Appx. 232, 237 (2d Cir.2007) ("The record also shows that mental health professionals responded to [plaintiff's] concerns about his medications and adjusted his prescription as they believed necessary.") (affirming summary judgment for defendants); *see also* Jolly v. Knudsen, 205 F.3d 1094, 1097 (8th Cir.2000)

--- F.Supp.2d ----, 2010 WL 889787 (E.D.N.Y.)
(Cite as: 2010 WL 889787 (E.D.N.Y.))

("[Defendant's] actions in this case cannot reasonably be said to reflect deliberate indifference. The only relevant evidence in the record indicates that [defendant's] actions were aimed at correcting perceived difficulties in [plaintiff's] dosage levels [in response to blood tests].");
*Fuller,* 2010 WL 597952, at *11 ("Moreover, a subsequent decision to prescribe plaintiff a certain medication does not indicate that the medication should have been prescribed earlier.").[FN17] Thus, there is no evidence in the record sufficient for a rational jury to find that defendants acted with deliberate indifference regarding the prescription dosage of plaintiff's renal disease medication.

**\*12** In sum, based on the undisputed facts and drawing all reasonable inferences in plaintiff's favor, no rational jury could find that defendants were aware of, and consciously disregarded, plaintiff's objectively serious health needs regarding his medication dosage. Accordingly, defendants' motion for summary judgment is granted with respect to this claim.

### b. Kidney Transplant

[17] Defendants also argue that plaintiff cannot proceed with his deliberate indifference claim regarding his request to be tested for a kidney transplant. Defendants do not dispute the objective seriousness of plaintiff's underlying condition or the requested transplant, and instead argue only that defendants lacked subjective culpability. Specifically, defendants argue that they made reasonable efforts to get plaintiff tested. (Defs.' Br. at 23.) However, construing the facts in the light most favorable to plaintiff, a rational jury could find that defendants were aware of, and consciously disregarded, plaintiff's serious medical needs.

Plaintiff began requesting a kidney transplant test as early as February or March 2007 and still had not received one by the time he left the NCCC in December 2007. (*See* Price Dep. at 76-77, 90.) Requests were sent on plaintiff's behalf to Dr. Okonta at the Nassau University Medical Center and to Nurse Mary Sullivan at the NCCC medical department. (*See* Defs.' Ex. K.) The record indicates that plaintiff received no response from Okonta. (*See* Price Dep. at 82.) When plaintiff asked Sullivan about the test,

Sullivan told him that defendants had "other priorities right now." (Price Dep. at 70.) Even after plaintiff filed a formal grievance in September 2007, he still did not receive the requested test. (*See* Defs.' Ex. F.) On these facts, where there was a delay of at least nine months in arranging a kidney transplant test for plaintiff despite plaintiff's repeated requests, and where defendants do not dispute the necessity of the test, a rational jury could find that defendants acted with deliberate indifference to plaintiff's serious medical needs. *See Harrison v. Barkley,* 219 F.3d 132, 138 (2d Cir.2000) (holding summary judgment inappropriate where there was evidence that, *inter alia,* plaintiff was delayed dental treatment for a cavity for one year); *Hathaway v. Coughlin,* 841 F.2d 48, 50-51 (2d Cir.1988) ("[Plaintiff's] affidavit in opposition to [defendants'] motion for summary judgment alleged that a delay of over two years in arranging surgery ... amounted to deliberate indifference to his serious medical needs. We believe this is a sufficient allegation to survive a motion for summary judgment under *Archer* [*v. Dutcher,* 733 F.2d 14 (2d Cir.1984) ] because it raises a factual dispute ...."); *see also Lloyd v. Lee,* 570 F.Supp.2d 556, 569 (S.D.N.Y.2008) ("A reasonable jury could infer deliberate indifference from the failure of the doctors to take further steps to see that [plaintiff] was given an MRI. The argument that the doctors here did not take [plaintiff's] condition seriously is plausible, given the length of the delays. Nine months went by after the MRI was first requested before the MRI was actually taken.").

**\*13** Defendants point to evidence in the record that they were, in fact, attempting to get plaintiff tested throughout the time in question, but were unsuccessful in their efforts. (*See* Defs.' Br. at 23; Reschke Aff. ¶ 3.) However, defendants' proffered explanation for the delay, i.e., the difficulty of finding a hospital because of transportation and security concerns, raises questions of fact and does not, as a matter of law, absolve them of liability. *See Johnson v. Bowers,* 884 F.2d 1053, 1056 (8th Cir.1989) ("It is no excuse for [defendants] to urge that the responsibility for delay in surgery rests with [the hospital]."); *Williams v. Scully,* 552 F.Supp. 431, 432 (S.D.N.Y.1982) (denying summary judgment where plaintiff "was unable to obtain treatment ... for five and one half months, during which time he suffered considerable pain" despite defendants' "explanations for the inadequacy of [the prison's] dental program"), *cited approvingly in Harrison v. Barkley,* 219 F.3d 132, 138 (2d Cir.2000). Thus, whether defendants' efforts were

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 889787 (E.D.N.Y.)
(Cite as: 2010 WL 889787 (E.D.N.Y.))

reasonable over the nine month period at issue is a question of fact for the jury.

In sum, on this record, drawing all reasonable inferences in plaintiff's favor, the Court concludes that a rational jury could find that defendants acted with deliberate indifference regarding plaintiff's request for a kidney transplant test. Accordingly, defendants' motion for summary judgment on this claim is denied.

c. Shoulder

Defendants argue that summary judgment is warranted on the claim relating to the alleged shoulder injury because plaintiff's complained-of shoulder pain was not objectively serious and plaintiff has failed to show subjectively culpable intent by defendants. For the reasons set forth below, the Court disagrees and concludes that a rational jury could find that defendants acted with deliberate indifference regarding plaintiff's shoulder pain. Thus, summary judgment on this claim is denied.

i. Objective Prong

[18][19] Defendants argue that plaintiff cannot satisfy the objective element of the deliberate indifference test regarding his shoulder because plaintiff alleges only that he had pain in his shoulder and not that he had "a condition of urgency, one that might produce death, deterioration or extreme pain." (Defs.' Br. at 22.) However, plaintiff did complain to the medical department that his right shoulder was "extremely hurting." (Defs.' Ex. E, Sick Call Request, Jan. 17, 2007.) Furthermore, plaintiff states that he now has a separated shoulder and wears a brace for carpal tunnel syndrome. (Pl.'s Opp. at 4.) In any event, chronic pain can be a serious medical condition. See Brock v. Wright, 315 F.3d 158, 163 (2d Cir.2003) ("We will no more tolerate prison officials' deliberate indifference to the chronic pain of an inmate than we would a sentence that required the inmate to submit to such pain. We do not, therefore, require an inmate to demonstrate that he or she experiences pain that is at the limit of human ability to bear, nor do we require a showing that his or her condition will degenerate into a life-threatening one."); Hathaway v. Coughlin, 37 F.3d 63, 67 (2d Cir.1994); see also Sereika v. Patel, 411 F.Supp.2d 397, 406 (S.D.N.Y.2006) ("[Plaintiff's] allegation that he experienced severe pain as a result of the alleged delay in treatment, together with his allegation that the alleged delay in treatment resulted in reduced mobility in his arm and shoulder, raise issues of fact as to whether his shoulder injury constitutes a sufficiently serious medical condition to satisfy the objective prong of the deliberate indifference standard.") (denying summary judgment). Thus, the Court cannot conclude at the summary judgment stage that plaintiff did not suffer from a serious medical condition.

ii. Subjective Prong

*14 Defendants also argue that plaintiff cannot meet the subjective prong of the deliberate indifference test because plaintiff was seen repeatedly by the medical department and was given pain medication. (Defs.' Br. at 22.) Defendants also point to the fact that when x-rays were ultimately taken, they were negative.[FN18] However, construing the facts most favorably to plaintiff, a rational jury could find that defendants were aware of, and consciously disregarded, plaintiff's serious medical needs. Plaintiff repeatedly complained to defendants over a period of several months, beginning in January 2007, about the pain in his shoulder (see Defs.' Ex. E), and further complained that the pain medication he was being given was ineffective.[FN19] (See, e.g., Price Dep. at 45, 51.) In June 2007, for instance, plaintiff was still complaining that his right shoulder "hurts really bad," and that he had been "complaining of that for months." (Def.'s Ex. E, Sick Call Requests, June 12 and June 17, 2007.) Thus, it is uncontroverted that defendants were aware of plaintiff's alleged chronic shoulder pain.

Despite plaintiff's complaints, however, plaintiff was not given an x-ray exam for several months (Price Dep. at 44; Def.'s Ex. J), and was not given any pain medication besides Motrin and Naprosyn. (Price Dep. at 55.) Although defendants argue that the treatment for plaintiff's shoulder pain was reasonable under the circumstances, there are factual questions in this case that preclude summary judgment. See Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir.1998) ("Whether a course of treatment was the product of sound medical judgment, negligence, or deliberate indifference depends on the facts of the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 889787 (E.D.N.Y.)
(Cite as: 2010 WL 889787 (E.D.N.Y.))

case.") (reversing grant of motion to dismiss). Drawing all reasonable inferences from the facts in favor of plaintiff, a rational jury could find that defendants acted with deliberate indifference by not changing plaintiff's pain medication despite his continued complaints that it was ineffective, by failing to take x-rays for several months, and by failing to follow-up on a November 2007 x-ray report indicating that further tests might be needed (*see* Defs.' Ex. J, Discharge Summary, November 2007). *See* Brock, 315 F.3d at 167 ("It is not controverted that [defendant] was aware that [plaintiff] was suffering some pain from his scar. The defendants sought to cast doubt on the truthfulness of [plaintiff's] claims about the extent of the pain he was suffering and, also, to put into question DOCS' awareness of [plaintiff's] condition. But at most, defendants' arguments and evidence to these effects raise issues for a jury and do not justify summary judgment for them."); Hathaway, 37 F.3d at 68-69 (holding that, *inter alia,* two-year delay in surgery despite plaintiff's repeated complaints of pain could support finding of deliberate indifference. The fact that defendants offered some treatment in response to plaintiff's complaints does not as a matter of law establish that they had no subjectively culpable intent. *See* Archer v. Dutcher, 733 F.2d 14, 16 (2d Cir.1984) ("[Plaintiff] received extensive medical attention, and the records maintained by the prison officials and hospital do substantiate the conclusion that [defendants] provided [plaintiff] with comprehensive, if not doting, health care. Nonetheless, [plaintiff's] affidavit in opposition to the motion for summary judgment does raise material factual disputes, irrespective of their likely resolution.... [Plaintiff's assertions] do raise material factual issues. After all, if defendants did decide to delay emergency medical-aid-even for 'only' five hours-in order to make [plaintiff] suffer, surely a claim would be stated under *Estelle.*"). Specifically, given the factual disputes in this case, the Court cannot conclude as a matter of law that defendants did not act with deliberate indifference when they allegedly declined to change their treatment for plaintiff's shoulder pain despite repeated complaints over several months that the pain persisted. *See, e.g.,* Lloyd, 570 F.Supp.2d at 569 ("[T]he amended complaint plausibly alleges that doctors knew that [plaintiff] was experiencing extreme pain and loss of mobility, knew that the course of treatment they prescribed was ineffective, and declined to do anything to attempt to improve [plaintiff's] situation besides re-submitting MRI request forms.... Had the doctors followed up on numerous requests for an MRI, the injury would have been discovered earlier, and some of the serious pain and discomfort that [plaintiff] experienced for more than a year could have been averted."). Thus, there are factual disputes that prevent summary judgment on defendants' subjective intent.

*15 In sum, on this record, drawing all reasonable inferences from the facts in favor of plaintiff, a rational jury could find that defendants acted with deliberate indifference to plaintiff's shoulder pain. Accordingly, defendants' motion for summary judgment on this claim is denied.

C. Individual Defendants

Defendants also move for summary judgment specifically with respect to plaintiff's claims against three of the individual defendants: Sheriff Edward Reilly (hereinafter "Reilly"), Edwards, and Okonta. For the reasons set forth below, the Court grants defendants' motion with respect to Reilly, and denies it with respect to Edwards and Okonta.

1. Legal Standard

[20] "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under Section 1983." Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir.2003) (citation and quotation marks omitted). In other words, "supervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on respondeat superior." *Id.* Supervisor liability can be shown in one or more of the following ways: "(1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring." *Id.* at 145 (citation omitted).

2. Application

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 889787 (E.D.N.Y.)
(Cite as: 2010 WL 889787 (E.D.N.Y.))

[21] Although plaintiff alleges in the complaint that Reilly was aware of plaintiff's condition and failed to assist,[FN20] there is no mention whatsoever of Reilly in plaintiff's deposition or in any of the parties' evidentiary submissions. Because there is no evidence in the record that Reilly was personally involved in any of the alleged constitutional violations or that there was a custom or policy of allowing such constitutional violations (and that Reilly allowed such custom or policy to continue), no rational jury could find Reilly liable for any of plaintiff's deliberate indifference claims. See *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003) ("[M]ere linkage in the prison chain of command is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim."); *see also Mastroianni v. Reilly,* 602 F.Supp.2d 425, 438-39 (E.D.N.Y.2009) ("[T]he plaintiff cannot establish that Sheriff Reilly was grossly negligent in failing to supervise subordinates because the medical care of inmates at the NCCC was delegated to the Nassau Health Care Corporation and plaintiff provides no evidence that Reilly was otherwise personally involved in his treatment."). Therefore, defendants' motion for summary judgment with respect to plaintiff's claims against Sheriff Reilly is granted.

**\*16** [22] With respect to plaintiff's claims against Edwards and Okonta, however, there are disputed issues of fact that preclude summary judgment. Defendants argue that Edwards was not personally involved in the alleged constitutional violations because she did not treat plaintiff and merely responded to his grievance request. (Defs.' Br. at 24-25.) However, plaintiff testified that, although Edwards never physically treated him, she "takes care of appointments and makes sure you get to certain specialists" and that "she was in a position to make sure that I get the adequate care that I needed." (Price Dep. at 61-62.) Plaintiff also testified that he submitted a grievance request to Edwards in order to be tested for the kidney transplant list, but that Edwards failed to get him on the list. (Price Dep. at 62-63.) Drawing all reasonable inferences in favor of plaintiff, a rational jury could find that Edwards was personally involved in the alleged constitutional violations because she was in a position to get plaintiff tested for the kidney transplant list and failed to do so. See *McKenna v. Wright,* 386 F.3d 432, 437-38 (2d Cir.2004) ("Although it is questionable whether an adjudicator's rejection of an administrative grievance would make him liable for the conduct complained of, [defendant] was properly retained in the lawsuit at this

stage, not simply because he rejected the grievance, but because he is alleged, as Deputy Superintendent for Administration at [the prison], to have been responsible for the prison's medical program." (citation omitted)). Thus, plaintiff has presented sufficient evidence of Edwards's personal involvement in the alleged constitutional violations to raise a genuine issue of material fact as to whether Edwards is liable for the alleged Eighth Amendment violations.

[23][24] Defendants also argue that Okonta was not personally involved in the alleged constitutional violations because he did not actually treat plaintiff. (Defs.' Br. at 24-25.) This argument misses the mark. It is plaintiff's allegation that Okonta violated plaintiff's constitutional rights precisely by not treating him. Plaintiff has presented evidence that he received no response from Okonta regarding his requests to be tested for the kidney transplant list. Where a prison doctor denies medical treatment to an inmate, that doctor is personally involved in the alleged constitutional violation. See *McKenna,* 386 F.3d at 437 (finding "personal involvement" where medical defendants were alleged to have participated in the denial of treatment); *see also Chambers v. Wright,* No. 05 Civ. 9915, 2007 WL 4462181, at *3 (S.D.N.Y. Dec. 19, 2007) ("Prison doctors who have denied medical treatment to an inmate are 'personally involved' for the purposes of jurisdiction under § 1983." (citing *McKenna,* 386 F.3d at 437)). Although defendants argue that they were in fact making efforts to get plaintiff tested (Defs.' Br. at 25), the reasonableness of those efforts, as discussed above, is a factual question inappropriate for resolution on summary judgment.

**\*17** In sum, defendants' motion for summary judgment on plaintiff's claims against Reilly is granted. Defendants' motion with respect to Edwards and Okonta is denied.

## V. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part defendants' motion for summary judgment. Specifically, the Court grants defendants' motion with respect to plaintiff's claim regarding the dosage of his renal disease medication and with respect to all of plaintiff's claims against Sheriff Reilly. Defendants'

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 889787 (E.D.N.Y.)
(Cite as: 2010 WL 889787 (E.D.N.Y.))

motion is denied in all other respects. The parties to this action shall participate in a telephone conference on Monday, April 5, 2010 at 3:30 p.m. At that time, counsel for defendants shall initiate the call and, with all parties on the line, contact Chambers at (631) 712-5670.

SO ORDERED.

FN1. The Court notes that plaintiff failed to file and serve a response to defendants' Local Rule 56.1 Statement of Facts in violation of Local Civil Rule 56.1. Generally, a "plaintiff['s] failure to respond or contest the facts set forth by the defendants in their Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed." *Jessamy v. City of New Rochelle,* 292 F.Supp.2d 498, 504 (S.D.N.Y.2003) (quoting *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.,* 262 F.Supp.2d 134, 139 (S.D.N.Y.2003)). However, "[a] district court has broad discretion whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.,* 258 F.3d 62, 73 (2d Cir.2001) (citations omitted); *see also Giliani v. GNOC Corp.,* No. 04 Civ. 2935(ILG), 2006 WL 1120602, at *2 (E.D.N.Y. Apr. 26, 2006) (exercising court's discretion to overlook the parties' failure to submit statements pursuant to Local Civil Rule 56.1). In his opposition papers, plaintiff identifies defendants' arguments and factual assertions with which he disagrees. In the exercise of its broad discretion, and given plaintiff's *pro se* status, the Court will deem admitted only those facts in defendants' Rule 56.1 statement that are supported by admissible evidence and not controverted by other admissible evidence in the record. *See Jessamy,* 292 F.Supp.2d at 504-05. Furthermore, the Court has carefully reviewed all of the parties' submissions, including plaintiff's deposition, to determine if plaintiff has any evidence to support his claims.

FN2. Plaintiff was incarcerated at the Elmira correctional facility in 2005 and 2006. (Price Dep. at 7-8.)

FN3. Plaintiff testified that, at the time of his deposition, he was receiving two 800 milligram pills of Renagel three times a day and two 667 milligram pills of PhosLo three times a day at the Fishkill correctional facility. (Price Dep. at 11-12.)

FN4. Plaintiff never interacted with Okonta except through Susan, the social worker. (Price Dep. at 73-74.)

FN5. This was the only formal medical grievance filed by plaintiff. (Price Dep. at 85.)

FN6. Edwards never wrote medical orders for plaintiff or examined plaintiff. (Price Dep. at 61.) Plaintiff had no interaction with Edwards except her written response to plaintiff's grievance. (*Id.* at 67.)

FN7. Although plaintiff does not offer this explanation in his deposition, the Court construes the *pro se* plaintiff's sworn "verified rebuttal" to defendants' motion for summary judgment as an evidentiary submission. *See Patterson v. County of Oneida,* 375 F.3d 206, 219 (2d Cir.2004) ("[A] verified pleading, to the extent that it makes allegations on the basis of the plaintiff's personal knowledge, and not merely on information and belief, has the effect of an affidavit and may be relied on to oppose summary judgment."); *see also Hailey v. N.Y. City Transit Auth.,* 136 Fed.Appx. 406, 407-08 (2d Cir.2005) ("The rule favoring liberal construction of *pro se* submissions is especially applicable to civil rights claims.").

FN8. Plaintiff testified that he stopped complaining about his shoulder at some point because he was frustrated that defendants were not helping. (Price Dep. at 54-55.) There is evidence that plaintiff complained about his shoulder at least as late as June 2007, and again

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 889787 (E.D.N.Y.)
(Cite as: 2010 WL 889787 (E.D.N.Y.))

complained in November 2007, which resulted in the taking of additional x-rays. (*See* Def.'s Ex. E, Sick Call Request, June 21, 2007; Defs.' Ex. J.)

FN9. Pursuant to Local Rule 56.1, defendants also served plaintiff with the requisite notice for *pro se* litigants opposing summary judgment motions. *See Irby v. N.Y. City Transit Auth.*, 262 F.3d 412, 414 (2d Cir.2001) ("And we remind the district courts of this circuit, as well as summary judgment movants, of the necessity that pro se litigants have actual notice, provided in an accessible manner, of the consequences of the pro se litigant's failure to comply with the requirements of Rule 56.").

FN10. Plaintiff submitted his two identical oppositions and a sur-reply to the instant motion not only in this action, but also in the now-consolidated action (No. 07-CV-4841). The Court has considered all of plaintiff's submissions in both actions in deciding the instant motion.

FN11. Defendants raise exhaustion only with respect to plaintiff's kidney transplant request, and so the Court does not consider exhaustion with respect to plaintiff's other claims.

FN12. The Court notes that the October 5, 2007 memo from Edwards is unclear as to which party bore the responsibility of obtaining plaintiff's medical records. (Defs.' Ex. F.) Edwards explains in an affidavit that she advised plaintiff that "it would be necessary for his doctors to provide the selected facility with his records before a request for testing would be considered." (Edwards Aff. ¶ 2.) It is unclear whether plaintiff had access to these records or whether the prison would need to obtain them. Thus, there appears to be a factual question as to the implementation of this grievance resolution. A similar situation arose in *Abney v. McGinnis*, 380 F.3d 663 (2d Cir.2004), in which the Second Circuit held that where a prisoner achieved favorable results in several grievance

proceedings but alleged that prison officials failed to implement those decisions, that prisoner was without an administrative remedy and therefore had exhausted his claim for purposes of the PLRA. *See id.* at 667-68, 669 ("Where, as here, prison regulations do not provide a viable mechanism for appealing implementation failures, prisoners in [plaintiff's] situation have fully exhausted their available remedies."). The Court recognizes that *Abney*, 380 F.3d 663, was decided before *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006), and that, as discussed above, the Second Circuit has not decided whether the various nuances to the exhaustion requirement apply post- *Woodford.* However, the Court need not decide the applicability of any such nuances to the exhaustion requirement because, as discussed above, defendants have failed to establish the procedural framework for grievance resolution at the NCCC and the availability of *any* administrative remedies.

Although there may be administrative remedies for such a situation under the New York Department of Corrections regulations, *see* 7 N.Y. Comp.Codes R. & Regs. tit. 7, § 701.5(c)(4) ("If a decision is not implemented within 45 days, the grievant may appeal to CORC citing lack of implementation as a mitigating circumstance."), it does not follow that the same procedure applies at the NCCC. *See, e.g., Abney v. County of Nassau*, 237 F.Supp.2d at 283 ("The flaw in Defendants' argument, however, is that the cases relied upon were all decided under the New York State administrative procedure-none were decided in the context of the procedure relied upon-the Nassau County Inmate Handbook procedure.").

FN13. Plaintiff does not distinguish between the initial dosage he received at the NCCC and the later dosages he received, instead arguing generally that all of the dosages he received at the NCCC were incorrect.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

25

--- F.Supp.2d ----, 2010 WL 889787 (E.D.N.Y.)
(Cite as: 2010 WL 889787 (E.D.N.Y.))

**FN14.** Plaintiff's conclusory testimony that the dosage was "hurting" him also is insufficient to establish the objective prong of the deliberate indifference test. To the extent plaintiff claims that the medication caused him pain, there is no evidence in the record that plaintiff suffered from chronic pain or, indeed, any other objectively serious symptoms in connection with the medication dosage. Although not mentioned in plaintiff's deposition or in his opposition to the instant motion, plaintiff alleges in his amended complaint that the lesser dosage put him at risk of "itching" and "breaking of bones." (Amended Complaint, No. 07-CV-2634, at 4.) There is evidence that plaintiff suffered from a rash and/or itching while at the NCCC and that plaintiff was told at one point that he had eczema. (*See* Price Dep. at 45-51.) However, there is no evidence to connect those symptoms with the medication dosage for his renal disease. (*See, e.g., id.* at 46 ("Q. Did anyone ever tell you what was causing a rash? A. I kept going to the-I had went to the dermatologist at Bellevue. To me, the doctor had an attitude like it ain't nothing wrong; like it was acne or something.").) Furthermore, there is no evidence that the rash and/or itching was an objectively serious condition. See *Lewal v. Wiley,* 29 Fed.Appx. 26, 29 (2d Cir.2002) (affirming summary judgment and holding that plaintiff's alleged "persistent rash" was not a "serious medical condition"); *see also Benitez v. Ham,* No. 04-CV-1159, 2009 WL 3486379, at *11 (N.D.N.Y. Oct. 21, 2009) ("[T]he evidence shows that Plaintiff suffered from a severe body itch. While this condition was undoubtedly unpleasant, it simply does not rise to the level of an Eighth Amendment violation."). In any event, even if plaintiff did suffer from an objectively serious condition because of the medication dosage, he cannot prove that defendants acted with a subjectively culpable state of mind, as discussed *infra.*

**FN15.** In any event, as discussed *infra,* defendants adjusted plaintiff's dosage in response to the increase in phosphorous levels, and there is no evidence from which a rational jury could conclude that defendants acted with deliberate indifference in prescribing plaintiff's medication.

**FN16.** Although he does not raise it in any of his pleadings or in his opposition to the instant motion, plaintiff testified at his deposition that he had to take the medication with meals but sometimes he was given the medication without food or at times that interfered with his meals. (Price Dep. at 23, 60; Defs.' Ex. E.) The record is unclear as to how often this occurred. The Court assumes, as it must on this motion for summary judgment, that on some occasions plaintiff was given his medications not at meal times or at times that interfered with meals. However, plaintiff points to no evidence whatsoever of any harm caused by defendants' alleged conduct in this regard, and, therefore, no rational jury could find that the provision of medication without food on some occasions was objectively serious. See *Gillard v. Kuykendall,* 295 Fed.Appx. 102, 103 (8th Cir.2008) (affirming summary judgment for defendants where defendants, on some occasions, "were late in giving [plaintiff] his medications and did not always administer them with meals as [plaintiff] apparently desired" where there was no evidence of any adverse consequences). Thus, any deliberate indifference claim based on these allegations would fail as well.

**FN17.** To the extent plaintiff also argues that that defendants acted with deliberate indifference because he has received different prescriptions at different facilities, the Court rejects that argument as well. *See, e.g., Cole v. Goord,* No. 04 Civ. 8906, 2009 WL 1181295, at *8 n. 9 (S.D.N.Y. Apr. 30, 2009) ("[Plaintiff's] reliance upon the fact that subsequent medical providers have provided him with a different course of medication or treatment ... does nothing to establish that [defendant] violated [plaintiff's] Eighth Amendment rights. Physicians can and do differ as to their determination of the appropriate treatment for a particular patient; that difference in opinion does not satisfy the requirements for a constitutional claim of deliberate indifference." (citing *Estelle,* 429 U.S. at 97, 97 S.Ct. 285)).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 889787 (E.D.N.Y.)
(Cite as: 2010 WL 889787 (E.D.N.Y.))

       FN18. The November 2007 x-ray records indicate that "short segment acute thrombosis cannot be reliably excluded, Ultrasound might provide additional information ...." (*See* Defs.' Ex. J, Discharge Summary, November 2007.) Defendants point to no evidence in the record that they followed up on that x-ray report.

       FN19. Plaintiff also informed defendants that he had been given a Cortisone shot for his shoulder at his previous place of incarceration. (*See* Price Dep. at 38, 53-54; Defs.' Ex. E, Sick Call Request, Apr. 14, 2007.)

       FN20. Plaintiff actually refers in the complaint to "Sheriff Edwards," but the Court determines, liberally construing the complaint, that this allegation refers to Sheriff Reilly.

E.D.N.Y.,2010.
Price v. Reilly
--- F.Supp.2d ----, 2010 WL 889787 (E.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

**C**

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.
Jerome WALDO, Plaintiff,
v.
Glenn S. GOORD, Acting Commissioner of New York
State Department of Correctional Services; Peter J.
Lacy, Superintendent at Bare Hill Corr. Facility;
Wendell Babbie, Acting Superintendent at Altona Corr.
Facility; and John Doe, Corrections Officer at Bare Hill
Corr. Facility, Defendants.
**No. 97-CV-1385 LEK DRH.**

Oct. 1, 1998.

Jerome Waldo, Plaintiff, pro se, Mohawk Correctional
Facility, Rome, for Plaintiff.

Hon. Dennis C. Vacco, Attorney General of the State of
New York, Albany, Eric D. Handelman, Esq., Asst.
Attorney General, for Defendants.

DECISION AND ORDER

KAHN, District J.

**\*1** This matter comes before the Court following a
Report-Recommendation filed on August 21, 1998 by the
Honorable David R. Homer, Magistrate Judge, pursuant to
28 U.S.C. § 636(b) and L.R. 72.3(c) of the Northern
District of New York.

No objections to the Report-Recommendation have been
raised. Furthermore, after examining the record, the Court
has determined that the Report-Recommendation is not
clearly erroneous. See Fed.R.Civ.P. 72(b), Advisory
Committee Notes. Accordingly, the Court adopts the

Report-Recommendation for the reasons stated therein.

Accordingly, it is

ORDERED that the Report-Recommendation is
APPROVED and ADOPTED; and it is further

ORDERED that the motion to dismiss by defendants is
GRANTED; and it is further

ORDERED that the complaint is dismissed without
prejudice as to the unserved John Doe defendant pursuant
to Fed.R.Civ.P. 4(m), and the action is therefore dismissed
in its entirety; and it is further

ORDERED that the Clerk serve a copy of this order on all
parties by regular mail.

IT IS SO ORDERED.
HOMER, Magistrate J.

REPORT-RECOMMENDATION AND ORDER FN1

> FN1. This matter was referred to the undersigned
> pursuant to 28 U.S.C. § 636(b) and
> N.D.N.Y.L.R. 72.3(c).

The plaintiff, an inmate in the New York Department of
Correctional Services ("DOCS"), brought this pro se
action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that
while incarcerated in Bare Hill Correctional Facility
("Bare Hill") and Altona Correctional Facility ("Altona"),
defendants violated his rights under the Eighth and
Fourteenth Amendments.FN2 In particular, plaintiff alleges
that prison officials maintained overcrowded facilities
resulting in physical and emotional injury to the plaintiff
and failed to provide adequate medical treatment for his
injuries and drug problem. Plaintiff seeks declaratory
relief and monetary damages. Presently pending is

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b). Docket No. 18. For the reasons which follow, it is recommended that the motion be granted in its entirety.

FN2. The allegations as to Bare Hill are made against defendants Goord, Lacy, and Doe. Allegations as to Altona are made against Goord and Babbie.

I. Background

Plaintiff alleges that on August 21, 1997 at Bare Hill, while he and two other inmates were playing cards, an argument ensued, and one of the two assaulted him. Compl., ¶ 17. Plaintiff received medical treatment for facial injuries at the prison infirmary and at Malone County Hospital. Id. at ¶¶ 18-19. On September 11, 1997, plaintiff was transferred to Altona and went to Plattsburgh Hospital for x-rays several days later. Id. at ¶ 21.

Plaintiff's complaint asserts that the overcrowded conditions at Bare Hill created a tense environment which increased the likelihood of violence and caused the physical assault on him by another inmate. Id. at ¶¶ 10-11. Additionally, plaintiff contends that similar conditions at Altona caused him mental distress and that he received constitutionally deficient medical treatment for his injuries. Id. at ¶¶ 21-22. The complaint alleges that Altona's lack of a drug treatment program and a dentist or specialist to treat his facial injuries constitutes cruel and unusual punishment under the Eighth and Fourteenth Amendments. Id. at ¶¶ 22, 27-28.

II. Motion to Dismiss

*2 When considering a Rule 12(b) motion, a court must assume the truth of all factual allegations in the complaint and draw all reasonable inferences from those facts in favor of the plaintiff. Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir.1996). The complaint may be dismissed only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Staron v. McDonald's Corp., 51 F.3d 353, 355 (2d Cir.1995) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "The issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely, but that is not the test." Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir.1995) (citations omitted). This standard receives especially careful application in cases such as this where a pro se plaintiff claims violations of his civil rights. Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir.), cert. denied, 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994).

III. Discussion

A. Conditions of Confinement

Defendants assert that plaintiff fails to state a claim regarding the conditions of confinement at Bare Hill and Altona. For conditions of confinement to amount to cruel and unusual punishment, a two-prong test must be met. First, plaintiff must show a sufficiently serious deprivation. Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)); Rhodes v. Chapman, 452 U.S. 347, 348 (1981)(denial of the "minimal civilized measure of life's necessities"). Second, plaintiff must show that the prison official involved was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and that the official drew the inference. Farmer, 511 U.S. at 837.

1. Bare Hill

In his Bare Hill claim, plaintiff alleges that the overcrowded and understaffed conditions in the dormitory-style housing "resulted in an increase in tension, mental anguish and frustration among prisoners, and dangerously increased the potential for violence." Compl., ¶ 11. Plaintiff asserts that these conditions violated his constitutional right to be free from cruel and unusual punishment and led to the attack on him by another prisoner. The Supreme Court has held that double-celling to manage prison overcrowding is not a per se violation of

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

the Eighth Amendment. *Rhodes,* 452 U.S. at 347-48. The Third Circuit has recognized, though, that double-celling paired with other adverse circumstances can create a totality of conditions amounting to cruel and unusual punishment. *Nami v. Fauver,* 82 F.3d 63, 67 (3d Cir.1996). While plaintiff here does not specify double-celling as the source of his complaint, the concerns he raises are similar. Plaintiff alleges that overcrowding led to an increase in tension and danger which violated his rights. Plaintiff does not claim, however, that he was deprived of any basic needs such as food or clothing, nor does he assert any injury beyond the fear and tension allegedly engendered by the overcrowding. Further, a previous lawsuit by this plaintiff raised a similar complaint, that double-celling and fear of assault amounted to cruel and unusual punishment, which was rejected as insufficient by the court. *Bolton v. Goord,* 992 F.Supp. 604, 627 (S.D.N.Y.1998). The court there found that the fear created by the double-celling was not "an objectively serious enough injury to support a claim for damages." *Id.* (citing *Doe v. Welborn,* 110 F.3d 520, 524 (7th Cir.1997)).

**\*3** As in his prior complaint, plaintiff's limited allegations of overcrowding and fear, without more, are insufficient. *Compare Ingalls v. Florio,* 968 F.Supp. 193, 198 (D.N.J.1997) (Eighth Amendment overcrowding claim stated when five or six inmates are held in cell designed for one, inmates are required to sleep on floor, food is infested, and there is insufficient toilet paper) *and Zolnowski v. County of Erie,* 944 F.Supp. 1096, 1113 (W.D.N.Y.1996) (Eighth Amendment claim stated when overcrowding caused inmates to sleep on mattresses on floor, eat meals while sitting on floor, and endure vomit on the floor and toilets) *with Harris v. Murray,* 761 F.Supp. 409, 415 (E.D.Va.1990) (No Eighth Amendment claim when plaintiff makes only a generalized claim of overcrowding unaccompanied by any specific claim concerning the adverse effects of overcrowding). Thus, although overcrowding could create conditions which might state a violation of the Eighth Amendment, plaintiff has not alleged sufficient facts to support such a finding here. Plaintiff's conditions of confinement claim as to Bare Hill should be dismissed.

2. Altona

Plaintiff also asserts a similar conditions of confinement claim regarding Altona. For the reasons discussed above, plaintiff's claim that he suffered anxiety and fear of other inmates in the overcrowded facility (Compl., ¶¶ 21-22) is insufficient to establish a serious injury or harm.

Plaintiff's second claim regarding Altona relates to the alleged inadequacies of the medical treatment he received. The government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The two-pronged *Farmer* standard applies in medical treatment cases as well. *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998). Therefore, plaintiff must allege facts which would support a finding that he suffered a sufficiently serious deprivation of his rights and that the prison officials acted with deliberate indifference to his medical needs. *Farmer,* 511 U.S. at 834.

Plaintiff alleges that the medical treatment available at Altona was insufficient to address the injuries sustained in the altercation at Bare Hill. Specifically, plaintiff cites the lack of a dentist or specialist to treat his facial injuries as an unconstitutional deprivation. Plaintiff claims that the injuries continue to cause extreme pain, nosebleeds, and swelling. Compl., ¶¶ 22 & 26. For the purposes of the Rule 12(b) motion, plaintiff's allegations of extreme pain suffice for a sufficiently serious deprivation. *See Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996).

Plaintiff does not, however, allege facts sufficient to support a claim of deliberate indifference by the named defendants. To satisfy this element, plaintiff must demonstrate that prison officials had knowledge of facts from which an inference could be drawn that a "substantial risk of serious harm" to the plaintiff existed and that the officials actually drew the inference. *Farmer,* 511 U.S. at 837. Plaintiff's complaint does not support, even when liberally construed, any such conclusion. Plaintiff offers no evidence that the Altona Superintendent or DOCS Commissioner had any actual knowledge of his medical condition or that he made any attempts to notify them of his special needs. Where the plaintiff has not even alleged knowledge of his medical needs by the defendants, no reasonable jury could conclude that the defendants were deliberately indifferent to those needs. *See Amos v.*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

*Maryland Dep't of Public Safety and Corr. Services,* 126
F.3d 589, 610-11 (4th Cir.1997), *vacated on other
grounds,* 524 U.S. 935, 118 S.Ct. 2339, 141 L.Ed.2d 710
(1998).

**\*4** Plaintiff's second complaint about Altona is that it
offers "no type of state drug treatment program for the
plaintiff." Compl., ¶ 22. Constitutionally required medical
treatment encompasses drug addiction therapy. *Fiallo v.
de Batista,* 666 F.2d 729, 731 (1st Cir.1981); *Inmates of
Allegheny County Jail v. Pierce,* 612 F.2d 754, 760-61 (3d
Cir.1979). As in the *Fiallo* case, however, plaintiff falls
short of stating an Eighth Amendment claim as he "clearly
does not allege deprivation of essential treatment or
indifference to serious need, only that he has not received
the type of treatment which he desires." *Id.* at 731.
Further, plaintiff alleges no harm or injury attributable to
the charged deprivation. Plaintiff has not articulated his
reasons for desiring drug treatment or how he was harmed
by the alleged deprivation of this service. *See Guidry v.
Jefferson County Detention Ctr.,* 868 F.Supp. 189, 192
(E.D.Tex.1994) (to state a section 1983 claim, plaintiff
must allege that some injury has been suffered).

For these reasons, plaintiff's Altona claims should be
dismissed.

### B. Failure to Protect

Defendants further assert that plaintiff has not established
that any of the named defendants failed to protect the
plaintiff from the attack by the other inmate at Bare Hill.
Prison officials have a duty "to act reasonably to ensure a
safe environment for a prisoner *when they are aware* that
there is a significant risk of serious injury to that
prisoner." *Heisler v. Kralik,* 981 F.Supp. 830, 837
(S.D.N.Y.1997) (emphasis added); *see also Villante v.
Dep't of Corr. of City of N.Y.,* 786 F.2d 516, 519 (2d
Cir.1986). This duty is not absolute, however, as "not ...
every injury suffered by one prisoner at the hands of
another ... translates into constitutional liability." *Farmer,*
511 U.S. at 834. To establish this liability, *Farmer's*
familiar two-prong standard must be satisfied.

As in the medical indifference claim discussed above,

plaintiff's allegations of broken bones and severe pain
from the complained of assault suffice to establish a
"sufficiently serious" deprivation. *Id.* Plaintiff's claim
fails, however, to raise the possibility that he will be able
to prove deliberate indifference to any threat of harm to
him by the Bare Hill Superintendent or the DOCS
Commissioner. Again, plaintiff must allege facts which
establish that these officials were aware of circumstances
from which the inference could be drawn that the plaintiff
was at risk of serious harm and that they actually inferred
this. *Farmer,* 511 U.S. at 838.

To advance his claim, plaintiff alleges an increase in
"unusual incidents, prisoner misbehaviors, and violence"
(Compl., ¶ 12) and concludes that defendants' continued
policy of overcrowding created the conditions which led
to his injuries. Compl., ¶ 10. The thrust of plaintiff's claim
seems to suggest that the defendants' awareness of the
problems of overcrowding led to knowledge of a
generalized risk to the prison population, thus establishing
a legally culpable state of mind as to plaintiff's injuries.
Plaintiff has not offered any evidence, however, to support
the existence of any personal risk to himself about which
the defendants could have known. According to his own
complaint, plaintiff first encountered his assailant only
minutes before the altercation occurred. Compl., ¶ 17. It
is clear that the named defendants could not have known
of a substantial risk to the plaintiff's safety if the plaintiff
himself had no reason to believe he was in danger. *See
Sims v. Bowen,* No. 96-CV-656, 1998 WL 146409, at \*3
(N.D.N.Y. Mar.23, 1998)(Pooler, J.)("I conclude that an
inmate must inform a correctional official of the basis for
his belief that another inmate represents a substantial
threat to his safety before the correctional official can be
charged with deliberate indifference"); *Strano v. City of
New York,* No. 97-CIV-0387, 1998 WL 338097, at \*3-4
(S.D.N.Y. June 24, 1998) (when plaintiff acknowledged
attack was "out of the blue" and no prior incidents had
occurred to put defendants on notice of threat or danger,
defendants could not be held aware of any substantial risk
of harm to the plaintiff). Defendants' motion on this
ground should, therefore, be granted.

### IV. Failure to Complete Service

**\*5** The complaint names four defendants, including one
"John Doe" Correctional Officer at Bare Hill. Defendants

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

acknowledge that service has been completed as to the three named defendants. Docket Nos. 12 & 13. The "John Doe" defendant has not been served with process or otherwise identified and it is unlikely that service on him will be completed in the near future. *See* Docket No. 6 (United States Marshal unable to complete service on "John Doe"). Since over nine months have passed since the complaint was filed (Docket No. 1) and summonses were last issued (Docket entry Oct. 21, 1997), the complaint as to the unserved defendant should be dismissed without prejudice pursuant to Fed.R.Civ.P. 4(m) and N.D .N.Y.L.R. 4.1(b).

### V. Conclusion

WHEREFORE, for the reasons stated above, it is

RECOMMENDED that defendants' motion to dismiss be GRANTED in all respects; and

IT IS FURTHER RECOMMENDED that the complaint be dismissed without prejudice as to the unserved John Doe defendant pursuant to Fed.R.Civ.P. 4(m) and N.D.N.Y.L.R. 4.1(b); and it is

ORDERED that the Clerk of the Court serve a copy of this Report-Recommendation and Order, by regular mail, upon parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,1998.
Waldo v. Goord
Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.